WILSON TURNER KOSMO LLP
MARY P. SNYDER (211228)
ANA R. HARTMAN (259399)
MEGHAN A. CRUMM (342007)
402 West Broadway, Suite 1600
San Diego, California 92101
Telephone: (619) 236-9600
Facsimile: (619) 236-9669
E-mail: msnyder@wilsonturnerkosmo.com
E-mail: ahartman@wilsonturnerkosmo.com
E-mail: mcrumm@wilsonturnerkosmo.com

Attorneys for Defendants
AMN HEALTHCARE, INC. and
AMN HEALTHCARE INTERIM SOLUTIONS, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

AVIA TURNER-GRAY,

Plaintiff,

v.

AMN HEALTHCARE INTERIM SOLUTIONS, LLC; AMN HEALTHCARE, INC.; AVIS BUDGET GROUP; DOES 1-50,

Defendants.

Case No. 3:23-cv-05507-SI

**AMN DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF AVIA TURNER-GRAY'S FIRST AMENDED COMPLAINT UNDER FED. R. CIV. P._UNDER FED. R. CIV. P. 9(b) AND 12(b)(6); POINTS AND AUTHORITIES IN SUPPORT THEREOF**

| | |
|---|---|
| Date: | September 13, 2024 |
| Time: | 10:00 a.m. |
| Judge: | Hon. Susan Illston |
| Courtroom: | 1 |
| Trial Date: | Not Set |
| Complaint Filed: | October 25, 2023 |

**TO ALL PARTIES AND/OR THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on September 13, 2024 at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 1 of the United States District Court for the Northern District of California, located at San Francisco Courthouse, 17th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants AMN HEALTHCARE, INC. and AMN HEALTHCARE INTERIM SOLUTIONS, LLC (together, "AMN Defendants") will, and hereby do move this Court for an Order dismissing each cause of action in Plaintiff Avia Turner-Gray's

("Plaintiff") First Amended Complaint against AMN Defendants without leave to amend. This motion is made pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). Pursuant to Judge Illston's chambers rules, the hearing will be remote unless parties request an in-person hearing by joint stipulation.

ANM Defendants seek an Order dismissing each cause of action in Plaintiff's First Amended Complaint without leave to amend on the following grounds: Plaintiff's First Amended Complaint should be dismissed as to AMN Defendants for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), as construed by the United States Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Plaintiff fails to plausibly plead agency theory or other theories of joint liability that would support any of Claims 1–7 against AMN Defendants, and she fails to adequately plead her claims brought against AMN Defendants on a direct liability theory, Claims 8 and 9. Plaintiff's Claim 2 should also be dismissed because it is duplicative of Claim 1. Plaintiff's Claim 4 should also be dismissed because Plaintiff fails to plead the claim with the particularity required by Federal Rule of Civil Procedure 9(b). Plaintiff's Claim 9 should be dismissed because she fails to plausibly plead a claim for breach of fiduciary duty. Finally, in the alternative, if the Court were to find that Plaintiff's allegations against AMN Defendants are otherwise sufficient to state a claim against AMN Defendants, the Court should dismiss Claims 1, 2, 5, 7 and 8 because they would be preempted by the California Workers' Compensation Act.

This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities filed herewith and such further evidence and argument as Court may permit or require at or prior to the time of the hearing on this Motion.

## TABLE OF CONTENTS


I. INTRODUCTION .......... 8

II. PROCEDURAL BACKGROUND .......... 9

III. FACTUAL BACKGROUND .......... 9

IV. LEGAL STANDARD .......... 11

V. LEGAL ARGUMENT .......... 12

- A. PLAINTIFF'S CLAIMS 1-7 SHOULD BE DISMISSED BECAUSE SHE FAILS TO PLAUSIBLY PLEAD AGENCY THEORY OR OTHER THEORIES OF JOINT LIABILITY THAT WOULD SUPPORT ANY OF HER CLAIMS .......... 12
- B. PLAINTIFF'S CLAIMS 1, 4, AND 7 SHOULD ALSO BE DISMISSED BECAUSE THEY ARE NOT SUFFICIENTLY PLEADED AND/OR ARE DUPLICATIVE .......... 15
  - 1. Plaintiff's Claim 2 for Gross Negligence Is Duplicative of Claim 1 .......... 15
  - 2. Plaintiff Fails To Plead Claim 4 for Intentional Misrepresentation/Fraud/Deceit With The Particularity Required By Rule 9(b) .......... 16
  - 3. Plaintiff Fails To Plausibly Plead Claim for 7 Negligent Hiring, Retention, Supervision, and Training .......... 19
- C. PLAINTIFF FAILS TO PLAUSIBLY PLEAD HER DIRECT LIABILITY CLAIMS AGAINST AMN DEFENDANTS (CLAIMS 8 AND 9) .......... 20
  - 1. Claim 8 Is Not Plausibly Pleaded .......... 20
  - 2. Claim 9 Is Not Plausibly Pleaded .......... 21
- D. ALTERNATIVELY, PLAINTIFF'S FIRST, SECOND, FIFTH, SEVENTH AND EIGHTH CLAIMS ARE PREEMPTED BY WORKERS COMPENSATION PREEMPTION .......... 22
- E. LEAVE TO AMEND WOULD BE FUTILE .......... 23

VI. CONCLUSION .......... 24

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*A.B. v. Hilton Worldwide Holdings Inc.*,
484 F. Supp. 3d 921 (2020) ....................15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................11

*Campbell-Ewald Co. v. Gomez*,
577 U.S. 153 (2016)....................14

*Carter v. Rasier-CA, LLC*,
No. 17-CV-00003-HSG, 2017 WL 4098858 (N.D. Cal. Sept. 15, 2017)....................16

*Cisco Systems, Inc. v. STMicroelectronics, Inc.*,
77 F. Supp. 3d 887 (2014) ....................16, 18

*Cooper v. Pickett*,
137 F.3d 616 (9th Cir. 1997) ....................16

*D'Antonio v. Monterey Bay Mil. Hous., LLC*,
No. 4:21-CV-2607-YGR, 2021 WL 5771139 (N.D. Cal. Dec. 6, 2021)....................16

*DiLeo v. Meijer Stores Ltd. P'ship*,
425 F. Supp. 3d 979 (N.D. Ill. 2019)....................15

*Doe v. Uber Technologies, Inc.*,
184 F. Supp. 3d 774 (N.D. Cal. 2016) ....................19, 20, 21

*In re Facebook, Inc., Consumer Privacy User Profile Litigation*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ....................16

*Gerritsen v. Warner Bros. Entertainment Inc.*,
112 F. Supp. 3d 1011 (C.D. Cal. 2015) ....................13, 15

*Gomez v. Campbell-Ewald Co.*,
768 F.3d 871 (9th Cir. 2014) ....................14, 15

*Gonzalez v. Gen. Elec.*,
23-cv-01866-MEMF-SK, 2023 WL 4203379 (C.D. Cal. June 23, 2023) ....................16

*Grober v. Mako Productions, Inc.*,
No. CV 04–08604 SGL, 2008 WL 9027249 (C.D. Cal. Aug. 29, 2008)....................13

*Grotz v. Kaiser Found. Hosps.*,
No. C-12-3539 EMC, 2012 WL 5350254 (N.D. Cal. Oct. 29, 2012)....................................23

*Huffman v. Lindgren*,
81 F.4th 1016 (9th Cir. 2023) ....................................................................................11

*ING Bank, FSB v. Chang Seob Ahn*,
758 F. Supp. 2d 936 (N.D. Cal. 2010) ........................................................................13

*United States ex rel. Jones v. Sutter Health*,
499 F. Supp. 3d 704 (N.D. Cal. 2020) ........................................................................18

*Kaldis v. Wells Fargo Bank, N.A.*,
263 F. Supp. 3d (C.D. Cal. 2017) ...............................................................................22

*Keum v. Virgin America Inc.*,
781 F.Supp.2d 944 (N.D. Cal. 2011) ..........................................................................19

*LeGrand v. Abbott Laboratories*,
655 F. Supp. 3d 871 (N.D. Cal. 2023) ........................................................................16

*Loper Bright Enterprises v. Raimondo*,
144 S. Ct. 2244 (2024)...............................................................................................14

*Mavrix Photographs, LLC* v. *LiveJournal, Inc.*,
873 F. 3d 1045 (9th Cir. 2017) ...................................................................................15

*MH Pillars Ltd. v. Realini*,
277 F. Supp. 3d 1077 (N.D. Cal. 2017) ......................................................................21

*Mindlab Media, LLC. v. LWRC Int'l LLC*,
No. CV 11–3405 CAS-FEMX, 2012 WL 386695 (C.D. Cal. Feb. 6, 2012) ..........................14

*Nypl v. Crisis Prevention Institute*,
No. 16-cv-04956-JSC, 2018 WL 4488760 (N.D. Cal. Sept. 17, 2018) .................................16

*Oaktree Principal Fund V, LP v. Warburg Pincus LLC*,
No. CV158574PSGMRWX, 2016 WL 6782768 (C.D. Cal., Aug. 9, 2016) ..........................14

*Palomares v. Bear Sterns Residential Mortg. Corp.*,
No. CV 07–1899 WQH (BLM), 2008 WL 686683 (S.D.Cal. Mar. 13, 2008)........................13

*Pero v. Int'l Bus. Machines Corp.*,
No. 12–CV–07484 (KM), 2014 WL 37233 (D.N.J. Jan. 2, 2014) .........................................21

*Rodriguez v. United Airlines, Inc.*,
5 F. Supp. 3d 1131 (N.D. Cal. 2013) ..........................................................................22

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) .......................................................................................11

*Sun Microsystems, Inc. v. Hynix Semiconductor, Inc.*, 622 F. Supp. 2d 890 (N.D. Cal. 2009) ....................15

*Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007) ....................18

*Tuomela v. Waldorf-Astoria Grand Wailea Hotel*, No. CV 20-00117, JMS-RT, 2021 WL 232809 (D. Haw. Jan. 22, 2021) ....................21

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) ....................16, 18

*White v. Soc. Sec. Admin.*, 111 F. Supp. 3d 1041 (N.D. Cal. 2015) ....................16

**State Cases**

*Cole v. Fair Oaks Fire Prot. Dist.*, 43 Cal.3d 148 (1987) ....................22

*Cont'l Ins. Co. v. Am. Prot. Indus.*, 242 Cal. Rptr. 784 (1987) ....................16

*Dalton v. Camp*, 548 S.E.2d 704 (2001) ....................21

*Delfino v. Agilent Techs., Inc.*, 145 Cal. App. 4th 790 (2006) ....................19

*Far West Financial Corp. v. D & S Co.*, 46 Cal.3d 796 (1988) ....................19

*Foster v. Xerox Corp.*, 40 Cal. 3d 306 (1985) ....................22

*Garlock Sealing Techs., LLC v. NAK Sealing Techs. Corp.*, 148 Cal.App.4th 937 (2007) ....................13

*Jensen v. Amgen, Inc.*, 105 Cal. App. 4th 1322 (2003) ....................22

*Jones v. Dep't of Corr. & Rehab.*, 152 Cal. App. 4th 1367 (2007) ....................22

*Ladd v. County. of San Mateo*, 12 Cal. 4th 913 (1996) ....................16

*Lazar v. Superior Court*, 12 Cal. 4th 631 (1996) ....................16

*Rather v. CBS Corp.*, 886 N.Y.S. 2d 121 (App. Div. 2009) ........ 21

*Silas v. Arden*, 213 Cal. App. 4th 75 (2012) ........ 22

*Stanley v. Richmond*, 35 Cal. App. 4th 1070 (1995) ........ 21

*Stilson v. Moulton–Niguel Water Dist.*, 21 Cal. App. 3d 928 (1971) ........ 13

**State Statutes**

California Worker's Compensation Act ........ 9, 22, 23

Worker's Compensation Act ........ 22

Workers' Compensation Act ........ 22

**Rules**

Federal Rule of Civil Procedure 12 ........ 11

## POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

### I. INTRODUCTION

Over seven months have elapsed since AMN Healthcare Services, Inc.[1] and AMN Healthcare Interim Solutions, LLC (formerly known as B.E. SMITH INTERIM SERVICES, LLC, and erroneously sued as "B.E. SMITH" in the original Complaint) filed their motion to dismiss the Complaint on December 22, 2023. (Doc. Nos. 8) That motion was mooted by Plaintiff's decision to voluntarily dismiss those Defendants on January 15, 2024. (Doc. Nos. 16, 17.) On July 24, 2024, Plaintiff filed her First Amended Complaint, newly naming AMN Healthcare, Inc.[2] and again naming AMN Healthcare Interim Solutions, LLC (together, "AMN Defendants") as defendants. (Doc. No. 37 ("FAC").) Despite the extended amount of time that Plaintiff had to amend her pleading—and even though Plaintiff is a Georgia-licensed attorney proceeding *pro se*—Plaintiff has failed to remedy most of the pleading deficiencies identified by AMN Defendants in their prior motion.

Accordingly, this Motion is brought on the ground that Plaintiff fails to state any plausible claim against AMN Defendants. Specifically, Plaintiff has again failed to plausibly plead agency theory or any other theory of joint liability that would support Claims 1–7 against AMN Defendants. Further, Claims 2 (gross negligence), 4 (intentional misrepresentation/fraud/deceit), and 7 (for negligent hiring, retention, training and/or supervision) suffer additional pleading deficiencies that warrant dismissal. Plaintiff's claims alleging direct liability against AMN Defendants (Claim 8 for negligent hiring, retention, training and/or supervision, and Claim 9 for breach of fiduciary duty) fail to allege facts sufficient to support such claims.[3]

As an alternative argument, even if this Court were to find that Plaintiff's allegations against AMN Defendants were otherwise sufficient to state a claim, Plaintiff's Claims 1 (negligence), 2

---

[1] Plaintiff has not named AMN Healthcare Services, Inc. in the FAC.

[2] AMN Healthcare Services, Inc. and AMN Healthcare, Inc. are separate entities.

[3] Although the caption of Plaintiff's First Amended Complaint refers to eight claims, the body of the First Amended Complaint refers to nine claims; Plaintiff's negligent hiring claim is stated as two separate claims, Claims 7 and 8, and Plaintiff's breach of fiduciary duty is brought as Claim 9. (FAC at ¶¶ 131–87.)

(gross negligence), 5 (IIED), and 7 and 8 (both for negligent hiring, retention, supervision, and training) should still be dismissed as against AMN Defendants because they would be preempted by the California Worker's Compensation Act.

For these reasons, AMN Defendants respectfully request that the Court dismiss, with prejudice, the entire First Amended Complaint as against them.

## II. PROCEDURAL BACKGROUND

On October 25, 2023, Plaintiff filed her Complaint in this Court. (Doc. No. 1.) On December 22, 2023, AMN Healthcare Services, Inc. and AMN Healthcare Interim Solutions, LLC moved to dismiss the Complaint on several grounds. (Doc. No. 8.) That same day, Defendant Avis Budget Group, Inc. ("Avis") filed an Answer to the Complaint. (Doc. No. 13.) On January 15, 2024, before the Motion to Dismiss the Complaint could be heard, Plaintiff filed a notice of voluntary dismissal of "B.E. Smith and AMN Healthcare Services [Inc.]", leaving Avis as the only named defendant remaining in the case. (Doc. No. 16, 17.)

Over six months later, Plaintiff filed a motion for leave to amend the Complaint, which among other things, sought to re-add AMN Defendants back into this lawsuit. (Doc. No. 31.) The Court granted the motion. (Doc. No. 36 at 2.)

On July 24, 2024, Plaintiff filed her First Amended Complaint, alleging nine causes of action. (Doc. No. 37.) Although Plaintiff is proceeding *pro se*, she is an attorney. (FAC at 1 (identifying Plaintiff as "Esquire")).

AMN Defendants now move to dismiss all claims against them.

## III. FACTUAL BACKGROUND

Plaintiff alleges the following facts as relevant to this motion.[4] Plaintiff is a travelling nurse who took an assignment from AMN Healthcare Interim Solutions, LLC[5] to act as an interim nurse

///

///

---

[4] AMN Defendants do not hereby admit or deny the facts as pleaded by Plaintiff.

[5] As noted above, B.E. Smith Interim Services, LLC is now known as "AMN Healthcare Interim Solutions, LLC."

manager in the Bay Area beginning in December 2020 or early 2021. (FAC ¶¶ 1, 15.) [6] "As part of [] Plaintiff's compensation package, she was to receive a fully paid for rental vehicle[.]" (*Id.* ¶ 19.) Plaintiff alleges that she "was not allowed to choose a rental car company for herself. All rental car arrangements were made/managed and paid for by AMN Healthcare Interim Solutions, LLC and/or its parent company, AMN Healthcare Inc." (*Id.*)

Plaintiff alleges that she "picked up a corporate rental car from Defendant Avis at the San Francisco Airport on approximately January 11, 2021. She remained in Avis's rental vehicles until October 2022." (*Id.* ¶ 25.) She "was directed by Defendant Avis to periodically exchange her designated rental vehicle for a new one." (*Id.* ¶ 26.) Plaintiff alleges that she "notified AMN Healthcare Interim Solutions LLC on at least two occasions that the cars she received from the Avis Budget Group were being sent out with an excessive number of service and caution lights on." (FAC ¶ 156.)

Plaintiff avers that "[i]n June 2022, there was a car break-in with a catalytic converter theft from a Toyota at Plaintiff's residence" and that because of this, she "went to exchange her then rented Toyota for another make and model vehicle at Avis at SFO" on June 26, 2022. (*Id.* ¶¶ 28, 92.) Plaintiff asserts that "[i]t was a very busy day at Avis." (*Id.* ¶ 29.) "Eventually Plaintiff was given a vehicle with the alleged associated paperwork, but when she arrived to inspect the vehicle, it was unacceptable." (*Id.*)

Plaintiff alleges that she "flagged down another Avis employee and asked that he send a manager to help her find another car. Approximately 20 minutes later, a manager appeared." (*Id.* ¶ 30.) Plaintiff and the manager walked "across the parking lot looking for acceptable cars." (*Id.*) Ultimately, "[t]hey settled on a late Nissan Altima black in color" and "[t]he manager told the Plaintiff that she may take the car and proceed to the gate." (*Id.*) Plaintiff proceeded to the security

[6] Throughout the First Amended Complaint, Plaintiff refers to AMN Healthcare Interim Solutions, LLC, AMN Healthcare Interim Services, and AMN Healthcare Interim Services LLC. However, Plaintiff also pleads that "[a]ccording to counsel for AMN, the parties were misidentified." (FAC ¶ 6.) Thus, this inconsistency appears to be unintentional as Plaintiff is attempting to state what was explained in the prior motion to dismiss: B.E. Smith Interim Services, LLC is now known as "AMN Healthcare Interim Solutions, LLC[.]" (Doc. No. 8.)

gate "where she presented her license and paperwork to the guard. The guard inspected the paperwork, license, and vehicle. He then motioned for the Plaintiff to exit the gate after he opened it." (*Id.* ¶ 31.)

Plaintiff asserts that "[i]n June 2022," Avis "filed a false police report … stating that the vehicle issued to the Plaintiff was stolen[.]" (*Id.* ¶ 33.) On October 26, 2022, she was arrested for stealing the vehicle. (*Id.* ¶ 35.) The officers "found the rental paperwork in the car that Plaintiff received when she rented the vehicle, but it still had the old rental information written in on the document from the day of the rental exchange on June 26, 2022." (*Id.* ¶ 36.) "When law enforcement called Avis to verify the status of the vehicle, Avis told them that no one was listed as the driver or responsible party for the vehicle. The vehicle was not listed as being rented at all." (*Id.* ¶ 37.) "Plaintiff remained in jail until the following afternoon." (*Id.* ¶ 42.) Upon being released from jail, Plaintiff called "her employer, Defendant AMN Healthcare Interim Solutions, LLC." (*Id.* ¶ 44.)

## IV. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. While a court must assume the veracity of "well-pleaded factual allegations," a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007).

The liberal pleading standard afforded to *pro se* parties does not apply to *pro se* attorneys. *Huffman v. Lindgren*, 81 F.4th 1016, 1020–21 (9th Cir. 2023) (citations omitted) ("The circuits that have reached the issue speak with one voice: they have uniformly declined to extend the liberal pleading standard to pro se attorneys. . . . We join this chorus.").

///

## V. LEGAL ARGUMENT

### A. PLAINTIFF'S CLAIMS 1-7 SHOULD BE DISMISSED BECAUSE SHE FAILS TO PLAUSIBLY PLEAD AGENCY THEORY OR OTHER THEORIES OF JOINT LIABILITY THAT WOULD SUPPORT ANY OF HER CLAIMS

With respect to AMN Defendants, Plaintiff's primary contention is that AMN Defendants are liable under agency theory.[7] Specifically, in Claims 1–7, Plaintiff invokes agency theory to attempt to impose liability on the AMN Defendants for the alleged actions of Avis's employees. In each of Claims 1–7, she alleges the following;

> Under agency law, AMN Healthcare Interim Solutions LLC and AMN Healthcare Inc, as principals in an agency/agreement with the Avis Budget Group, are responsible to the Plaintiff for harm done to her as a third party, by the tortious acts committed by their agent, the Avis Budget Group, Inc (as itself and in alias) and its employees, subcontractors, and franchisees even though the AMN Defendants may not have directly committed the tortious acts themselves.

(FAC ¶¶ 56, 67, 72, 90, 108, 124, 132.)

Plaintiff also includes a section heading in her First Amended Complaint titled "AGENCY AND CONCERT OF ACTION" in which she alleges that Avis:

> was the agent, servant, employee, partner, aider, abettor, contractor, subcontractor, co-conspirator and/or joint venturer of the remaining Defendants, AMN Healthcare Interim Solutions, LLC and AMN Healthcare, Inc named herein, and it was at all times operating and acting within the purpose, scope, alter ego and/or joint venture, and with the permission and consent of the co-Defendants, knowing that their conduct was wrongful and/or unlawful, and each Defendant ratified and approved the acts of each of the remaining co-Defendants such that liability for the actions of one Defendant should be imputed to the others as it they had committed tortious acts complained of herein directly themselves.

(FAC ¶ 13.) Plaintiff does not plead allegations in support of her agency assertions beyond her own legal conclusion that there was an "agency/agreement created for the benefit of the Plaintiff as a third party and with the Defendant, the Avis Budget Group, Inc (operating as itself and/or under any other identities, names, and forms) functioning as the agent, servant, subcontractor, joint venturer or

---

[7] Claims 8 and 9 are brought against AMN Defendants on a theory of direct liability and are separately addressed *infra*.

co-conspirator[,]" (FAC ¶ 22), between Avis and AMN Defendants.[8] This is insufficient to state a claim against the AMN Defendants based on any agency relationship with Avis:

> Under California law, an agent is defined as "one who represents another, called the principal, in dealings with third persons." CAL. CIV. CODE § 2295. "In determining if an agent relationship exists, the court considers three essential characteristics: (1) an agent or apparent agent holds a power to alter the legal relationships between the principal and third persons and between the principal and himself; (2) an agent is a fiduciary with respect to matters within the scope of the agency; and (3) a principal had the right to control the conduct of the agent with respect to matters entrusted to him." *Grober v. Mako Productions, Inc.*, No. CV 04–08604 SGL (OPx), 2008 WL 9027249, *6 (C.D. Cal. Aug. 29, 2008) (citing *Garlock Sealing Techs., LLC v. NAK Sealing Techs. Corp.*, 148 Cal.App.4th 937, 945, 56 Cal.Rptr.3d 177 (2007)); *Palomares v. Bear Sterns Residential Mortg. Corp.*, No. CV 07–1899 WQH (BLM), 2008 WL 686683, *4 (S.D.Cal. Mar. 13, 2008).

*Gerritsen v. Warner Bros. Entertainment Inc.*, 112 F. Supp. 3d 1011, 1046 (C.D. Cal. 2015); *see also ING Bank, FSB v. Chang Seob Ahn*, 758 F. Supp. 2d 936, 941 (N.D. Cal. 2010) (quoting *Stilson v. Moulton–Niguel Water Dist.*, 21 Cal. App. 3d 928, 936 (1971) ("[T]he most important factor of an agency or employee relationship is the right to control the manner and means of accomplishing the result desired.").

Plaintiff does not plausibly allege—nor can she—that AMN Defendants had control over Avis's San Francisco airport location. Nor does Plaintiff plausibly allege that Avis held the power to alter AMN Defendants' legal relationships or that Avis is a fiduciary of AMN Defendants. Accordingly, Plaintiff has not adequately alleged liability against AMN Defendants based on the existence of an agency relationship with Avis. *See Gerritsen*, 112 F. Supp. 3d at 1046 (emphasis in original) (finding an agency relationship not plausibly alleged where the plaintiff pleaded "no *facts*

---

[8] Outside of her agency allegations, Plaintiff also asserts "AMN Healthcare Interim Solutions LLC/AMN Healthcare, Inc had the power, responsibility, and duty to make sure that its vendor, Avis Budget Group, operated [in] a safe manner within the four corners of the law and only rented vehicles that were safe to drive to its nursing management employees." (*id.* ¶178.) As this conclusory assertion was made as part of Claim 9, it would not appear to be part of her allegations relating to agency. However, even if it is considered as such, her agency allegations are still insufficient as explained herein.

supporting the conclusions that [two defendants] were 'completely dominated and controlled' by [a third defendant][.]").

Similarly, to the extent Plaintiff is attempting to plead any other theory of joint liability, she provides no factual support for her allegations that Avis was the "servant, employee, partner, aider, abettor, contractor, subcontractor, co-conspirator and/or joint venturer of" AMN Defendants. (FAC ¶ 13.) Courts in this circuit have found boilerplate allegations of joint liability similar to Plaintiff's insufficient to state a claim. *Oaktree Principal Fund V, LP v. Warburg Pincus LLC*, No. CV158574PSGMRWX, 2016 WL 6782768, at *11 (C.D. Cal., Aug. 9, 2016) (citing *Mindlab Media, LLC. v. LWRC Int'l LLC*, No. CV 11–3405 CAS-FEMX, 2012 WL 386695, at *4 (C.D. Cal. Feb. 6, 2012)) ("Finally, the Court notes that Plaintiffs' conclusory allegation that '[e]ach of the Defendants is also a joint venturer, partner, co-conspirator, principal, agent and aider and abettor of each of the other Defendants, and at all relevant times was acting in the course and scope of said joint venture, partnership, conspiracy and agency' is insufficient without further factual support.").

Moreover, Plaintiff will not be able to amend her First Amended Complaint to state a plausible claim based on the relationship between AMN Defendants and Avis, a third-party vendor. Where such liability has been found, the principal retained control over the undertaking. For example, in *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871 (9th Cir. 2014), *aff'd but criticized*, 577 U.S. 153 (2016), *as revised* (Feb. 9, 2016),[9] the Ninth Circuit held that the defendant could be held vicariously liable for TCPA violations although it outsourced dialing and did not actually make any call on behalf of its client, reasoning that the statute's implementing agency, the Federal Communications Commission, had "repeatedly acknowledged the existence of vicarious liability under the TCPA." *Gomez*, 768 F.3d at 877. The court explained that "a defendant may be held

[9] In making this determination, the Ninth Circuit applied *Chevron* deference. *Gomez v. Campbell-Ewald Co.*, 768 F.3d at 878. The Supreme Court later noted that "the Federal Communications Commission has ruled that, under federal common-law principles of agency, there is vicarious liability for TCPA violations. . . . The Ninth Circuit deferred to that ruling, . . . and we have no cause to question it." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 168 (2016), *as revised* (Feb. 9, 2016) (citations omitted). In light of the Supreme Court's recent decision in *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024) overturning *Chevron* deference, the viability of this argument (*i.e.*, that the TCPA allows for vicarious liability) is questionable.

vicariously liable for TCPA violations where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller." *Id.* at 879. *Gomez* did not itself list the factors for determining agency under federal common law, but "Ninth Circuit courts apply common law agency principles from the Restatement (Third) of Agency." *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 939 (D. Or. 2020) (citing *Mavrix Photographs, LLC* v. *LiveJournal, Inc.*, 873 F. 3d 1045, 1054 (9th Cir. 2017)). "An actual agency relationship requires '(1) a manifestation by the principal that the agent shall act for him; (2) that the agent has accepted the undertaking; and (3) that there is an understanding between the parties that the principal is to be in control of the undertaking.'" *Id.* (citing *Sun Microsystems, Inc. v. Hynix Semiconductor, Inc.*, 622 F. Supp. 2d 890, 899 (N.D. Cal. 2009) (itself citing Restatement (Third) of Agency § 1.01) (2006))). Accordingly, under federal common law principles in the Ninth Circuit, liability for the actions of a third-party vendor requires that the principal be in control of the undertaking. Similarly, in *DiLeo v. Meijer Stores Ltd. P'ship*, 425 F. Supp. 3d 979 (N.D. Ill. 2019), the plaintiff customer sought to hold a store accountable for her slip and fall injury caused when a third-party vendor left a puddle on the floor. The court found that the store could potentially be liable for the third-party vendor's actions, but only because the third-party vendor was on the store's premises, meaning the store maintained control over the premises. *Id.* at 982.

Here, Plaintiff does not and cannot plausibly allege any facts suggesting AMN Defendants had any control whatsoever over Avis's San Francisco airport location or its employees working there, as she must to plead an agency relationship under California law. *See Gerritsen*, 112 F. Supp. 3d at 1046. Because Plaintiff cannot plausibly allege that Avis was acting as AMN's agent or that any other joint liability theory applies, the Court should dismiss Claims 1–7.

### B. <u>PLAINTIFF'S CLAIMS 1, 4, AND 7 SHOULD ALSO BE DISMISSED BECAUSE THEY ARE NOT SUFFICIENTLY PLEADED AND/OR ARE DUPLICATIVE</u>

#### 1. Plaintiff's Claim 2 for Gross Negligence Is Duplicative of Claim 1

The Court should dismiss Claim 2 for gross negligence as duplicative of Claim 1 for negligence. "The elements of a cause of action for negligence in California are: (1) a legal duty to use due care; (2) a breach of that legal duty; and (3) the breach was the proximate or legal cause of

the resulting injury." *White v. Soc. Sec. Admin.*, 111 F. Supp. 3d 1041, 1054 (N.D. Cal. 2015) (citing *Ladd v. County. of San Mateo,* 12 Cal. 4th 913, 917–18 (1996)). "Ordinary and gross negligence are not separate causes of action in California." *In re Facebook, Inc., Consumer Privacy User Profile Litigation*, 402 F. Supp. 3d 767, 800 (N.D. Cal. 2019) (citing *Nypl v. Crisis Prevention Institute*, No. 16-cv-04956-JSC, 2018 WL 4488760, at *9 n.6 (N.D. Cal. Sept. 17, 2018)). "[E]ven if one was to distinguish between gross negligence and ordinary negligence, it would be a debate over the extremity of the negligence in question, not over the type of tort." *Gonzalez v. Gen. Elec.*, No. 23-cv-01866-MEMF-SK, 2023 WL 4203379, at *3 (C.D. Cal. June 23, 2023) (quoting *Cont'l Ins. Co. v. Am. Prot. Indus.*, 242 Cal. Rptr. 784, 788) (Ct. App. 1987) ("Do [California] Courts Recognize a Cause of Action for 'Gross Negligence'? No.") Accordingly, the Court should dismiss Claim 2 for gross negligence. *See id.* at 4. (granting a motion to dismiss a claim for gross negligence, concluding that "the [plaintiff] may argue that her fifth cause of action of negligence rises to a degree of gross negligence, but she cannot raise a distinct cause of action for gross negligence itself."); *but see D'Antonio v. Monterey Bay Mil. Hous., LLC,* No. 4:21-CV-2607-YGR, 2021 WL 5771139, at *5 (N.D. Cal. Dec. 6, 2021) (emphasis in original) (denying a motion to dismiss and allowing a plaintiff to pursue separate causes of action for ordinary negligence and gross negligence "*only in the alternative*, as they cannot recover under both theories.").

Accordingly, the Court should dismiss Claim 2.

**2. Plaintiff Fails To Plead Claim 4 for Intentional Misrepresentation/Fraud/Deceit With The Particularity Required By Rule 9(b)**

"The elements of a claim for intentional misrepresentation are (1) a misrepresentation; (2) knowledge of falsity; (3) intent to induce reliance; (4) actual and justifiable reliance; and (5) resulting damage." *Cisco Systems, Inc. v. STMicroelectronics, Inc.*, 77 F. Supp. 3d 887, 897 (N.D. Cal. 2014) (citing *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996)). "[I]ntentional misrepresentation claims sound in fraud and must meet the requirements of Rule 9(b)." *LeGrand v. Abbott Laboratories*, 655 F. Supp. 3d 871, 895–96 (N.D. Cal. 2023) (*citing Carter v. Rasier-CA, LLC*, No. 17-CV-00003-HSG, 2017 WL 4098858, at *4 (N.D. Cal. Sept. 15, 2017)); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d

616, 627 (9th Cir. 1997)) ("Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged."). Plaintiff's theories of fraud are muddled, and she has failed to plead her claim for intentional misrepresentation with the required particularity as she has not adequately alleged the "who", the "what" or the "how".

In regard to "who," Plaintiff alleges that:

> [t]he Avis Budget Group, Inc, ostensibly as itself and in alias, through its employees, subcontractors, joint venturers, business partners, and agents, both in words and through deeds, while serving as an agent for the AMN Healthcare Interim Solutions LLC and AMN Healthcare Inc, intentionally deceived and defrauded the Plaintiff by executing a falsified a car rental exchange for her benefit and by issuing the Plaintiff falsified rental paperwork on June 26, 2022[.]

(Compl. ¶ 91.) She also alleges that she "presented all of the documents and credentials necessary and required to exchange her rental vehicle to Avis Budget Group personnel at the SFO rental counter and exit gates[,]" and that "[t]he Avis Budget Group through its employees, subcontractors, and business partners fraudulently failed to capture any of this information in the rental exchange process." (*Id.* ¶ 92.) It is unclear whether Plaintiff is referring to the counter agent described in paragraph 29, the manager described in paragraph 30, both, or additional unidentified Avis employees allegedly involved in preparing the rental agreement. Adding to the confusion, Plaintiff elsewhere alleges that "Avis Budget Group and its employees continued to defraud the Plaintiff by waiving her through the exit gate of the rental car agency after conducting a 'fake examination' of the 'phantom' rental paperwork that she had been given" and that the "Avis exit gate employee put on an act or performance, and went through the motions of examining the paperwork[.]" (*Id.* ¶ 94.)

Regarding the "what" and the "how," Plaintiff alleges that "Avis and its employees intentionally, outrageously, and/or recklessly defrauded the Plaintiff by giving her false documentation substantiating a rental that they did not execute." (*Id.* ¶ 103.) Plaintiff does not explain in this claim how the paperwork was false. In paragraph 68 of the First Amended Complaint (a separate claim), she alleges that the paperwork contained "false return dates and a fake rental agreement number." (*Id.* ¶ 68.) Earlier in the First Amended Complaint, Plaintiff alleges that the paperwork "still had the old rental information written in on the document from the day of the rental exchange on June 26, 2022." (*Id.* ¶ 36.) Accordingly, by her own allegations, Plaintiff would have

known that the rental agreement was erroneous if she read the paperwork. Additionally, Plaintiff does not explain if she is alleging that the rental agreement number is "fake" because it did not apply to the car she ultimately rented or because the number was totally fabricated by an Avis employee.

It is also unclear if Plaintiff is alleging only that the rental paperwork was false or if she is also attempting to plead that an Avis employee, or Avis employees, verbally misrepresented to her that the paperwork was a valid rental agreement. If Plaintiff intends to allege that Avis employees made verbal misrepresentations to her, Plaintiff would also need to plead the "'the who, what, when, where, and how' of the misconduct charged" (here, verbal misrepresentations), which she has not done. *See Vess*, 317 F.3d at 1106; *see also United States ex rel. Jones v. Sutter Health*, 499 F. Supp. 3d 704, 710 (N.D. Cal. 2020) (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) ("[C]laims sounding in fraud must allege 'an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'"). It is similarly unclear if Plaintiff is attempting to state a claim for fraudulent concealment or nondisclosure based on her allegation that "Avis Budget Group employees, business partners, and subcontractors released the Plaintiff from the rental center at SFO on June 26, 2022, without issuing to the Plaintiff any physical or electronic documentary evidence that the Plaintiff had legitimately exchanged or rented the vehicle that she was given to drive." (FAC ¶ 95.)

Further, to the extent Plaintiff is attempting to allege as a theory of fraud that "[t]he Avis Budget Group lied to police about the whereabouts of the vehicle in reference because they did not know where the vehicle was because no one (not even a single employee, subcontractor, or business partner) in the rental exchange process took the time to record the Plaintiff's rental exchange in the system," it is implausibly pleaded and undermines her fraud claim. (*Id.* ¶ 98.) Fraud requires knowledge of falsity and intent to induce reliance. *Cisco Systems, Inc.*, 77 F. Supp. 3d at 897. "[N]ot know[ing] where the vehicle was because no one . . . took the time to record the Plaintiff's rental exchange in the system" is inconsistent with Plaintiff's allegations that she was intentionally deceived and defrauded. (*See* FAC ¶ 98.)

Accordingly, the Court should dismiss Claim 4.

///

### 3. Plaintiff Fails To Plausibly Plead Claim 7 for Negligent Hiring, Retention, Supervision, and Training

Regarding Claim 7 for negligent hiring, retention, supervision, and training,[10] as discussed above, Plaintiff has not pleaded facts sufficient to hold AMN Defendants liable for Avis' employees' actions based on agency theory. Moreover, Plaintiff does not even plausibly plead negligent hiring against Avis, the primary actor.

"Under California law, an employer may be held directly liable for the behavior of an unfit employee where the employer was negligent in the hiring, training, supervising, or retaining of that employee." *Doe v. Uber Technologies, Inc.*, 184 F. Supp. 3d 774, 788 (N.D. Cal. 2016) (J., Illston) (citing *Delfino v. Agilent Techs., Inc.*, 145 Cal. App. 4th 790, 815 (2006)). "Negligence is a core element of this claim—the plaintiff must demonstrate that the employer 'knew or should have known that hiring the employee created a particular risk or hazard and that particular harm materializes.'" *Keum v. Virgin America Inc.*, 781 F.Supp.2d 944, 951 (N.D. Cal. 2011) (citing *Delfino*, 145 Cal.App.4th at 815). "Liability may be imposed 'either on the basis of ... action—for example, the negligent hiring of an agent—or ... inaction—for example, the failure to provide adequate supervision of the agent's work.'" *Doe*, 184 F. Supp. 3d at 788 (quoting *Far West Financial Corp. v. D & S Co.*, 46 Cal.3d 796, 812 (1988)).

Plaintiff alleges that "[a]t least three of Avis's employees, agents, or contractors were unfit or incompetent to perform the work for which they were hired including the initial car rental counter agent who did not know how to properly execute a car rental contract or exchange and the exit gate agent who failed to check to make sure that the vehicle that the Plaintiff was driving actually matched the car information in Avis's car rental systems." (FAC ¶ 134.) Plaintiff pleads no facts in support of this beyond her conclusory allegation that "[a]t all points, the conduct, actions, and omissions of Avis personnel, as described, were foreseeable to the Avis Budget Group and its corporate managers, directors, and regional and national leadership teams especially given the highly

[10] Plaintiff attempts to plead two claims for negligent hiring, retention, supervision, and training: one against AMN Defendants for negligent hiring of Avis (Claim 8), and one against Avis for negligent hiring of its employees, which Plaintiff alleges AMN Defendants are liable for under agency theory principles (Claim 7). (FAC ¶¶ 131–67.)

publicized false arrest and false imprisonment scandal that Avis's fellow car rental colleague, Hertz, was involved in at the time." (FAC ¶ 138.) This is not sufficient to plead that Avis knew or should have known that any of its employees were unfit or incompetent to perform the work for which they were hired, or that Avis was negligent in retaining, supervising, or training those employees. *See Doe*, 184 F. Supp. 3d at 777–78 (finding a negligent hiring, supervision, and retention claim insufficiently pleaded where the plaintiff did "not allege that anything existed in Dakiri's background that Uber knew or should have known and that should have prevented Uber's approval of Dakiri as a driver."). Accordingly, the Court should dismiss Claim 7 in its entirety.

### C. PLAINTIFF FAILS TO PLAUSIBLY PLEAD HER DIRECT LIABILITY CLAIMS AGAINST AMN DEFENDANTS (CLAIMS 8 AND 9)

Plaintiff also attempts to plead two claims against AMN Defendants based on a theory of direct liability. Both claims are insufficiently pleaded.

#### 1. Claim 8 Is Not Plausibly Pleaded

In her eighth claim for negligent hiring, retention, supervision, and training, Plaintiff alleges that AMN Defendants were negligent in the "selection, supervision, and monitoring" of Avis (a third-party vendor) to provide rental cars to its interim managers. (FAC ¶¶ 148.) Plaintiff alleges that she "notified AMN Healthcare Interim Solutions LLC on at least two occasions that the cars she received from the Avis Budget Group were being sent out with an excessive number of service and caution lights on[,]" (FAC ¶ 156), and that because of these reports, AMN Defendants "knew or should have known that there were unsafe and unsound rental conditions taking place at the Avis Budget Group's rental car location based out of the San Francisco Airport (SFO)." (FAC ¶ 159.) Additionally, she pleads that AMN Defendants "knew or should have known about a well-publicized, high profile class action suit filed against car rental giant Hertz in which it was alleged that Hertz, like Avis, routinely arrested customers for car thefts on cars that were legitimately rented." (FAC ¶ 160.)

To adequately state a claim, in addition to pleading that Avis was AMN Defendants' agent (which Plaintiff has not adequately done, as discussed above), Plaintiff must plead facts to plausibly allege that AMN Defendants knew or should have known that Avis's employees posed a danger, and

that the harm about which they had notice later materialized. *Doe*, 184 F. Supp. 3d at 777–78. Plaintiff has not pleaded facts showing that the AMN Defendants knew or should have known that contracting with Avis created a particular risk or hazard that later materialized. While Plaintiff alleges that she put AMN on notice that Avis was renting out cars with service lights on, she has not and cannot plead that this somehow put AMN Defendants on notice that Plaintiff might later be falsely accused of stealing Avis's vehicle and put in jail. Nor would the existence of a lawsuit against a separate car rental company (Hertz) do anything to put the AMN defendants on notice that Avis's employees might engage the conduct to which Plaintiff claims she was subjected.

**2. Claim 9 Is Not Plausibly Pleaded**

In her ninth claim for breach of fiduciary duty, Plaintiff alleges that AMN Defendants "both had a fiduciary duty to act with care with respect to the car rentals that it [sic] secured for the benefit of the Plaintiff." (FAC ¶ 169.) "The elements of a cause of action for breach of fiduciary duty are (1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach." *MH Pillars Ltd. v. Realini*, 277 F. Supp. 3d 1077, 1095 (N.D. Cal. 2017) (citing *Stanley v. Richmond*, 35 Cal. App. 4th 1070, 1086 (1995)).

"There is [] no general fiduciary relationship between an employer and an employee." *Tuomela v. Waldorf-Astoria Grand Wailea Hotel*, No. CV 20-00117 JMS-RT, 2021 WL 232809, at *3 (D. Haw. Jan. 22, 2021) (collecting cases). "Although an agency relationship between an employee and employer may sometimes create fiduciary duties . . . such duties generally run from an employee to the employer, not the other way." *Id.* (citations omitted).

Accordingly, the Court should dismiss Claim 9. *See Rather v. CBS Corp.*, 886 N.Y.S. 2d 121, 125 (App. Div. 2009) ("[E]mployment relationships do not create fiduciary relationships. Simply put, the employer did not owe plaintiff, as employee, a fiduciary duty.") (citations and editorial marks omitted) (collecting cases); *Dalton v. Camp*, 548 S.E.2d 704, 707–08 (N.C. 2001) ("Under the general rule, the relation of employer and employee is not one of those regarded as confidential [for purposes of a breach of fiduciary duty].") (citations and quotation marks omitted); *Pero v. Int'l Bus. Machines Corp.*, No. 12–CV–07484 (KM), 2014 WL 37233, at *4 (D.N.J. Jan. 2,

2014) (dismissing breach of fiduciary duty claims for lack of case law holding that an employer owes a fiduciary duty to pay wages or commissions to its employees).

### D. ALTERNATIVELY, PLAINTIFF'S FIRST, SECOND, FIFTH, SEVENTH AND EIGHTH CLAIMS ARE PREEMPTED BY WORKERS COMPENSATION PREEMPTION

If the Court were to find that Plaintiff's allegations against AMN Defendants are otherwise sufficient to state a claim against AMN Defendants, Plaintiff's Claims 1 (negligence), 2 (gross negligence), and 5 (IIED), should still be dismissed as against AMN Defendants because they would be preempted by the California Worker's Compensation Act. Additionally, Plaintiff's Claim 7 and 8 for negligent hiring, supervision, and/or training would also be preempted to the extent they are based on the same conduct that underlies the negligence and IIED claims.

"[A]n employee injured during the course of employment is generally limited to remedies available under the Workers' Compensation Act." *Rodriguez v. United Airlines, Inc.*, 5 F. Supp. 3d 1131, 1135 (N.D. Cal. 2013) (quoting *Jensen v. Amgen, Inc.*, 105 Cal. App. 4th 1322, 1325 (2003)). "An employee who suffers an injury in the course of his employment may recover damages in an action at law only if he comes within certain exceptions to the workers' compensation law." *Id.* (first citing *Foster v. Xerox Corp.*, 40 Cal. 3d 306, 308 (1985); then citing *Silas v. Arden*, 213 Cal. App. 4th 75, 91 (2012)). Under California law, both negligence claims and intentional infliction of emotional distress claims "arising in the course of employment are barred under the Worker's Compensation Act 'when the misconduct attributed to the employer is actions which are a normal part of the employment relationship, such as demotions, promotions, criticism of work practices, and frictions in negotiations as to grievances.'" *Kaldis v. Wells Fargo Bank, N.A.*, 263 F. Supp. 3d 856, 867 (C.D. Cal. 2017) (quoting *Cole v. Fair Oaks Fire Prot. Dist.*, 43 Cal.3d 148, 160 (1987)) (additional citations omitted). Negligent hiring, supervision, and training claims may also be preempted. *See Jones v. Dep't of Corr. & Rehab.*, 152 Cal. App. 4th 1367, 1384 (2007) (finding a negligent supervision and retention claim barred by worker's compensation exclusivity to the same extent as the employee's assault and battery claims it was based upon).

AMN Defendants' alleged conduct on which Plaintiff bases her claims, while not sufficient to adequately allege agency or direct liability, is a normal part of the employment relationship. At

most, and not conceding the fact, AMN Defendants provided Plaintiff with a rental vehicle from Avis and then "ignored the seriousness of Plaintiff's complaints regarding the safety of the cars that she was forced to drive" when Plaintiff "notified AMN Healthcare Interim Solutions LLC on at least two occasions that the cars she received from the Avis Budget Group were being sent out with an excessive number of service and caution lights on." (FAC ¶¶ 156–57.) These are the common sort of workplace events and grievances that are within the risks inherent to the employment relationship. *See Grotz v. Kaiser Found. Hosps.*, No. C-12-3539 EMC, 2012 WL 5350254, at *11 (N.D. Cal. Oct. 29, 2012) (finding a claim for negligent infliction of emotional distress preempted by workers' compensation where the plaintiff's allegations "concern[ed] [the defendant's] alleged misconduct in the course of handling her workplace grievances, disciplining her, and ultimately firing her.").

Accordingly, even if the Court were to find Plaintiff's allegations sufficient to state a claim against AMN Defendants based on agency theory and her direct liability theory, and even if the Court were to overlook the other pleading deficiencies identified above, the Court should dismiss Claims 1, 2, 5, 7 and 8 because they would be preempted by the California Worker's Compensation Act.

### E. LEAVE TO AMEND WOULD BE FUTILE

Plaintiff has had ample time, seven months, to remedy the pleading deficiencies in her First Amended Complaint. The fact that she addressed some of the deficiencies AMN Defendants identified in their first motion to dismiss (such as the duplicative claim for negligent infliction of emotional distress, which she no longer brings in the First Amended Complaint) but not others suggests that Plaintiff cannot plead facts to cure these deficiencies. Accordingly, further leave to amend would be futile.

///

///

///

///

///

///

## VI. CONCLUSION

For these reasons, AMN Defendants' respectfully request that the Court dismiss, with prejudice, all claims against them.

Dated: August 7, 2024 **WILSON TURNER KOSMO LLP**

By: /s/ *Mary P. Snyder*
MARY P. SNYDER
ANA R. HARTMAN
MEGHAN A. CRUMM
Attorneys for Defendants
AMN HEALTHCARE, INC. and
AMN HEALTHCARE INTERIM SOLUTIONS, LLC