WILSON TURNER KOSMO LLP
MARY P. SNYDER (211228)
ANA R. HARTMAN (259399)
MEGHAN A. CRUMM (342007)
402 West Broadway, Suite 1600
San Diego, California 92101
Telephone: (619) 236-9600
Facsimile: (619) 236-9669
E-mail: msnyder@wilsonturnerkosmo.com
E-mail: ahartman@wilsonturnerkosmo.com
E-mail: mcrumm@wilsonturnerkosmo.com

Attorneys for Defendants
AMN HEALTHCARE, INC. and
AMN HEALTHCARE INTERIM SOLUTIONS, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AVIA TURNER-GRAY,<br><br>Plaintiff,<br><br>v.<br><br>AMN HEALTHCARE INTERIM SOLUTIONS, LLC; AMN HEALTHCARE, INC.; AVIS BUDGET GROUP; DOES 1-50,<br><br>Defendants. | Case No. 3:23-cv-05507-SI<br><br>**AMN DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF AVIA TURNER-GRAY'S SECOND AMENDED COMPLAINT UNDER FED. R. CIV. P._UNDER FED. R. CIV. P. 9(b) AND 12(b)(6); POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: January 10, 2025<br>Time: 10:00 a.m.<br><br>Judge: Hon. Susan Illston<br>Courtroom: 1<br><br>Trial Date: Not Set<br>Complaint Filed: October 25, 2023 |

**TO ALL PARTIES AND/OR THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on January 10, 2025 at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 1 of the United States District Court for the Northern District of California, located at San Francisco Courthouse, 17th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants AMN HEALTHCARE, INC. and AMN HEALTHCARE INTERIM SOLUTIONS, LLC (together, "AMN Defendants") will, and hereby do move this Court for an Order dismissing each cause of action in Plaintiff Avia Turner-Gray's ("Plaintiff") Second

Amended Complaint - Corrected ("SAC") against AMN Defendants without leave to amend. This motion is made pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). Pursuant to Judge Illston's chambers rules, the hearing will be remote unless parties request an in-person hearing by joint stipulation.

AMN Defendants seek an Order dismissing each cause of action in Plaintiff's SAC without leave to amend on the following grounds: Plaintiff's SAC should be dismissed as to AMN Defendants for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), as construed by the United States Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Plaintiff fails to plausibly plead agency theory or other theories of joint liability that would support any of Claims 2 through 8 against AMN Defendants, and she fails to adequately plead her claims brought against AMN Defendants on a direct liability theory, Claims 1 and 9. Plaintiff's Claim 3 should also be dismissed because it is duplicative of Claim 2. Plaintiff's Claim 5 should also be dismissed because Plaintiff fails to plead the claim with the particularity required by Federal Rule of Civil Procedure 9(b) and otherwise fails to plausibly plead fraud. Finally, in the alternative, if the Court were to find that Plaintiff's allegations against AMN Defendants are otherwise sufficient to state a claim against AMN Defendants, the Court should dismiss Claims 1, 2, 3, 6, 8 and 9 because they would be preempted by the California Workers' Compensation Act.

This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities filed herewith and such further evidence and argument as Court may permit or require at or prior to the time of the hearing on this Motion.

# TABLE OF CONTENTS


I. INTRODUCTION ....................................................................... 7

II. PROCEDURAL BACKGROUND ....................................................... 8

III. FACTUAL BACKGROUND ............................................................. 9

IV. LEGAL STANDARD ..................................................................... 11

V. LEGAL ARGUMENT ...................................................................... 11

A. PLAINTIFF'S CLAIMS 2-8 SHOULD BE DISMISSED BECAUSE SHE FAILS TO PLAUSIBLY PLEAD AGENCY THEORY OR OTHER THEORIES OF JOINT LIABILITY THAT WOULD SUPPORT ANY OF HER CLAIMS ........................................ 11

1. Plaintiff's Allegations Are Insufficient To State A Claim Against AMN Defendants on the Basis of Ostensible Agency ........................................ 11

2. AMN Did Not Owe Plaintiff an Agent's Duty of Care During the Course of Her Employment ........................................ 18

B. PLAINTIFF'S CLAIMS 3, 5 AND 8 SHOULD ALSO BE DISMISSED BECAUSE THEY ARE NOT SUFFICIENTLY PLEADED AND/OR ARE DUPLICATIVE ........................................ 19

1. Plaintiff's Claim 3 for Gross Negligence Is Duplicative of Claim 1 ........................................ 19

2. Plaintiff Fails To Plead Claim 5 for Intentional Misrepresentation /Fraud/Deceit With The Particularity Required By Rule 9(b) ........................................ 20

3. Plaintiff Fails To Plausibly Plead Claim 8 for Negligent Hiring, Retention, Supervision, and Training ........................................ 23

C. PLAINTIFF FAILS TO PLAUSIBLY PLEAD HER DIRECT LIABILITY CLAIMS AGAINST AMN DEFENDANTS (CLAIMS 1 AND 9) ........................................ 24

1. Plaintiff Fails to Plead Claim 1 of Violations of the California Labor Code and California Code of Regulation. ........................................ 24

2. Claim 9 Is Not Plausibly Pleaded ........................................ 25

D. ALTERNATIVELY, PLAINTIFF'S FIRST, SECOND, THIRD, FIFTH, EIGHTH AND NINTH CLAIMS ARE PREEMPTED BY WORKERS COMPENSATION PREEMPTION ........................................ 26

E. LEAVE TO AMEND WOULD BE FUTILE ........................................ 28

VI. CONCLUSION ........................................................................ 28

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 11

*C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc.*,
213 F.3d 474 (9th Cir. 2000) ........ 13

*Cisco Systems, Inc. v. STMicroelectronics, Inc.*,
77 F. Supp. 3d 887 (2014) ........ 22

*Cooper v. Pickett*,
137 F.3d 616 (9th Cir. 1997) ........ 20

*D'Antonio v. Monterey Bay Mil. Hous., LLC*,
No. 4:21-CV-2607-YGR, 2021 WL 5771139 (N.D. Cal. Dec. 6, 2021) ........ 20

*Doe v. Uber Technologies, Inc.*,
No. 19-CV-03310-JSC, 2019 WL 6251189 (N.D. Cal., Nov. 22, 2019) ........ 16

*In re Facebook, Inc., Consumer Privacy User Profile Litigation*,
402 F. Supp. 3d 767, 800 (N.D. Cal. 2019) ........ 20

*Gonzalez v. Gen. Elec.*,
No. 23-cv-01866-MEMF-SK, 2023 WL 4203379 (C.D. Cal. June 23, 2023) ........ 20

*Grotz v. Kaiser Found. Hosps.*,
No. C-12-3539 EMC, 2012 WL 5350254 (N.D. Cal. Oct. 29, 2012) ........ 27

*Huffman v. Lindgren*,
81 F.4th 1016 (9th Cir. 2023) ........ 11

*United States ex rel. Jones v. Sutter Health*,
499 F. Supp. 3d 704 (N.D. Cal. 2020) ........ 22

*Kaldis v. Wells Fargo Bank, N.A.*,
263 F. Supp. 3d (C.D. Cal. 2017) ........ 27

*Keum v. Virgin America Inc.*,
781 F.Supp.2d 944 (N.D. Cal. 2011) ........ 23

*Leap Imports LLC v. Anker Innovations Limited*,
No. 2:20-CV-03598-SVW-AS, 2020 WL 13281783 (C.D. Cal., Aug. 14, 2020) ........ 13, 16

*LeGrand v. Abbott Laboratories*,
655 F. Supp. 3d 871 (N.D. Cal. 2023) ....................20

*Oaktree Principal Fund V, LP v. Warburg Pincus LLC*,
No. CV158574PSGMRWX, 2016 WL 6782768 (C.D. Cal., Aug. 9, 2016) ....................17

*Qwest Commc'ns Corp. v. Herakles, LLC*,
No. 2:07-CV-00393MCEKJM, 2008 WL 783347 (E.D. Cal. Mar. 20, 2008) ....................18, 19

*Rodriguez v. United Airlines, Inc.*,
5 F. Supp. 3d 1131 (N.D. Cal. 2013) ....................26

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) ....................11

*Stiefel v. Bechtel Corp.*,
497 F. Supp. 2d 1138 (S.D. Cal. 2007) ....................24

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) ....................22

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) ....................20, 22

*Voellger v. Dignity Health*,
No. 19-CV-07089-RS, 2020 WL 13505420 (N.D. Cal. July 27, 2020) ....................24

*White v. Soc. Sec. Admin.*,
111 F. Supp. 3d 1041 (N.D. Cal. 2015) ....................19

**State Cases**

*Associated Creditors' Agency v. Davis*,
13 Cal. 3d 374 (1975) ....................13

*California Correctional Supervisors Organization, Inc. v. Dept. of Corrections*,
96 Cal.App.4th 824 (2002) ....................24

*Far West Financial Corp. v. D & S Co.*,
46 Cal.3d 796 (1988) ....................23

*Foster v. Xerox Corp.*,
40 Cal. 3d 306 (1985) ....................27

*Jensen v. Amgen, Inc.*,
105 Cal. App. 4th 1322 (2003) ....................26

*Jones v. Dep't of Corr. & Rehab.*,
152 Cal. App. 4th 1367 (2007) ....................27

*Ladd v. County. of San Mateo*,
12 Cal. 4th 913 (1996) ....................19

*Lazar v. Superior Court*,
12 Cal. 4th 631 (1996) ....................20

*Pereda v. Atos Jiu Jitsu LLC*,
85 Cal. App. 5th 759 (2022) ....................13, 14, 15

*Silas v. Arden*,
213 Cal. App. 4th 75 (2012) ....................27

*Taylor v. Point at Saranec Lake, Inc.*,
135 A.D.3d 1147 (2016) ....................16, 17

*Van de Kamp v. Bank of Am.*,
204 Cal. App. 3d 819 (1988) ....................19

**State Statutes**

Civil Code section 2334 ....................12

Labor Code section 6400 ....................24

Labor Code section 6402 ....................24

Labor Code section 6404 ....................24

**Rules**

Federal Rule of Civil Procedure 12 ....................11

**Regulations**

8 California Code of Regulations section 3362 ....................25

8 California Code of Regulations section 3700 ....................25

8 California Code of Regulations section 3704 ....................25

## POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

### I. INTRODUCTION

Plaintiff attempts for the third time to state a claim against AMN Healthcare, Inc. and AMN Healthcare Interim Solutions, LLC (together, "AMN Defendants"),[1] by alleging a new, unsubstantiated theory of "ostensible agency" in her Second Amended Complaint - Corrected ("SAC"). (Doc No. 59). Based on her new allegations, Plaintiff appears to be asking the Court to allow her to move forward with a claim of ostensible agency that would make an employer the guarantor of every service that the employer contracts to provide for its employees. However, this is not the law, and Plaintiff's newly pled facts are insufficient to establish that AMN should be held responsible for the actions of Avis. Plaintiff's allegations do not establish the essential elements of ostensible agency, as they do not establish that any act or neglect by the AMN Defendants caused Plaintiff to reasonably believe that AMN had control over Avis's actions.

Accordingly, this Motion is brought on the ground that Plaintiff—again—fails to state any plausible claim against AMN Defendants. Specifically, Plaintiff has again failed to plausibly plead agency theory or any other theory of joint liability that would support Claims 2 through 8 against AMN Defendants. Further, Claims 3, 5 and 8 suffer additional pleading deficiencies that warrant dismissal. Plaintiff's claims alleging direct liability against AMN Defendants (Claim 1 for violations of California Labor Code and Code of Regulations, and Claim 9 for negligent hiring, retention, training and/or supervision) fail to allege facts sufficient to support such claims.

As an alternative argument, even if this Court were to find that Plaintiff's allegations against AMN Defendants were otherwise sufficient to state a claim, Plaintiff's Claims 1 (Labor Code), 2 (negligence), 3 (gross negligence), 6 (IIED), 8 and 9 (negligent hiring, retention, supervision, and training) should still be dismissed as against AMN Defendants because they would be preempted by the California Worker's Compensation Act.

---

[1] Plaintiff previously named AMN Healthcare Services, Inc. in her original complaint. (Doc. No. 1.) Plaintiff did not name AMN Healthcare Services, Inc. in the First Amended Complaint. (Doc. No. 37.)

For these reasons, and because Plaintiff cannot remedy the problems identified herein, AMN Defendants respectfully request that the Court dismiss, with prejudice, the entire SAC as against them.

## II. PROCEDURAL BACKGROUND

On October 25, 2023, Plaintiff filed her Complaint in this Court. (Doc. No. 1.) On December 22, 2023, AMN Healthcare Services, Inc. and AMN Healthcare Interim Solutions, LLC moved to dismiss the Complaint on several grounds. (Doc. No. 8.) That same day, Defendant Avis Budget Group, Inc. ("Avis") filed an Answer to the Complaint. (Doc. No. 13.) On January 15, 2024, before the Motion to Dismiss the Complaint could be heard, Plaintiff filed a notice of voluntary dismissal of "B.E. Smith and AMN Healthcare Services [Inc.]," leaving Avis as the only named defendant remaining in the case. (Doc. No. 16, 17.)

Over six months later, Plaintiff filed a motion for leave to amend the Complaint, which among other things, sought to re-add AMN Defendants back into this lawsuit. (Doc. No. 31.) The Court granted the motion. (Doc. No. 36 at 2.)

On July 24, 2024, Plaintiff filed her First Amended Complaint ("FAC"), alleging nine causes of action. (Doc. No. 37.) On August 7, 2024, AMN Defendants filed a Motion to Dismiss all claims against them in Plaintiff's FAC. (Doc. No. 38.) On October 15, 2024, the Court granted AMN Defendant's Motion to Dismiss and gave Plaintiff leave to amend her complaint for three purposes: (1) to allege a factual basis for holding the AMN defendants liable for the actions of Avis; (2) to allege facts to plausibly claim an agency relationship between the AMN defendants and Avis; and (3) to allege facts showing that the AMN defendants assumed a fiduciary duty to her. (Doc. No. 55 at 1, 5, 7, 9.) The Court did not grant leave to amend to allege entirely new causes of action. (*See generally* Doc. No. 55

Plaintiff filed her Second Amended Complaint on November 1, 2024, alleging nine causes of action. (Doc. No. 56.) In addition to alleging facts to try to cure the deficiencies for which the Court granted Plaintiff leave to amend, Plaintiff's SAC improperly adds entirely new causes of action which also fail to state a claim.

On November 15, 2024, counsel for all parties jointly applied and stipulated to extend Defendants' responsive pleading deadline to December 2, 2024 and to grant Plaintiff leave to amend the Second Amended Complaint only to correctly name the proper Avis entities and properly number and label the paragraphs within her complaint. (Doc. No. 57.) The Court issued an Order on November 18, 2024 moving the responsive pleading and motion to dismiss deadlines, and allowing Plaintiff "to amend her Second Amended Complaint with proper Avis entities and proper, sequential paragraph numbering and labeling." (Doc. No. 58 at 2.) Plaintiff filed her corrected Second Amended Complaint ("SAC") on November 25, 2024. (Doc. No. 59.) Despite the Court's clear instructions in its November 18 Order, Plaintiff again contravened the Court's orders by making significant changes to the SAC, including reordering her claims, moving paragraphs, and adding language throughout the SAC. (Compare generally Doc. No. 56 and Doc. No. 59.)

Although Plaintiff is proceeding *pro se*, she is an attorney. (SAC at 1 (identifying Plaintiff as "Esquire")) and should be held to a higher standard of pleading than a *pro se* plaintiff who has not received legal training.

AMN Defendants again move to dismiss all claims against them.

## III. FACTUAL BACKGROUND

Plaintiff alleges the following facts as relevant to this motion.[2] Plaintiff is a travelling nurse who was hired by AMN Healthcare Interim Solutions, LLC[3] to act as an Interim Nurse Manager in the operating room at a hospital in the Bay Area beginning in December 2020 or beginning of 2021. (SAC ¶¶ 1, 19.) "As part of [] Plaintiff's compensation package, she was to receive a fully paid for rental vehicle for the duration of her interim contract." (*Id.* ¶ 27.) Plaintiff alleges that she "was not allowed to choose a rental car company for herself. All rental car arrangements were made/managed and paid for by AMN Healthcare Interim Solutions, LLC and/or its parent company, AMN Healthcare Inc." (*Id.* ¶ 28.)

---

[2] AMN Defendants do not hereby admit or deny the facts as pleaded by Plaintiff.

[3] As noted above, B.E. Smith Interim Services, LLC is now known as "AMN Healthcare Interim Solutions, LLC."

Plaintiff alleges that she "picked up a corporate rental car from Defendant Avis at the San Francisco Airport on approximately January 11, 2021. She remained in Avis's rental vehicles until October 2022." (*Id.* ¶ 36.) She "was directed by Defendant Avis to periodically exchange her designated rental vehicle for a new one." (*Id.* ¶ 37.) Plaintiff alleges that she "informed employees and executives working for the AMN Defendants on at least two occasions that a number of the Avis vehicles given to her had safety issues." (*Id.* ¶ 38.)

Plaintiff avers that "[i]n June 2022, there was a car break-in with a catalytic converter theft from a Toyota at Plaintiff's residence" and that because of this, she "went to exchange her then rented Toyota for another make and model vehicle at Avis at SFO" on June 26, 2022. (*Id.* ¶ 42.) Plaintiff asserts that "[i]t was a remarkably busy day at Avis." (*Id.* ¶ 43.) "Eventually Plaintiff was given a vehicle with the alleged associated paperwork, but when she arrived to inspect the vehicle, it was unacceptable." (*Id.*)

Plaintiff alleges that she "flagged down another Avis employee and asked that he send a manager to help her find another car. Approximately 20 minutes later, a manager appeared." (*Id.* ¶ 44.) Plaintiff and the manager walked "across the parking lot looking for acceptable cars." (*Id.*) Ultimately, "[t]hey settled on a late Nissan Altima black in color" and "[t]he manager told the Plaintiff that she may take the car and proceed to the gate." (*Id.*) Plaintiff proceeded to the security gate "where she presented her license and paperwork to the guard. The guard inspected the paperwork, license, and vehicle. He then motioned for the Plaintiff to exit the gate after he opened it." (*Id.* ¶ 45.) Plaintiff makes no factual allegations that tie the AMN Defendants to any of these events. (*See, generally, Id.*)

Plaintiff asserts that "[i]n June 2022," Avis "filed a false police report … stating that the vehicle issued to the Plaintiff was stolen[.]" (*Id.* ¶ 47.) On October 26, 2022, she was arrested for stealing the vehicle. (*Id.* ¶ 50.) An officer told Plaintiff "that the paperwork that she had in the vehicle did not match the vehicle that she was driving." (*Id.* ¶ 54.) "When law enforcement called Avis from the scene to verify the status of the vehicle, the Avis employee on the phone told them that no on was listed as the driver or responsible party for the vehicle. There was no information in their system on the driver of the car." (*Id.* ¶ 55.) "Plaintiff was taken to the Santa Rita Jail in

Dublin, California." (*Id.* at ¶ 58.) "Plaintiff remained in jail until the following afternoon." (*Id.* ¶ 61.) Upon being released from jail, Plaintiff called "her employer, Defendant AMN Healthcare Interim Solutions, LLC." (*Id.* ¶ 63.)

## IV. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. While a court must assume the veracity of "well-pleaded factual allegations," a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007).

The liberal pleading standard afforded to *pro se* parties does not apply to *pro se* attorneys. *Huffman v. Lindgren*, 81 F.4th 1016, 1020–21 (9th Cir. 2023) (citations omitted) ("The circuits that have reached the issue speak with one voice: they have uniformly declined to extend the liberal pleading standard to pro se attorneys. . . . We join this chorus."). As such, Plaintiff should not be granted further leave to amend her Complaint against the AMN Defendants, and her claims against them should be dismissed with prejudice.

## V. LEGAL ARGUMENT

### A. PLAINTIFF'S CLAIMS 2-8 SHOULD BE DISMISSED BECAUSE SHE FAILS TO PLAUSIBLY PLEAD AGENCY THEORY OR OTHER THEORIES OF JOINT LIABILITY THAT WOULD SUPPORT ANY OF HER CLAIMS

#### 1. Plaintiff's Allegations Are Insufficient To State A Claim Against AMN Defendants on the Basis of Ostensible Agency

Plaintiff cannot use ostensible agency to salvage the claims that she brings against AMN based on agency theory (Claims 2 through 8). In the Order dismissing the FAC, the Court advised Plaintiff that if she amended her FAC, she needed to "allege facts that support a plausible claim of an agency relationship . . . such as facts showing that the AMN defendants had the right to control

Avis's rental car procedures." (Doc. No. 55 at 5-6). Faced with the reality that she cannot plead any such actual control, Plaintiff attempts to recast her agency theory in the SAC by claiming that Avis was the *ostensible* agent of the AMN Defendants.[4]

In the section heading in the Second Amended Complaint titled "STATEMENT OF LIABILITY" Plaintiff claims AMN Defendants are "vicariously liable to the Plaintiff as an innocent third party victim of the Avis Defendants wrongdoing as an ostensible agent to the AMN Defendants." (SAC ¶ 79.) Plaintiff also alleges the following;

> The AMN Defendants, both together and/or singularly, were principals and masters in an ostensible agency with Plaintiff as a third party and with the Avis Defendants (operating as themselves and/or under any other identities, names, and forms) functioning as the ostensible agent under Cal. Civil Code sections 2300 and 2334 (2022).

(SAC ¶ 83.) She makes similar legal assertions, without factual support, in Paragraphs 31, 97, 109, 115, 120, 139, 157, 173 and 182 of the SAC.

Plaintiff alleges she "was not allowed to choose a rental car company herself. All rental car arrangements were made/managed and paid for by AMN Healthcare Interim Solutions, LLC and/or its parent company, AMN Healthcare Inc. Plaintiff never received a bill." (SAC ¶ 28.) Plaintiff alleges she "was led to believe that the AMN Defendants directed and controlled the actions of the Avis because they secured the Plaintiff's rental car themselves without any input from the Plaintiff. Again, the Plaintiff did not receive a bill for the rental and did not directly participate in the master contract between the AMN Defendants and the Avis Defendants for rental of automobiles." (SAC ¶ 33.) Plaintiff alleges she "was led to believe that any issues with the Avis's rental vehicles should be reported to the AMN Defendants and their employees implying AMN's control over the rental agency." (SAC ¶ 34.)

Plaintiff's allegations are insufficient to state a claim against the AMN Defendants based on any agency relationship with Avis. By Plaintiff's logic, any time an employer offers a fringe benefit involving a third-party company, even where that third-party company is in a wholly different line of

---

[4] ClaimS 1 and 9 are brought against AMN Defendants on a theory of direct liability and are separately addressed *infra*.

business, even where that business maintains separate offices from the employer, that company becomes its agent. Under this logic, if an employer pays for and hands an employee a BART card to commute to work, BART becomes the employer's agent. There is no support for this outcome under the law.

Indeed, the AMN Defendants may only be held liable as a principal for the acts of Avis as their ostensible agent (*i.e.*, a third party that is not actually their agent) if (1) Plaintiff dealt with Avis with the reasonable belief that Avis was acting with the AMN Defendant's authority, (2) this belief was generated by some act or neglect by the AMN Defendants; and (3) Plaintiff was not guilty of negligence in relying on Avis's apparent authority. *Associated Creditors' Agency v. Davis*, 13 Cal. 3d 374, 399 (1975). "Because a principal's liability for the acts of an ostensible agent rests on the notion that the principal should be estopped from creating the false impression of agency, the appearance of agency 'must be based on the acts or declarations of the principal and not solely upon the agent's conduct.'" *Pereda v. Atos Jiu Jitsu LLC*, 85 Cal. App. 5th 759, 768 (2022); *C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000). Thus, a plaintiff must "allege facts demonstrating how [an agency] . . . relationship could have reasonably appeared to [the plaintiff] . . . to reflect the characteristics of an agency relationship," citing to elements such as "power to alter legal relationships between principal and third persons, fiduciary relationship, and principal's right of control." *Leap Imports LLC v. Anker Innovations Limited*, No. 2:20-CV-03598-SVW-AS, 2020 WL 13281783 (C.D. Cal., Aug. 14, 2020), citing *Garlock Sealing Techs., LLC v. NAK Sealing Techs Corp.*, 148 Cal. App. 4th 964, 964 (2007). Plaintiff does not plausibly plead sufficient facts to allow the Court to infer that an ostensible agency relationship was created.

Plaintiff claims that she was "led to believe" that AMN Defendants were in a principal/agent relationship with Avis because the AMN Defendants secured the Plaintiff's rental car themselves without any input from the Plaintiff, she did not receive a bill for the rental, she did not directly participate in the master contract between AMN Defendants and Avis, and she thought she should report issues with Avis's cars to AMN. (SAC ¶¶ 32-33). These allegations are insufficient to

establish that the AMN Defendants' acts or neglect caused her to reasonably believe that Avis was acting on behalf of the AMN Defendants when it exchanged her car in June 2022.

Analogous cases have found that there is no ostensible agency as a matter of law. In *Pereda*, 85 Cal. App. 5th at 772, an adult jiu-jitsu student injured during a sparring match sued the studio where he was taking lessons, and also attempted to bring claims against the national jiu-jitsu association that held the competitions in which the studio's students competed. The trial court granted summary judgment for the national association on the ground that the association was not liable for the student's injury because it had no actual control over the studio's sparring practices and the association's conduct did not give rise, as a matter of law, to a reasonable belief in the student that it had such control. The court considered whether the following evidence was sufficient to establish ostensible agency: (1) the studio displayed the national association's banner in its studio, (2) the national association's website espoused the safety of jiu-jitsu, listed the studio as one of its "affiliates" and provided a link to the studio's website, even calling it by a trade-name that incorporated the national association's name, and (3) neither the studio nor the national association affirmatively disclaimed the national association's control over the studio on their websites. Ultimately, the *Pereda* court found that none of these allegations was sufficient to support an ostensible agency theory.

Moreover, Plaintiff's own factual allegations in the SAC make clear that she understood and dealt with Avis as a separate company from the time she picked up her first rental car from them in January 2021. Plaintiff admits that she interacted directly with Avis each time she received a rental car. She was the one to pick up the rental car from Avis at the San Francisco airport when she arrived in January 2021. (SAC ¶ 36). She admits that she received instructions from Avis to periodically exchange her vehicle for a new one. (SAC ¶ 37). She admits that she exchanged her vehicle with Avis multiple times. (SAC ¶ 38). She admits that she returned to Avis at the San Francisco Airport to exchange her vehicle after there was a car break-in in June 2022 and that it was Avis employees with whom she interacted to get a new vehicle on that day. (SAC ¶¶ 42-45.)

Even if allegations that the AMN Defendants arranged for Plaintiff's rental car through Avis were sufficient to create some form of ostensible agency (they are not), Plaintiff's allegations make

clear that by the time Plaintiff exchanged her vehicle at the San Francisco Airport Avis location in June 2022, it was not reasonable to believe that AMN had any control over Avis. Plaintiff acknowledges that she remained in the vehicle she received from Avis in June 2022 (the vehicle that Avis reported as stolen) through the end of her contract in October 2022. (SAC ¶ 46). Thus, when Plaintiff alleges that during "the course of the contract" Plaintiff exchanged her vehicle with Avis on multiple occasions and that "Sixty percent of the vehicles rented to her during the course of her contract had a service or warning lights activated," (SAC ¶ 38), this is clearly referencing vehicles she received from Avis *before* the June 2022 exchange. She claims that in regard to these *earlier* rentals, she reported issues to AMN Defendant's employee Leslie Hertz (who had made the original rental car arrangements as well as her flight arrangements at the beginning of her assignment). (SAC ¶¶ 39-41). However, Ms. Hertz "did not respond to the Plaintiff's safety concerns. She ignored the Plaintiff's comments completely. She did not ask any questions, or file a safety report, or even call the Avis Defendants to inquire about the safety issues." (SAC ¶ 41.) Through her actions, Ms. Hertz made clear that she did not have any control over Avis and the absence of a specific disclaimer of control by Ms. Hertz cannot convert Plaintiff's alleged unreasonable belief of ostensible agency into a reasonable one. *See*, *e.g.*, *Pereda*, Cal. App. 5th at 772.

Further, Plaintiff does not allege any involvement by the AMN defendants with her rental car at the time she exchanged the vehicle in June 2022. (*See generally* SAC ¶¶ 42-45.) When Plaintiff wanted to exchange her rental car due to the break-in at her residence, she did not contact AMN Defendants to request an exchange, instead she went directly to Avis to exchange the vehicle. (SAC ¶ 42.) When she did not like the vehicle Avis assigned to her, she asked an Avis employee to send an Avis manager to assist her and they (Plaintiff and the Avis manager) settled on the vehicle. (SAC ¶ 43-44.) Plaintiff does not allege she contacted AMN Defendants to assist her in exchange of the vehicle in June 2022 or to assist her with what clearly appears to have been a frustrating interaction with Avis at SFO on that day.

Plaintiff's understanding of the distinction between AMN Defendants and Avis is further highlighted by Plaintiff's allegations about the nature of these separate businesses in the SAC: AMN Defendants are in the industry of temporary nurse staffing and interim healthcare management fields

while Avis is engaged in the car rental business. (SAC ¶¶ 10, 11, 12, 220.) These are clearly separate industries. Plaintiff does "not allege facts demonstrating how that relationship could have reasonably appeared to [plaintiff] to reflect the characteristics of an agency relationship." *Leap Imports*, *supra*, No. at *3.

Indeed, Courts find ostensible agency only when the "principal" affirmatively took actions that allowed third parties to believe another party ("agent") was working on its behalf. *See Doe v. Uber Technologies, Inc.*, No. 19-CV-03310-JSC, 2019 WL 6251189 (N.D. Cal., Nov. 22, 2019) (finding Uber "at least negligently allowed others to believe the assailant was an authorized Uber driver" by not taking any action to reclaim its Uber decal after Uber suspended the assailant's app access).

While not binding authority, the case *Taylor v. Point at Saranec Lake, Inc.*, 135 A.D.3d 1147,[5] provides insight into the type of conduct or representations that would reasonably lead a third party to believe an agency relationship exists. In *Taylor*, the plaintiff claimed that a resort was responsible for a guest's death in a snowmobile accident on the grounds of ostensible agency. The court explained that "to establish a negligence claim based upon an apparent agency theory, a plaintiff must show evidence of 'words or conduct of the principal ... communicated to a third party, which give rise to a reasonable belief and appearance that the agent possesses authority to [act on the principal's behalf]'." (*Id.* at 1149.) The court went on to explain that the plaintiff in that case could have reasonably believed that the contractor offering the snowmobile tour was the agent of the resort (and thus establish ostensible agency) because (1) the evidence included a screenshot of the resort's website that could be read to suggest that snowmobiling was a service provided by defendants' agents or employees, as it was listed among the winter activities available on the premises, (2) the contractor that provided the snowmobile testified that the resort had directed him to not discuss money with the guests and to bill the resort for the cost of the tour because "he wanted the customers to feel like this was something that they were contracting with [the resort] directly to do," and (3) the

---

[5] Ostensible agency is a common law claim in both California and New York state law, and the elements are the same in both jurisdictions.

plaintiff stated that she and decedent only dealt with the resort staff in organizing the tour and had never heard of the separate company owned by the contractor prior to the tour. (*Id.*)

Here, while Plaintiff alleges that AMN Defendants represented that AMN would pay for Plaintiff's rental car through Avis, there is no allegation that would establish that AMN took any action to hold out Avis, or the services it provided, as being under AMN Defendants' control. Plaintiff does not allege that AMN Defendants provided the rental cars to Plaintiff directly, AMN Defendants exchanged the vehicles at Avis for Plaintiff, AMN Defendants chose the cars Plaintiff rented, or took responsibility for the condition of the vehicles Plaintiff rented at Avis. Thus, AMN Defendants did not make any representations or take any actions that would reasonably lead Plaintiff to believe AMN Defendants had control over Avis's operations, that Avis held the power to alter AMN Defendants' legal relationships, or that Avis is a fiduciary of AMN Defendants, to justifiably lead Plaintiff to believe that Avis was AMN Defendants' agent. In fact, Plaintiff's allegations in the SAC evidence her understanding that the two parties were distinct.

As such, Plaintiff has failed to plausibly plead ostensible agency between AMN Defendants and Avis Defendants.

Similarly, to the extent Plaintiff is attempting to plead any other theory of joint liability, she provides no factual support for her allegations that AMN Defendants "were also aider and abettor to the Avis Defendants because they took no action to stop the Avis Defendants' wrongdoing once they were informed of the Avis Defendants failure to provide a safe workplace vehicle. Their failure to act essentially provided the Avis Defendants opportunity and encouragement to continue to commit wrongful act [sic] against the Plaintiff." (SAC ¶ 80.) Courts in this circuit have found boilerplate allegations of joint liability similar to Plaintiff's insufficient to state a claim. *Oaktree Principal Fund V, LP v. Warburg Pincus LLC*, No. CV158574PSGMRWX, 2016 WL 6782768, at *11 (C.D. Cal., Aug. 9, 2016) (citing *Mindlab Media, LLC. v. LWRC Int'l LLC*, No. CV 11–3405 CAS-FEMX, 2012 WL 386695, at *4 (C.D. Cal. Feb. 6, 2012)) ("Finally, the Court notes that Plaintiffs' conclusory allegation that '[e]ach of the Defendants is also a joint venturer, partner, co-conspirator, principal, agent and aider and abettor of each of the other Defendants, and at all relevant times was

acting in the course and scope of said joint venture, partnership, conspiracy and agency' is insufficient without further factual support.").

Here, Plaintiff does not and cannot plausibly allege any facts sufficient to hold AMN Defendants vicariously liable for Avis's actions through ostensible agency theory or any other theory of joint liability. As such, the Court should dismiss Claims 2 through 8.

**2. AMN Did Not Owe Plaintiff an Agent's Duty of Care During the Course of Her Employment**

In regard to Claim 8, Plaintiff alleges as an alternative argument that AMN should be held responsible for Avis's negligent hiring because AMN was her agent with respect to securing her interim employment with Kaiser Permanente.[6] (SAC ¶¶ 20, 192, 195). To support her claim that AMN was her agent and thus owed her a heightened duty of care, Plaintiff alleges that the AMN Defendants acted as her agent in finding her a position with the Kaiser facility. Specifically, she alleges that "Plaintiff intended for and communicated to her AMN recruiter that he was to pursue, advance, and negotiate on her behalf with respect to securing interim employment for her with Kaiser Permanente" and "[a]s an ostensible agent, the recruiter and his employer, the AMN Defendants, had a duty of care to the Plaintiff in matters regarding that agency up to the time of employment including a duty of care in making travel and rental car arrangement on the Plaintiff's [sic]." (SAC ¶ 20.)

First and foremost, Plaintiff makes clear that the AMN Defendants were Plaintiff's employer, which means they cannot also be her agent (SAC ¶ 1, "Plaintiff . . . was hired by the Defendant AMN Healthcare Interim Services to work as an interim manager in a local Bay Area hospital . . . beginning in early 2021.").

Second, to determine the existence of an agency relationship, courts must look at "the degree of control exercised by the principal over the activities of the agent." *Qwest Commc'ns Corp. v. Herakles, LLC*, No. 2:07-CV-00393MCEKJM, 2008 WL 783347, at *8 (E.D. Cal. Mar. 20, 2008).

[6] While Plaintiff uses the wording "ostensible agency" here, she seems to actually be alleging a true agency relationship, as she makes no allegations to support a claim of ostensible agency as addressed above.

"If the principal has the right to control the agent's day-to-day operations, then an agency relationship exists. If, however, the principal has no control over the day-to-day operations and only has [the] right to dictate the end result of the agent's activities, then an 'independent contractor' relationship exists." (*Id.*, citing *Figi Graphics, Inc. v. Dollar General Corp.*, 33 F.Supp.2d 1263, 1266 (S.D.Cal.1998)). Here, at most, Plaintiff alleges that she controlled the end-result of the AMN's efforts to place her in an assignment, not that she had any day-to-day control over the AMN recruiter's activities. As such, she fails to allege facts to support her claim that the AMN Defendants were her agents owing her a heightened duty of care.

Finally, an agent's duty is limited to the scope of the agency set forth in the parties' agreement and once the agency ends, there is no further duty to the principal. *Van de Kamp v. Bank of Am.*, 204 Cal. App. 3d 819, 860-861 (1988). Here, at most, the AMN Defendants would have owed Plaintiff a heightened duty in regard to the scope of its alleged agency – *i.e.*, securing her an assignment with Kaiser Permanente. Her allegations that this extended then to travel arrangements are conclusory and without foundation. In addition, by Plaintiff's own allegations, the ostensible agency ended "once employment begins under the contract" (SAC ¶ 18), in early 2021. Issues relating to a rental car that Plaintiff admittedly obtained from Avis eighteen months later in June 2022 are far outside the scope of the alleged agency.

Plaintiff has not and cannot plead facts to show that AMN owed her a heightened duty as her agent that would somehow make the AMN Defendants liable for conduct by Avis. As such Claim 8 should be dismissed as to the AMN Defendants.

### B. PLAINTIFF'S CLAIMS 3, 5 AND 8 SHOULD ALSO BE DISMISSED BECAUSE THEY ARE NOT SUFFICIENTLY PLEADED AND/OR ARE DUPLICATIVE

#### 1. Plaintiff's Claim 3 for Gross Negligence Is Duplicative of Claim 1

The Court should dismiss Claim 3 for gross negligence as duplicative of Claim 1 for negligence. "The elements of a cause of action for negligence in California are: (1) a legal duty to use due care; (2) a breach of that legal duty; and (3) the breach was the proximate or legal cause of the resulting injury." *White v. Soc. Sec. Admin.*, 111 F. Supp. 3d 1041, 1054 (N.D. Cal. 2015) (citing *Ladd v. County. of San Mateo,* 12 Cal. 4th 913, 917–18 (1996)). "Ordinary and gross negligence are

not separate causes of action in California." *In re Facebook, Inc., Consumer Privacy User Profile Litigation*, 402 F. Supp. 3d 767, 800 (N.D. Cal. 2019) (citing *Nypl v. Crisis Prevention Institute*, No. 16-cv-04956-JSC, 2018 WL 4488760, at *9 n.6 (N.D. Cal. Sept. 17, 2018)). "[E]ven if one was to distinguish between gross negligence and ordinary negligence, it would be a debate over the extremity of the negligence in question, not over the type of tort." *Gonzalez v. Gen. Elec.*, No. 23-cv-01866-MEMF-SK, 2023 WL 4203379, at *3 (C.D. Cal. June 23, 2023) (quoting *Cont'l Ins. Co. v. Am. Prot. Indus.*, 242 Cal. Rptr. 784, 788) (Ct. App. 1987) ("Do [California] Courts Recognize a Cause of Action for 'Gross Negligence'? No.") Accordingly, the Court should dismiss Claim 3 for gross negligence. *See id.* at 4. (granting a motion to dismiss a claim for gross negligence, concluding that "the [plaintiff] may argue that her fifth cause of action of negligence rises to a degree of gross negligence, but she cannot raise a distinct cause of action for gross negligence itself."); *but see D'Antonio v. Monterey Bay Mil. Hous., LLC,* No. 4:21-CV-2607-YGR, 2021 WL 5771139, at *5 (N.D. Cal. Dec. 6, 2021) (emphasis in original) (denying a motion to dismiss and allowing a plaintiff to pursue separate causes of action for ordinary negligence and gross negligence "*only in the alternative*, as they cannot recover under both theories.").

Accordingly, the Court should dismiss Claim 3.

**2. Plaintiff Fails To Plead Claim 5 for Intentional Misrepresentation /Fraud/Deceit With The Particularity Required By Rule 9(b)**

As discussed in the Motion to Dismiss the FAC, "The elements of a claim for intentional misrepresentation are (1) a misrepresentation; (2) knowledge of falsity; (3) intent to induce reliance; (4) actual and justifiable reliance; and (5) resulting damage." *Cisco Systems, Inc. v. STMicroelectronics, Inc.*, 77 F. Supp. 3d 887, 897 (N.D. Cal. 2014) (citing *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996)). "[I]ntentional misrepresentation claims sound in fraud and must meet the requirements of Rule 9(b)." *LeGrand v. Abbott Laboratories*, 655 F. Supp. 3d 871, 895–96 (N.D. Cal. 2023) (*citing Carter v. Rasier-CA, LLC*, No. 17-CV-00003-HSG, 2017 WL 4098858, at *4 (N.D. Cal. Sept. 15, 2017)); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)) ("Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged."). Despite

adding some factual allegations regarding a "fake rental document" (SAC ¶ 56), Plaintiff's theories of fraud remain muddled. She has still failed to plead her claim for intentional misrepresentation with the required particularity as she has not adequately alleged the "who", the "what" or the "how".

In regard to "who," Plaintiff alleges that:

> [t]he Avis Budget Group, Inc, ostensibly as itself and in alias, through its employees, subcontractors, joint venturers, business partners, and agents, both in words and through deeds, while serving as an agent for the AMN Healthcare Interim Solutions LLC and AMN Healthcare Inc, intentionally deceived and defrauded the Plaintiff by executing a falsified a car rental exchange for her benefit and by issuing the Plaintiff falsified rental paperwork on June 26, 2022[.]

(SAC ¶ 140.) She also alleges that she "presented all of the documents and credentials necessary and required to exchange her rental vehicle to Avis Budget Group personnel at the SFO rental counter and exit gates[,]" and that "[t]he Avis Budget Group through its employees, subcontractors, and business partners fraudulently failed to capture any of this information in the rental exchange process." (*Id.* ¶ 141.) It is unclear whether Plaintiff is referring to the counter agent described in paragraph 43, the manager described in paragraph 44, both, or additional unidentified Avis employees allegedly involved in preparing the rental agreement. Adding to the confusion, Plaintiff elsewhere alleges that "Avis Budget Group and its employees continued to defraud the Plaintiff by waiving her through the exit gate of the rental car agency after conducting a 'fake examination' of the 'phantom' rental paperwork that she had been given" and that the "Avis exit gate employee put on an act or performance, and went through the motions of examining the paperwork[.]" (*Id.* ¶ 143.)

Regarding the "what" and the "how," Plaintiff alleges that "Avis and its employees intentionally, outrageously, and/or recklessly defrauded the Plaintiff by giving her false documentation substantiating a rental that they did not execute." (*Id.* ¶ 152.) In paragraph 48 of the SAC (her "statement of facts"), she alleges that the paperwork contained "a fake rental agreement number and fake return dates." (*Id.* ¶ 48.) In paragraph 56 of the SAC, Plaintiff alleges that the rental agreement number on the proof of rental that Avis gave her on June 26, 2022 did not correspond to anything in Avis's computer systems and that it was "a completely random, phantom number on a fake rental document that corresponded to no rental encounter in Avis's computer systems." (*Id.* at ¶ 56). Despite these new allegations, it remains unclear if Plaintiff is alleging only

that the rental paperwork was false or if she is also attempting to plead that an Avis employee, or Avis employees, verbally misrepresented to her that the paperwork was a valid rental agreement. If Plaintiff intends to allege that Avis employees made verbal misrepresentations to her, Plaintiff would also need to plead the "'the who, what, when, where, and how' of the misconduct charged" (here, verbal misrepresentations), which she has not done. *See Vess*, 317 F.3d at 1106; *see also United States ex rel. Jones v. Sutter Health*, 499 F. Supp. 3d 704, 710 (N.D. Cal. 2020) (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) ("[C]laims sounding in fraud must allege 'an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'"). It is similarly unclear if Plaintiff is attempting to state a claim for fraudulent concealment or nondisclosure based on her allegation that "Avis Budget Group employees, business partners, and subcontractors released the Plaintiff from the rental center at SFO on June 26, 2022, without issuing to the Plaintiff any physical or electronic documentary evidence that the Plaintiff had legitimately exchanged or rented the vehicle that she was given to drive." (SAC ¶ 144.)

Further, to the extent Plaintiff is attempting to allege as a theory of fraud that "[t]he Avis Budget Group lied to police about the whereabouts of the vehicle in reference because they did not know where the vehicle was because no one (not even a single employee, subcontractor, or business partner) in the rental exchange process took the time to record the Plaintiff's rental exchange in the system," it is implausibly pleaded and undermines her fraud claim. (*Id.* ¶ 147.) Fraud requires knowledge of falsity and intent to induce reliance. *Cisco Systems, Inc.*, 77 F. Supp. 3d at 897. "[N]ot know[ing] where the vehicle was because no one . . . took the time to record the Plaintiff's rental exchange in the system" is inconsistent with Plaintiff's allegations that she was intentionally deceived and defrauded. (*See Id.*)

Accordingly, the Court should dismiss Claim 5.

///

///

///

///

### 3. Plaintiff Fails To Plausibly Plead Claim 8 for Negligent Hiring, Retention, Supervision, and Training

Regarding Claim 8 for negligent hiring, retention, supervision, and training,[7] as discussed above, Plaintiff has not pled facts sufficient to hold AMN Defendants liable for Avis's employees' actions based on agency theory. Moreover, Plaintiff does not even plausibly plead negligent hiring against Avis, the primary actor.

"Under California law, an employer may be held directly liable for the behavior of an unfit employee where the employer was negligent in the hiring, training, supervising, or retaining of that employee." *Doe v. Uber Technologies, Inc.*, 184 F. Supp. 3d 774, 788 (N.D. Cal. 2016) (J., Illston) (citing *Delfino v. Agilent Techs., Inc.*, 145 Cal. App. 4th 790, 815 (2006)). "Negligence is a core element of this claim—the plaintiff must demonstrate that the employer 'knew or should have known that hiring the employee created a particular risk or hazard and that particular harm materializes.'" *Keum v. Virgin America Inc.*, 781 F.Supp.2d 944, 951 (N.D. Cal. 2011) (citing *Delfino*, 145 Cal.App.4th at 815). "Liability may be imposed 'either on the basis of ... action—for example, the negligent hiring of an agent—or ... inaction—for example, the failure to provide adequate supervision of the agent's work.'" *Doe*, 184 F. Supp. 3d at 788 (quoting *Far West Financial Corp. v. D & S Co.*, 46 Cal.3d 796, 812 (1988)).

Plaintiff alleges that "[a]t least three of Avis's employees, agents, or contractors were unfit or incompetent to perform the work for which they were hired including the initial car rental counter agent who did not know how to properly execute a car rental contract or exchange and the exit gate agent who failed to check to make sure that the vehicle that the Plaintiff was driving actually matched the car information in Avis's car rental systems." (SAC ¶ 184.) Plaintiff pleads no facts in support of this beyond her conclusory allegation that "[a]t all points, the conduct, actions, and omissions of Avis personnel, as described, were foreseeable to the Avis Budget Group and its corporate managers, directors, and regional and national leadership teams especially given the highly

[7] Plaintiff attempts to plead two claims for negligent hiring, retention, supervision, and training: one against AMN Defendants for negligent hiring of Avis (Claim 9), and one against Avis for negligent hiring of its employees, which Plaintiff alleges AMN Defendants are liable for under agency theory principles (Claim 8). (SAC ¶¶ 181–217.)

publicized false arrest and false imprisonment scandal that Avis's fellow car rental colleague, Hertz, was involved in at the time." (SAC ¶ 188.) This is not sufficient to plead that Avis knew or should have known that any of its employees were unfit or incompetent to perform the work for which they were hired, or that Avis was negligent in retaining, supervising, or training those employees. *See Doe*, 184 F. Supp. 3d at 777–78 (finding a negligent hiring, supervision, and retention claim insufficiently pleaded where the plaintiff did "not allege that anything existed in Dakiri's background that Uber knew or should have known and that should have prevented Uber's approval of Dakiri as a driver."). Accordingly, the Court should dismiss Claim 8 in its entirety.

### C. PLAINTIFF FAILS TO PLAUSIBLY PLEAD HER DIRECT LIABILITY CLAIMS AGAINST AMN DEFENDANTS (CLAIMS 1 AND 9)

Plaintiff also attempts to plead two claims against AMN Defendants based on a theory of direct liability. Both claims are insufficiently pleaded and should be dismissed with prejudice.

#### 1. Plaintiff Fails to Plead Claim 1 of Violations of the California Labor Code and California Code of Regulation.

Plaintiff's claims under sections 6400 through 6407 of California's Labor Code should be dismissed because these statutes, and any supporting regulations, do not provide for a private right of action. *Voellger v. Dignity Health*, No. 19-CV-07089-RS, 2020 WL 13505420, at *6 (N.D. Cal. July 27, 2020). These provisions provide generally that an employer needs to provide a place of employment that is safe and healthful for employees. *See, e.g.*, Labor Code § 6400 ("Every employer shall furnish employment and a place of employment that is safe and healthful for the employees therein."); Labor Code § 6402 ("[n]o employer shall require, or permit any employee to go or be in any employment or place of employment which is not safe and healthful."); Labor Code § 6404 ("[n]o employer shall occupy or maintain any place of employment that is not safe and healthful.") These and similar requirements are generally referred to as the "general duties clauses." *See California Correctional Supervisors Organization, Inc. v. Dept. of Corrections*, 96 Cal.App.4th 824, 830–31 (2002) (explaining that these code sections set forth the "general duties of employers regarding safety"). The general rule is that actions by an employee against an employer under these code sections are subject to workers' compensation exclusivity. *Stiefel v. Bechtel Corp.*, 497 F.

Supp. 2d 1138, 1151–52 (S.D. Cal. 2007). Because there is no private right of action under the alleged sections of California's Labor Code, Claim 1 in Plaintiff's SAC must be dismissed.

Further, Plaintiff cites to California Code of Regulations provisions that in no way support her claims. Contrary to Plaintiff's contentions, 8 CCR § 3362 does not even mention vehicles used by employees at work, or the standard in which they need to be kept, nor was Defendant able to find any cases that interpreted this regulation in the context of a vehicle. 8 CCR § 3704 is part of a section of the regulations that relates to vehicles such as buses and farm vehicles which are "assigned to transport employees to and from the working site on a uniform or specified schedule." 8 CCR § 3700. Further, the specific provision Plaintiff cites states only, "All loads shall be secured against dangerous displacement either by proper piling or other securing means." 8 CCR § 3704.

**2. Claim 9 Is Not Plausibly Pleaded**

In her ninth claim for negligent hiring, retention, supervision, and training, Plaintiff alleges that AMN Defendants were negligent in the "selection, supervision, and monitoring" of Avis (a third-party vendor) to provide rental cars to its interim managers. (SAC ¶¶ 198.) Plaintiff alleges that she "notified AMN Healthcare Interim Solutions LLC on at least two occasions that the cars she received from the Avis Budget Group were being sent out with an excessive number of service and caution lights on[,]" (SAC ¶ 206), and that because of these reports, AMN Defendants "knew or should have known that there were unsafe and unsound rental conditions taking place at the Avis Budget Group's rental car location based out of the San Francisco Airport (SFO)." (SAC ¶ 209.) Additionally, she pleads that AMN Defendants "knew or should have known about a well-publicized, high profile class action suit filed against car rental giant Hertz in which it was alleged that Hertz, like Avis, routinely arrested customers for car thefts on cars that were legitimately rented." (SAC ¶ 201.)

As the Court noted in its order granting AMN Defendants' Motion to Dismiss Plaintiff's First Amended Complaint, "in order to allege a claim for negligent hiring or negligent supervision, plaintiff must allege either an employer/employee relationship or an agency relationship. For the reasons discussed above, plaintiff has not alleged facts to plausibly claim an agency relationship between the AMN defendants and Avis." (Doc. No. 55 at 7.) Plaintiff has failed to plead that an

actual agency existed between the AMN Defendants and Avis and, as discussed above, Plaintiff further fails to plausibly plead ostensible agency between AMN Defendants and Avis. As such, her Claim 9 must fail.

Further, even if Plaintiff could plead an agency relationship between AMN Defendants and Avis (which she cannot), to adequately state a claim, Plaintiff must plead facts to plausibly allege that AMN Defendants knew or should have known that Avis's employees posed a danger, and that the harm about which they had notice later materialized. *Doe*, 184 F. Supp. 3d at 777–78. Plaintiff has not pleaded facts showing that the AMN Defendants knew or should have known that contracting with Avis created a particular risk or hazard that later materialized. While Plaintiff alleges that she put AMN on notice that Avis was renting out cars with service lights on, she has not and cannot plead that this somehow put AMN Defendants on notice that Plaintiff might later be falsely accused of stealing Avis's vehicle and put in jail. Nor would the existence of a lawsuit against a separate car rental company (Hertz) do anything to put the AMN Defendants on notice that Avis's employees might engage the conduct to which Plaintiff claims she was subjected.

### D. ALTERNATIVELY, PLAINTIFF'S FIRST, SECOND, THIRD, FIFTH, EIGHTH AND NINTH CLAIMS ARE PREEMPTED BY WORKERS COMPENSATION PREEMPTION

If the Court were to find that Plaintiff's allegations against AMN Defendants are otherwise sufficient to state a claim against AMN Defendants, Plaintiff's Claims 1 (Labor Code), 2 (negligence), 3 (gross negligence), and 5 (IIED), should still be dismissed as against AMN Defendants because they would be preempted by the California Worker's Compensation Act. Additionally, Plaintiff's Claims 8 and 9 for negligent hiring, supervision, and/or training would also be preempted to the extent they are based on the same conduct that underlies the negligence and IIED claims.

"[A]n employee injured during the course of employment is generally limited to remedies available under the Workers' Compensation Act." *Rodriguez v. United Airlines, Inc.*, 5 F. Supp. 3d 1131, 1135 (N.D. Cal. 2013) (quoting *Jensen v. Amgen, Inc.*, 105 Cal. App. 4th 1322, 1325 (2003)). "An employee who suffers an injury in the course of his employment may recover damages in an action at law only if he comes within certain exceptions to the workers' compensation law." *Id.*

(first citing *Foster v. Xerox Corp.*, 40 Cal. 3d 306, 308 (1985); then citing *Silas v. Arden*, 213 Cal. App. 4th 75, 91 (2012)). Under California law, both negligence claims and intentional infliction of emotional distress claims "arising in the course of employment are barred under the Worker's Compensation Act 'when the misconduct attributed to the employer is actions which are a normal part of the employment relationship, such as demotions, promotions, criticism of work practices, and frictions in negotiations as to grievances.'" *Kaldis v. Wells Fargo Bank, N.A.*, 263 F. Supp. 3d 856, 867 (C.D. Cal. 2017) (quoting *Cole v. Fair Oaks Fire Prot. Dist.*, 43 Cal.3d 148, 160 (1987)) (additional citations omitted). Negligent hiring, supervision, and training claims may also be preempted. *See Jones v. Dep't of Corr. & Rehab.*, 152 Cal. App. 4th 1367, 1384 (2007) (finding a negligent supervision and retention claim barred by worker's compensation exclusivity to the same extent as the employee's assault and battery claims it was based upon).

AMN Defendants' alleged conduct on which Plaintiff bases her claims, while not sufficient to adequately allege agency or direct liability, is a normal part of the employment relationship. At most, and not conceding the allegations, AMN Defendants provided Plaintiff with a rental vehicle from Avis and then "ignored the seriousness of Plaintiff's complaints regarding the safety of the cars that she was forced to drive" when Plaintiff "notified AMN Healthcare Interim Solutions LLC on at least two occasions that the cars she received from the Avis Budget Group were being sent out with an excessive number of service and caution lights on." (SAC ¶¶ 206-207.) These are the common sort of workplace events and grievances that are within the risks inherent to the employment relationship. *See Grotz v. Kaiser Found. Hosps.*, No. C-12-3539 EMC, 2012 WL 5350254, at *11 (N.D. Cal. Oct. 29, 2012) (finding a claim for negligent infliction of emotional distress preempted by workers' compensation where the plaintiff's allegations "concern[ed] [the defendant's] alleged misconduct in the course of handling her workplace grievances, disciplining her, and ultimately firing her.").

Accordingly, even if the Court were to find Plaintiff's allegations sufficient to state a claim against AMN Defendants based on agency theory and her direct liability theory, and even if the Court were to overlook the other pleading deficiencies identified above, the Court should dismiss

Claims 1, 2, 3, 5, 8 and 9 because they would be preempted by the California Worker's Compensation Act.

### E. <u>LEAVE TO AMEND WOULD BE FUTILE</u>

Plaintiff has now had three opportunities and over a year to plausibly state a claim against the AMN Defendants and her SAC is still deficient. The fact that she has now abandoned her theory of direct agency and attempted to establish ostensible agency suggests that Plaintiff cannot plead facts to sufficiently state a claim against AMN Defendants. Accordingly, further leave to amend would be futile and a waste of judicial resources.

## VI. <u>CONCLUSION</u>

For these reasons, AMN Defendants' respectfully request that the Court dismiss, with prejudice, all claims against them.

Dated: December 2, 2024 **WILSON TURNER KOSMO LLP**

By: /s/ *Mary P. Snyder*
MARY P. SNYDER
ANA R. HARTMAN
MEGHAN A. CRUMM
Attorneys for Defendants
AMN HEALTHCARE, INC. and
AMN HEALTHCARE INTERIM SOLUTIONS, LLC