UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AVIA TURNER-GRAY, <br><br> Plaintiff, <br><br> v. <br><br> AMN HEALTHCARE INC., *et al.*, <br><br> Defendants. | Case No. 23-cv-05507-SI <br><br> **ORDER VACATING JANUARY 10, 2025 HEARING AND GRANTING THE AMN DEFENDANTS' MOTION TO DISMISS WITHOUT LEAVE TO AMEND** <br><br> Re: Dkt. No. 60 |

The AMN defendants' motion to dismiss plaintiff's corrected second amended complaint is scheduled for a hearing on January 10, 2025. The matter is fully briefed.[1] Pursuant to Civil Local Rule 7-11(b), the Court finds this mater appropriate for resolution without oral argument and VACATES the hearing. For the reasons set forth below, the Court GRANTS the AMN defendants' motion to dismiss WITHOUT LEAVE TO AMEND. This case will proceed against Avis Budget Group. A further case management conference via zoom is scheduled for January 24, 2025 at 3:00 p.m. Plaintiff and Avis shall file a joint case management conference statement by January 17.

**DISCUSSION**[2]

In an order filed October 15, 2024, the Court dismissed plaintiff Avia Turner-Gray's claims against the AMN defendants. Dkt. No. 55. The Court explained that the first amended complaint did not allege a factual basis for holding the AMN defendants liable for actions of Avis, and that

---

[1] Defendants object that plaintiff filed an oversized opposition brief of 35 pages without seeking leave of Court to do so. Plaintiff is directed to review the Civil Local Rules for the Northern District of California and to comply with those rules. *See, e.g.*, Civil Local Rule 7-4(b) ("Unless the Court expressly orders otherwise pursuant to a party's request made prior to the due date, briefs or memoranda filed with opposition papers may not exceed 25 pages of text and the reply brief or memorandum may not exceed 15 pages of text."), found at https://cand.uscourts.gov/rules/civil-local-rules/.

[2] The Court's October 15, 2024 order contains a longer statement of the factual background of this case and is not repeated here. This order discusses the relevant factual allegations within the context of the specific causes of action.

1  Turner-Gray had not alleged facts showing that Avis was an agent of the AMN defendants or that
2  the AMN defendants were her agent and owed her a fiduciary duty. The Court granted leave to
3  amend.
4    On November 25, 2024, Turner-Gray filed a corrected second amended complaint ("SAC").
5  The SAC alleges that Avis was the "ostensible agent" of the AMN defendants, and thus that the
6  AMN defendants are liable for the actions of Avis. SAC ¶¶ 79, 83. The SAC also alleges that the
7  AMN defendants were plaintiff's "ostensible agent" and that they "had a duty of care to the Plaintiff
8  in matters regarding that agency up to the time of employment including a duty of care in making
9  travel and rental car arrangements [for] the Plaintiff." *Id.* ¶ 20. Finally, Turner-Gray also claims
10 that under California Labor Code sections 6400 through 6407 *et seq.*, and California Code of
11 Regulations, Title 8, Sections 3704 and 3362[3], "the AMN Defendants had nondelegable [duties to]
12 provide the Plaintiff with a safe and healthy place to work," including with respect to the provision
13 of rental cars.

## I.  First Cause of Action: Cal. Labor Code §§ 6400-6407 and Cal. Regulations

16   The first cause of action is a new claim for violation of California Labor Code §§ 6400-6407
17 and 8 Cal. Code Regs. § 3328. The cited Labor Code sections are part of the California Occupational
18 Safety and Health Act and "set[] out general duties of employers regarding safety." *California Corr.*
19 *Supervisors Org., Inc. v. Dep't of Corr.*, 96 Cal. App. 4th 824, 830 (2002). *See, e.g.*, Cal. Labor
20 Code § 6400(a) ("Every employer shall furnish employment and a place of employment that is safe
21 and healthful for the employees therein."); Cal. Labor Code § 6401 ("Every employer shall furnish
22 and use safety devices and safeguards, and shall adopt and use practices, means, methods,
23 operations, and processes which are reasonably adequate to render such employment and place of

---

[3] Plaintiff's opposition brief states that the reference to Section 3362 was a mistake and that the correct reference is Section 3328. Opp'n at 15. Plaintiff's opposition brief only addresses Section 3328, and thus the Court assumes that the reference to Section 3704 was also in error. Section 3704 is part of a section of regulations relating to vehicles used "to transport employees to and from the working site on a uniform or specified schedule," 8 Cal. Code Regs. § 3700, and Section 3704 states that "All loads shall be secured against dangerous displacement either by proper piling or other securing means." 8 Cal. Code Regs. § 3704.

employment safe and healthful. Every employer shall do every other thing reasonably necessary to protect the life, safety, and health of employees.")[4]; Cal. Labor Code § 6402 ("No employer shall require, or permit any employee to go or be in any employment or place of employment which is not safe and healthful."); Cal. Labor Code § 6403(a) ("No employer shall fail or neglect to do any of the following: (a) To provide and use safety devices and safeguards reasonably adequate to render the employment and place of employment safe."). California Code of Regulations section 3328 is an industrial safety regulation titled "Machinery and Equipment."[5]

Citing several district court decisions, the AMN defendants contend that there is no private

---

[4] Plaintiff asserts that "Section 6401 covers rental vehicles supplied to employees by their employers at work." Opp'n at 11. The plain language of that section does not mention rental vehicles.

[5] That regulation states,

(a) All machinery and equipment:

   (1) shall be designed or engineered to safely sustain all reasonably anticipated loads in accordance with recognized engineering principles; and

   (2) shall not be used or operated under conditions of speeds, stresses, loads, or environmental conditions that are contrary to the manufacturer's recommendations or, where such recommendations are not available, the engineered design.

(b) Machinery and equipment in service shall be inspected and maintained as recommended by the manufacturer where such recommendations are available.

(c) Machinery and equipment with defective parts which create a hazard shall not be used.

(d) Machinery and equipment designed for a fixed location shall be restrained so as to prevent walking or moving from its location.

(e) Machinery and equipment components shall be designed and secured or covered (or both) to minimize hazards caused by breakage, release of mechanical energy (e.g., broken springs), or loosening and/or falling unless the employer can demonstrate that to do so would be inconsistent with the manufacturer's recommendations or would otherwise impair employee safety.

(f) Any modifications shall be in accordance with (a) and with good engineering practice.

(g) Machinery and equipment in service shall be maintained in a safe operating condition.

(h) Only qualified persons shall be permitted to maintain or repair machinery and equipment.

right of action under the Labor Code sections or the regulation, and thus that the first cause of action must be dismissed without leave to amend. *See Wicker v. Walmart, Inc.*, 533 F. Supp. 3d 944, 950-51 (C.D. Cal. 2021) ("Wicker alleges violations of the California's Labor Code §§ 6400, 6401, 6401.7, 6402, 6403, 6404, and 6407, and violations of Cal/OSHA standards set forth in California Code of Regulations, title 8, §§ 3203, 3366, 3380, 5141, and 8414. These statutes, however, do not provide for any private right of action."); *Stiefel v. Bechtel Corp.*, 497 F. Supp. 2d 1138, 1152 (S.D. Cal. 2007) ("The general rule is that actions by an employee against an employer for workplace injuries are subject to workers' compensation exclusivity. . . . Therefore, the Court concludes that there is no private right of action under sections 6402, 6403, or 6404 of California's Labor Code."); *see also Voellger v. Dignity Health*, Case No. 19-cv-07089-RS, 2020 WL 13505420, at *6 (N.D. Cal. July 27, 2020) (dismissing claim under Cal. Labor Code § 6402 for lack of private right of action).

Turner-Gray asserts a number of arguments about why she should be permitted to pursue claims under the Labor Code sections and the regulation, but she does not cite any authority holding that there is a private right of action to pursue such claims. Turner-Gray cites *Carmona v. Division of Industrial Safety*, 13 Cal. 3d 303 (1975), for the proposition that the California Labor Code and Division of Industrial Safety regulations "created enforceable safety standards." Opp'n at 10. However, *Carmona* did not hold that a plaintiff has a private right of action under the relevant Labor Code sections or OSHA regulation. Instead, *Carmona* involved a petition brought by farm workers challenging a decision of the Division of Industrial Safety holding that a particular tool was not an unsafe hand tool within the meaning of an administrative regulation. The California Supreme Court held that the agency had failed to provide an explanation for its narrow construction of the regulation, and in reaching that conclusion, the Court discussed Labor Code Sections 6401, 6403, and 6407, which "establish[] an employer's duty to maintain a safe working environment . . . in the broadest possible terms." *Carmona*, 13 Cal. 3d at 312. The California Supreme Court's discussion of those Labor Code Sections simply supported its conclusion that the agency's narrow interpretation of safety regulations was inconsistent with the law, and the Court did not hold that employees have a private right of action under Labor Code Sections 6401, 6403 or 6407.

4

Similarly, Turner-Gray's citation to *Elsner v. Uveges*, 34 Cal. 4th 915 (2004), is misplaced. In that case, the California Supreme Court held that 1999 amendments to Labor Code Section 6304.5 allowed the use of Cal-OSHA provisions to establish standards and duties of care in negligence actions brought by employees against third parties. *Id*. at 924. There is no discussion in *Elsner* of a private right of action under Labor Code Sections 6400-6407.

The Court agrees with the other district courts that have held that there is no private right of action under Labor Code Sections 6400-6407. Although the Court could not find any case law specifically discussing California Code of Regulations section 3328, the Court concludes that even if there is a private right of action for that section, the plain language of that regulation – which addresses the design, servicing and engineering of "machinery and equipment" – does not apply to the facts of this case.

## II.     Ostensible Agency

### A.     Second-Eighth Causes of Action:  Avis as the AMN defendants' ostensible agent

The AMN defendants move to dismiss the second through eighth causes of action,[6] which are premised on the "ostensible agency" theory, on the ground that the SAC does not allege facts in support of such a theory. "An agency is ostensible when the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him." Cal. Civ. Code § 2300. "[T]here are three requirements necessary before recovery may be had against a principal for the act of an ostensible agent. [1] The person dealing with the agent must do so with belief in the agent's authority and this belief must be a reasonable one; [2] such belief must be generated by some act or neglect of the principal sought to be charged; and [3] the third person in relying on the agent's apparent authority must not be guilty of negligence."

---

[6] These causes of action are for negligence; gross negligence; malicious prosecution; intentional misrepresentation/fraud; intentional infliction of emotional distress; false arrest/imprisonment; and negligent hiring, retention, supervision, and training. Although the caption of the corrected SAC lists eight causes of action, the body of the complaint contains two negligent hiring causes of action – the eighth cause of action alleged against Avis and the AMN defendants, and the ninth cause of action alleged against only the AMN defendants. That cause of action is discussed *infra*.

5

*Associated Creditors' Agency v. Davis*, 13 Cal. 3d 374, 399 (1975). "Because a principal's liability for the acts of an ostensible agent rests on the notion that the principal should be estopped from creating the false impression of agency, the appearance of agency must be based on the acts or declarations of the *principal* and not solely upon the agent's conduct." *Pereda v. Atos Jiu Jitsu LLC*, 85 Cal. App. 5th 759, 768 (2022) (internal citations and quotation marks omitted, emphasis in original).

Here, the SAC alleges that the AMN defendants hired Turner-Gray as an interim nurse and placed her with a Kaiser Permanente hospital in the Bay Area; as part of her compensation package, Turner-Gray was to receive a fully paid-for rental vehicle for the duration of her interim contract; Turner-Gray was not allowed to choose a rental car company for herself; and all rental car arrangements were made/managed and paid for by AMN, and Turner-Gray never received a bill. SAC ¶¶ 27-28. The AMN defendants "informed the Plaintiff that if she did not take the rental car through Avis, she would lose the rental car benefit, and she would not be granted a rental car stipend to secure a rental vehicle through another car rental agency on her own." *Id*. ¶ 32. Plaintiff alleges,

> 33. Plaintiff was led to believe that the AMN Defendants directed and controlled the actions of the Avis because they secured the Plaintiff's rental car themselves without any input from the Plaintiff. Again, the Plaintiff did not receive a bill for the rental and did not directly participate in the master contract between the AMN Defendants and the Avis Defendants for rental of automobiles.
>
> 34. Plaintiff was led to believe that any issues with the Avis's rental vehicles should be reported to the AMN Defendants and their employees implying AMN's control over the rental agency.
>
> . . .
>
> 36. Plaintiff picked up a corporate rental car from Defendant Avis at the San Francisco Airport on approximately January 11, 2021. She remained in Avis's rental vehicles until October 2022.
>
> 37. Plaintiff was directed by the Avis Defendants to periodically exchange her designated rental vehicle for a new one. These exchanges could occur as often as every 30 days.
>
> 38. During the course of the contract, Plaintiff informed employees and executives working for the AMN Defendants on at least two occasions that a number of the Avis vehicles given to her had safety issues. Sixty percent of the vehicles rented to her during the course of her contract had service or warning lights activated.
>
> 39. Specifically, Plaintiff spoke with Leslie Hertz who was an employee of the AMN Defendants. She was a Corporate Travel Coordinator for B.E. Smith who was tasked

6

> with making all of the rental car and flight arrangements for interim healthcare executives, like the Plaintiff, to get to, from, and around their assignments.
>
> 40. During a phone call to Ms. Hertz, the Plaintiff notified her that she was concerned about the number of Avis rental cars that she had been given with service and trouble lights activated. The Plaintiff notified her that at least sixty percent of the cars that she rented from the SFO Avis location had trouble or service lights on at some point during the rental. Plaintiff advised that she was concerned about her safety driving those cars.
>
> 41. Ms. Hertz did not respond to the Plaintiff's safety concerns. She ignored the Plaintiff's comments completely. She did not ask any questions, or file a safety report, or even call the Avis Defendants to inquire about the safety issues. She did not try to move the Plaintiff to another car rental company. She just willfully and recklessly ignored the report. She did nothing.

*Id.* ¶¶ 33-34, 36-41. In June 2022, Turner-Gray exchanged her then-rented Toyota for a different vehicle at the Avis rental car location at San Francisco Airport, and she alleges,

> 43. It was a remarkably busy day at Avis, and there were long waits to get to a counter agent. Once Plaintiff reached the counter, the agent did not appear to be too familiar with how to handle long term contracts. Eventually Plaintiff was given a vehicle with the alleged associated paperwork, but when she arrived to inspect the assigned vehicle, it was unacceptable.
>
> 44. Plaintiff flagged down another Avis employee and asked that he send a manager to help her find another car. Approximately 20 minutes later, a manager appeared. Plaintiff explained that she needed a car that did not smell like marijuana and that was low in miles with no service lights on. The manager on duty walked with the Plaintiff across the parking lot looking for acceptable cars. They settled on a late model Nissan Altima black in color. The manager told the Plaintiff that she may take the car and proceed to the gate.
>
> 45. Plaintiff proceeded to the heavily guarded, concrete fortified security gate where she presented her license and paperwork to the guard. The guard inspected the paperwork, license, and vehicle. He then motioned for the Plaintiff to exit the gate after he opened it.
>
> 46. Plaintiff remained in the vehicle until the end of her contract in October 2022.
>
> 47. In June 2022, around the time that the Plaintiff rented the vehicle, Defendant Avis, in its incompetence and ineptitude, knowingly, recklessly, outrageously, and fraudulently filed a false police report with local authorities stating that the vehicle issued to the Plaintiff was stolen when, in fact, it was not. Defendant Avis did not know the whereabouts of said vehicle because it intentionally, negligently, and/or recklessly failed to capture any information regarding the rental in their system, and therefore, elected to use local police authorities as a taxpayer funded car location and repossession service.

*Id.* ¶¶ 43-47.

The Court concludes that these allegations are insufficient as a matter of law to support a claim that Avis was the ostensible agent of the AMN defendants because neither the actions by the

7

AMN defendants (the alleged principals) nor Avis (the alleged agent) would give rise to a reasonable belief that the AMN defendants controlled Avis and its employees. The SAC alleges that Turner-Gray was "led to believe" that the AMN defendants controlled Avis because the AMN defendants paid for her rental cars and she never received a bill. However, the fact that the AMN defendants paid for the rental cars as a part of plaintiff's compensation does not support the inference that the AMN defendants controlled Avis.[7] As the AMN defendants argue, if that was the case, any time an employer offered its employees a fringe benefit involving a third-party company, that company would become the employer's agent. The SAC also alleges that plaintiff was "led to believe" that she should direct complaints about the rental cars to the AMN defendants, without specifying any details. However, the SAC also alleges that when Turner-Gray complained to the AMN Corporate Travel Coordinator about the safety of the Avis rental cars, the AMN employee "did nothing" – which directly undercuts the reasonableness of any belief that the AMN defendants controlled Avis. In addition, the fact that between January 2021 and June 2022, Avis "periodically directed" her to exchange a rental car for a different vehicle supports the conclusion that Avis controlled the manner in which it rented cars to plaintiff.

"Although the broader question of whether one entity is the ostensible agent of another is typically a question of fact for the jury, . . . [t]he narrower question of whether a plaintiff's belief is reasonable is a question of law." *Pereda*, 85 Cal. App 5th at 771; *see also Markow v. Rosner*, 3 Cal. App. 5th 1027, 1045 (2016) ("The only issue was whether Markow's purported conclusion that Rosner was Cedars's agent was reasonable, which is a question of law."). In *Pereda*, the California Court of Appeal affirmed the trial court's grant of summary judgment in favor of the defendants in a case brought by a man who had been injured at an independently-owned jiu-jitsu studio called "the League." The plaintiff had sued a national jiu-jitsu association, Atos, and its founder, and he claimed that the League was the ostensible agent of Atos and its founder based on the fact that the studio

---

[7] The SAC also alleges that Avis's employees "took all actions forming the basis of the allegations in this Complaint within the scope of their employment . . . as necessary to execute the directives of [the AMN defendants] under their agency agreement." *Id*. ¶ 192. That allegation is conclusory and not supported by facts showing that the AMN defendants controlled the actions of the Avis employees.

1  displayed a banner indicating that it was affiliated with Atos, and because Atos's website listed the
2  studio as one of its "affiliates" and identified the League as "Atos Long Beach" with a link to the
3  League's website. *Id*. at 763, 772. The court held, "[t]he information plaintiff knew at the time of
4  his injury does not, as a matter of law, give rise to a reasonable belief that defendants had control
5  over the League's supervision of sparring during its classes," because the Atos website's
6  "terminology and the [League's] use of the Atos trade name does not create a reasonable belief that
7  defendants controlled the day-to-day operations of the League, or, more to the point, supervised the
8  League's sparring activities." *Id*.

9  Here, the facts alleged by plaintiff in support of an ostensible agency are weaker than those
10 in *Pereda*. Unlike *Pereda*, where the League and Atos were in the same line of business and there
11 was an advertised affiliation between the two entities, here AMN and Avis are in completely
12 different lines of business and the only connection between AMN and Avis is that AMN directed
13 Turner-Gray to rent her vehicles from that company and AMN paid the bills. Turner-Gray has not
14 cited any authority recognizing an ostensible agency under facts similar to those alleged here.

### B. Ninth Cause of Action: the AMN defendants as ostensible agents for plaintiff

The ninth cause of action for negligent hiring, retention, supervision and training is premised on the theory that the AMN defendants were the ostensible (or actual) agents for plaintiff with respect to securing her employment with Kaiser Permanente, and that they owed her a heightened duty of care in making rental car arrangements for her. SAC ¶¶ 20, 192, 195. The AMN defendants move to dismiss this cause of action on several grounds.

The Court previously dismissed similar allegations asserted in the first amended complaint. *See* Dkt. No. 55, Order Granting the AMN Defendants' Motion to Dismiss and Granting Leave to Amend at 6-8 (discussing Negligent Hiring and Breach of Fiduciary Duty causes of action). For the same reasons, the Court concludes that plaintiff's amended allegations are insufficient.

///

### III. Leave to Amend

Plaintiff requests leave to amend in the event defendants' motion is granted. However, plaintiff does not identify any new facts that she would allege, nor does not articulate how she would amend the complaint. Plaintiff has had several opportunities to amend the complaint, and the Court concludes that further leave to amend would be futile. Further, this case is proceeding against Avis, and under the current pretrial schedule, the discovery cutoff is May 23, 2025 and trial is scheduled for October 6, 2025.

### CONCLUSION

For the foregoing reasons, the Court GRANTS the AMN defendants' motion to dismiss WITHOUT LEAVE TO AMEND.

**IT IS SO ORDERED**.

Dated: January 7, 2025

_____
SUSAN ILLSTON
United States District Judge