Avia Turner-Gray, Esquire
3538 Cumberland Road
East Point, GA 30344
(404)444-6561
aviaturnergrayattyatlaw@gmail.com
Plaintiff In Pro Per

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **AVIA TURNER-GRAY**<br><br>Plaintiff,<br><br>vs.<br><br>**AVIS BUDGET CAR RENTAL, LLC;**<br><br>**JOHN DOES 1 THROUGH 50,**<br><br>Defendants. | Case No. 3:23-CV-05507-SI**:**<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO COMPEL DEFENDANT AVIS BUDGET CAR RENTAL, LLC TO PRODUCE DOCUMENTS AND TO RESPOND TO DISCOVERY, AND FOR SANCTIONS**<br><br>**HEARING DATE: July 10, 2026**<br>**HEARING TIME: 1000 am**<br><br>*TRIAL DATE: OCTOBER 26, 2026*<br><br>*HONORABLE JUDGE SUSAN ILLSTON*<br><br>*COURTROOM 1* |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO COMPEL DEFENDANT AVIS BUDGET CAR RENTAL, LLC TO PRODUCE DOCUMENTS AND TO RESPOND TO DISCOVERY, AND FOR SANCTIONS**

Defendant's Opposition confirms why this Motion should be granted. Avis does not deny the facts that matter. Avis concedes that its own employees acted contrary to Avis's written policies and procedures when they intentionally, negligently, and/or fraudulently did not register Plaintiff's rental and authorized her to drive off the lot without ensuring that the vehicle was

appropriately documented and verified. (Opp. at 2.) Avis concedes that it was still producing documents as recently as May 18, 2026, twelve days before this Motion and more than seven months after the Court's discovery order. Avis is also simply silent as to entire categories of requested discovery: the airport surveillance footage, the Wizard system metadata and login records, the written stolen-vehicle-reporting policies enforced by the loss prevention group, and the identities of the management chain responsible for the SFO counter. Silence on those requests concedes them. Avis's own narrative, moreover, rests on employees it twice labels "unidentified," even though the surveillance footage, the Wizard system records, and the depositions Avis is withholding are exactly what would identify them. Avis does not get to manufacture an evidentiary gap by withholding evidence and then invoke that gap as a defense.

Stripped to its essentials, the Opposition offers only three responses, none of which answers the Motion. First, it raises a procedural objection that the Court's own briefing order (Dkt. 97) forecloses. Second, it attacks a spoliation finding that Plaintiff need not establish to obtain the relief she actually seeks. Third, it asserts that Avis has fully complied with its discovery obligations, but that assertion rests entirely on a declaration from Avis's prior counsel who has since withdrawn from the case.

This Reply is timely. At the May 15, 2026 status conference, the Court set the schedule for this Motion, ordering that the motion to compel be filed by May 29, 2026, oppositions by June 12, 2026, and replies by June 22, 2026, and setting the hearing for July 10, 2026. (Dkt. 97.) This Reply is filed June 22, 2026, in compliance with that Order.

## II. AVIS CONCEDES THE CONDUCT THAT MAKES THE REQUESTED DISCOVERY RELEVANT

Avis's Opposition concedes that the failure to register Plaintiff's rental, and the authorization permitting her to exit the lot without verification, were contrary to Avis's own policies and procedures. (Opp. at 2.) That concession resolves the relevance and proportionality objections Avis raises elsewhere. Once Avis admits that its employees departed from policy on June 26, 2022, the discovery that shows how that departure occurred, who was responsible, and whether it was an isolated lapse or a recurring practice is squarely relevant under Rule 26(b)(1): the policies that were violated; the training that should have prevented the violation; the Wizard records that identify the employees involved; and the surveillance footage that captured the transaction. Avis cannot concede the violation and then withhold the evidence that defines its scope. Moreover, as the party resisting discovery, Avis, not the Plaintiff, bears the burden of justifying its refusal to produce. See *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

## III. AVIS DOES NOT OPPOSE, AND THEREFORE CONCEDES, FOUR ENTIRE CATEGORIES OF DISCOVERY

The Opposition addresses only two of the document categories at issue: employee time records and training materials. (Opp. at 3–4.) It says nothing about the following categories, each of which the Motion specifically identified:

a. SFO rental-center security and surveillance footage for June 26, 2022 (Motion § III.C);

b. Wizard system metadata and employee login/logout records for June 26, 2022 (Motion § III.D);

c. Avis's written policies governing when and how a vehicle is reported stolen to law enforcement (Motion § III.F); and

d. The identities of the Avis Budget Group human-resources executives responsible for the SFO counter employees, and of any private contractors working at the SFO rental center on June 26, 2022 (Motion § III.G).

A litigant that fails to defend a point in its opposition concedes it. See *Walsh v. Nevada Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) (party that fails to address an issue in response to a motion has abandoned it); *Conservation Force v. Salazar*, 677 F. Supp. 2d 1203, 1211 (N.D. Cal. 2009) (point not defended in opposition is deemed waived); see also Cal. Rules of Court, rule 8.54(c). Avis defended none of the four categories identified above. The Court should compel them. As to the surveillance footage in particular, Avis nowhere states that the footage was produced, or that it no longer exists. If the footage has been lost or overwritten since Avis was placed on notice of this litigation, that is a preservation failure the Court should address. At a minimum, Avis should be ordered either to produce the June 26, 2022 footage or to provide a sworn declaration stating its current status, the date and manner of any destruction, the person who authorized it, and Avis's retention policy.

## IV. AVIS'S PAGE COUNT PROVES DELAY, NOT DILIGENCE, AND RESTS ENTIRELY ON FORMER COUNSEL'S DECLARATION

Avis emphasizes that it has produced "over 4,200 pages" of documents. (Opp. at 6.) Volume is not completeness. Avis's own timeline establishes the delay the Motion describes. Avis began by stonewalling. It issued boilerplate, generic, and unresponsive answers to Plaintiff's Requests for the Production of Documents and Requests for Interrogatories for months before the Plaintiff initiated the discovery dispute process in September 2025. The Defendant's most recent production was made on May 18, 2026, twelve days before this Motion and more than seven months after the Court's October 16, 2025 order to produce outstanding discovery (Dkt. 86). Avis

has a habit of producing thousands of pages of ***peripheral, repetitive, unformatted, unrequested material*** while withholding the precise information that was requested by the Plaintiff. Producing excess volumes of unformatted, unrequested documents does not discharge Avis's discovery obligations.

Avis has a documented history of manipulating records to remove damaging information. For example, Avis has removed the last 10 years of performance evaluations and appraisals for their production manager, Armando Cruz. They have done that to minimize their liability for his documented wrongdoing on the job. Avis has produced timekeeping records that do not include any clock in and clock out times. Said document was truly a masterpiece of deceit. Again, they removed clock in times and clock out times to frustrate the Plaintiff in her quest to determine exactly what employees were working at the exact time on the exact date that she was given an undocumented vehicle to drive on June 26, 2022. This is a recurring pattern with them. It is corporate deceit at its finest.

Equally important, every factual assertion of "compliance" in the Opposition is drawn from the declaration of predecessor counsel. (See Opp. at 3–6, citing Lee Decl. ¶¶ 2, 12, 14, 22, 34–36.) Present counsel substituted into this case on June 8, 2026 (Dkt. 101), four days before the Opposition, and offers no independent knowledge of the discovery history. Counsel's representation that "no further responsive documents have been identified" is not a verified discovery response, and it is not a declaration of diligent search. It does not foreclose an order requiring Avis to state, under oath and category by category, what it searched, what it located, and what (if anything) it is withholding and why.

Avis's representation that no employee "clock-in/clock-out" records exist (Opp. at 3) is not credible on its face. The Avis SFO rental counter is a unionized Teamsters facility, where

employees' shift differentials and benefits are calculated from their actual recorded clock-in and clock-out times. Those records necessarily exist; they are the basis on which the workforce is paid. What Avis produced in response to Plaintiff's request for the June 26, 2022 clock-in and clock-out times was not those records at all: it was an artifice of a document listing only employee names and scheduled or estimated shifts, from which the actual clock-in and clock-out times had been removed. Substituting a stripped-down schedule for the timekeeping records that admittedly govern payroll is not a good-faith response to the request; it is the production of a manufactured document in place of the discovery actually sought. Avis should be ordered to produce the actual timekeeping records for June 26, 2022, or to establish, by sworn declaration identifying its payroll and timekeeping systems, how a Teamsters facility pays shift differentials without recording employees' clock-in and clock-out times.

## V. THE DEPOSITIONS OF ARMANDO CRUZ AND AIRENE LAYLO

Avis's Opposition repeatedly characterizes the Avis manager who directed Plaintiff to the Nissan, and the counter agent who processed the exchange, as persons "whose identity is also unknown." (Opp. at 2.) That characterization is a reason to compel, not to deny. The identities of the SFO employees who handled the June 26, 2022 transaction are precisely what the withheld discovery will establish: the surveillance footage, the Wizard system login and transaction records, and the depositions of Avis's SFO management. Indeed, because Avis issues its corporate mini-lease customers a stack of pre-printed contracts bearing different agents' names, the paperwork alone cannot establish which agent executed the exchange; only Avis's own system records can. Avis cannot manufacture an identity gap by withholding the very evidence that closes it, and then invoke that gap as a defense.

That is especially true of Armando Cruz. Cruz is Avis's SFO Production Manager, the manager responsible for the SFO fleet and for ensuring that vehicle exchanges are properly recorded in Avis's system. He is also the employee who, on October 25, 2022, signed the CHP 180 stolen-vehicle report, under penalty of perjury, that generated the entry leading to Plaintiff's arrest. Whatever Avis's counter agents did or failed to do on June 26, 2022, it was Cruz's responsibility as Production Manager to ensure the fleet and its paperwork were in order, and it was Cruz who later reported the resulting vehicle as stolen. He is the single most important witness in this case, and Avis's continued refusal to produce him is not a neutral scheduling matter.

Avis's lead argument, that Plaintiff "has never served a single Notice of Deposition" and that the dispute is "not ripe" (Opp. at 2), fails for three independent reasons.

First, the obligation to produce these witnesses arises from this Court's order, not from the mechanics of Rule 30. On October 16, 2025, the Court entered an Order Re: Discovery (Dkt. 86) directing Avis to produce the discovery Plaintiff had requested and to produce its employees for deposition. More than seven months later, Avis has produced no one. A defendant cannot defeat an order to produce witnesses by pointing to the absence of a formal notice; the duty to comply runs from the order itself. Avis's reliance on *Porter v. Martinez*, 941 F.2d 732 (9th Cir. 1991), is therefore misplaced. *Porter* holds that Rule 37(b) sanctions are appropriate for failure to comply with a Court order compelling discovery, which is exactly what Dkt. 86 is and exactly what has occurred.

Second, Avis's own Opposition refutes its ripeness argument. Avis admits that deposition "dates which were offered in June by prior counsel were not accepted." (Opp. at 2.) A party that has offered deposition dates has necessarily acknowledged its obligation to produce the witnesses;

it cannot, in the same breath, claim there is nothing to compel. The dispute is not whether Cruz and Laylo must be produced, because Avis's own conduct concedes they must; it is only that Avis has not produced them.

Third, Avis's premise is in any event factually wrong. Plaintiff has served formal notices of deposition under Rule 30(b)(1) for Armando Cruz, Airene Laylo, and Gary Russell, setting their depositions for June 30, July 1, and July 2, 2026, respectively, at a Court reporter's office in San Ramon. Any ripeness objection is therefore moot: the witnesses are noticed for dates certain, and the only question is whether Avis will produce them.

Airene Laylo's importance is likewise clear: she created a corporate mini-lease that governed Plaintiff's rental and is alleged to have later told investigators that it was not a mini-lease at all. Cruz and Laylo are two witnesses whose testimony is central to liability and to punitive damages, and Avis's seven-month failure to produce them, in the face of a direct order, is the paradigm of conduct Rule 37(b)(2)(A) addresses.

**VI. AVIS'S LAST-MINUTE SUBSTITUTION OF COUNSEL IS A DELAY TACTIC, NOT A JUSTIFICATION**

Avis's recent change of counsel should be seen for what it is. On the eve of this briefing, after more than a year of discovery and more than seven months of noncompliance with the Court's October 16, 2025 order, Avis substituted new counsel (Dkt. 101) and now contends that deposition scheduling must await an “assessment of availability based on new counsel's calendar.” (Opp. at 2.) A substitution of counsel does not reset deadlines, excuse a party's prior discovery conduct, or restart the clock on obligations the client has owed for months; those obligations run to the party, not to whichever firm appears for it. Offered at this late stage as yet another reason to defer the

depositions, the substitution has every appearance of a tactic to delay a case set for trial on October 26, 2026.

## VII. THE PERSONNEL-FILE DISPUTE: PLAINTIFF SEEKS A COMPLETE FILE AND A SWORN ACCOUNTING, NOT A SPOLIATION FINDING

Avis attacks a spoliation finding that Plaintiff need not establish to obtain the relief she actually seeks. (Opp. at 3.) Plaintiff's request is production of Armando Cruz's complete, unredacted personnel file, accompanied by a declaration of completeness and a privilege log identifying anything withheld. *Tri-County Motors, Inc. v. American Suzuki Motor Corp.*, 494 F. Supp. 2d 161 (E.D.N.Y. 2007), on which Avis relies, addresses the showing required for a finding of spoliation as a sanction; it does not bar an order compelling production of an existing file, nor an order requiring a party to verify that its production is complete.

Plaintiff's concern is not speculative; it is grounded in the face of Avis's own production. Avis produced Cruz's personnel records dating to the beginning of his employment in 1993, including performance evaluations and reviews spanning roughly 1993 through 2016. But Avis's production omits every performance appraisal from approximately 2016 to the present, about a decade of reviews, for a manager whose fleet- and production-management responsibilities, and whose contributions to Avis's profitability, are regularly and formally appraised. A file that is complete for more than two decades and then abruptly stops in 2016 in precisely the period most relevant to Plaintiff's claims does not reflect a manager who simply ceased being evaluated; it reflects a production from which the most recent and most relevant appraisals were removed. That is a specific, documented gap, not the conjecture *Tri-County Motors* addressed.

Performance appraisals for an Avis manager are maintained in the ordinary course in Avis's human resources systems and are therefore electronically stored information subject to

Avis's preservation duty; to the extent any responsible appraisal was maintained were retained only on paper, it remained subject to that same duty under the Court's inherent authority. The Court should order Avis to produce the missing 2016 to present performance appraisals or to account for their absence under oath. To the extent any of the withheld appraisals exist only in paper form, the Court's inherent authority to remedy the suppression of evidence is squarely presented; To the extent any exist as electronically stored information, the spoilage remedies of rule 37 (e) apply as well. Avis should not be permitted to benefit from a gap in its own production that only Avis can explain.

## VIII. REQUESTS NO. 16, 20, AND 34 SEEK PROOF OF A NATIONWIDE PATTERN THAT AVIS'S OWN RECORDS AND THE PUBLIC RECORD CONFIRM

Avis's own records already establish what these Requests are designed to prove. Months before Plaintiff's arrest, Avis's Regional Security Manager, Gary Russell, wrote that the company had experienced "bad paper in the past" and that he did not want a "good customer pulled out at gunpoint." (Internal Emails AVIA001807-1808.) Those are Avis's own words, about its own conduct, written before this lawsuit existed. They concede the two propositions Avis now disputes: that its practice of mishandling and misreporting rentals recurs, and that Avis knew those failures cause innocent, paying customers to be confronted by police at gunpoint. Russell authorized the false reporting anyway. These Requests ask for the records of the other times this has happened. That is not a fishing expedition; it is a demand for evidence of a problem Avis has already admitted in writing.

Plaintiff sought that evidence through Request for Production No. 16 (internal and external complaints and reports of false-theft-report incidents), Request No. 20 (prior lawsuits and the number of false theft reports Avis filed against renters in 2021 through 2023), and Request No. 34

(law-enforcement investigations into Avis's false-theft-report practices). Avis produced nothing and represented, in substance, that it has nothing responsive. (Opp. at 4-5.) That representation cannot be squared with Avis's own emails, and it cannot be squared with the public record.

Avis's position is also internally contradictory. It argues both that no responsive documents exist and that producing them would be unduly burdensome and disproportionate. Those two positions cannot both be true. If Avis genuinely has no records of prior false theft reports, then production imposes no burden whatsoever, and a single verified sentence to that effect would end the dispute. If the burden Avis invokes is real, it is because responsive records exist in volume, which means Avis's representation that it has nothing is false. Avis may not invoke the size of the problem as a reason to keep the problem concealed.

The public record forecloses the innocent explanation. Within the last five years, multiple renters have publicly alleged that Avis did to them precisely what it did to Plaintiff. In March 2023, the Los Angeles County Sheriff's Department arrested Ramona Gutierrez at gunpoint after Avis reported her lawfully rented Nissan Altima stolen; according to public reporting, that same Altima had been reported stolen by Avis once before and was returned to service without the theft report being cleared. (KTLA-5 and The Drive, Apr. 2023.) The vehicle model and the mechanism are the same as in Plaintiff's case. In 2024, a vehicle rented from Avis at Atlanta's Hartsfield-Jackson International Airport was reported stolen, and the renter, Jeffery Elinor, was stopped at gunpoint and later sued Avis. (WSB-TV, May 2024.) In Maryland, renters who picked up an Avis car at Baltimore-Washington International Airport were ordered out of the vehicle at gunpoint in Pennsylvania because Avis had re-rented a car that a prior customer had reported stolen, without rescinding the report; counsel handling such matters has described the phenomenon as a nationwide one. Avis disclosed none of these incidents in response to these Requests.

These prior incidents are not collateral. Evidence that Avis has repeatedly reported lawfully rented vehicles as stolen goes to the core of Plaintiff's case: it establishes notice, knowledge, intent, the absence of mistake, and the conscious disregard for the rights of others that California requires for punitive damages. Cal. Civ. Code § 3294. A single arrest can be dismissed as an isolated error; a pattern cannot. The pattern is also what proves Plaintiff's ratification and corporate-policy theories, because it shows the conduct arises from how Avis operates rather than from one employee at one airport.

For that reason, the scope must be nationwide. The practices that produced Plaintiff's arrest are set at the corporate level: the incentive structure in Avis's Short-Term Incentive Plans, which conditions bonuses on fleet fixed-cost targets that missing vehicles burden, and the company-wide policies reflected in Avis Budget Group's 2009 human-resources memorandum. Conduct driven by national policy cannot be tested by examining a single location. The experience of Avis's principal competitor confirms both that these records exist and that Courts order their production. In December 2022, Hertz agreed to pay $168 million to resolve 364 claims by customers it had falsely reported as car thieves, a number of whom were arrested at gunpoint and jailed for weeks or months. (NPR and CNN, Dec. 2022.) Those claims came to light only because, in Hertz's bankruptcy, a Court required disclosure of the internal theft-reporting data Hertz had fought to keep under seal. That data showed Hertz filed thousands of theft reports against its own customers every year. The same category of internal data is what Plaintiff seeks here, and Avis should not be permitted to keep it hidden by calling the request overbroad.

Avis's proportionality objection fails on its own terms. The party resisting discovery bears the burden of substantiating any claim of undue burden with specifics rather than boilerplate. See *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975). Avis submitted no declaration

quantifying a burden, no description of how its incident records are maintained, and no explanation of why a search is infeasible. The Rule 26(b)(1) factors favor production: the issues at stake are grave, the amount in controversy is substantial, Avis alone possesses these records, and Avis commands resources Plaintiff does not. Avis's request that the Court deny this discovery "with prejudice" is not a proportionality remedy; even an overbroad request is tailored, not barred. No tailoring is required here, because a nationwide pattern is exactly what Plaintiff's punitive-damages and corporate-liability claims put in issue.

The Court should compel a complete response to Requests No. 16, 20, and 34, and should order Avis either to produce the responsive records or to state, under oath and after a diligent nationwide search, that no such records exist, recognizing that Avis's own emails and the public record indicate the opposite.

## IX. THE CORPORATE-STRUCTURE OBJECTION CONCEDES AVIS'S CONTROL OVER AFFILIATE DOCUMENTS

Avis represents that, to the extent the dismissed holding companies and affiliates possess responsive documents, "they would be in the control of Avis," and that all documents within Avis's possession, custody, or control have been searched. (Opp. at 5.) Plaintiff holds Avis to that representation. Avis has thereby conceded Rule 34 control over affiliate-held responsive documents, and it must produce them regardless of which entity within the corporate family physically maintains them. The completeness declaration Plaintiff requests should confirm that Avis's search extended to all such affiliate-held records.

## X. THE LOCAL RULE 37-2 OBJECTION FAILS, AND ANY DEFICIENCY IS CURED

Avis contends the Motion does not set forth each request and response in full as Civil Local Rule 37-2 requires. (Opp. at 5.) The objection fails on its own terms and, in any event, is cured.

First, the Court itself directed that this dispute be brought as a formal noticed motion. At the May 15, 2026 status conference, the Court set a schedule for Plaintiff's motion to compel, ordering the motion filed by May 29, 2026, oppositions by June 12, and replies by June 22, and setting a hearing for July 10, 2026. (Dkt. 97.) Plaintiff filed exactly the motion the Court scheduled, on the Court's own timetable, and Avis briefed its Opposition on that same schedule. Avis cannot fault Plaintiff for following the Court's order, and its suggestion that the dispute should have taken some other form is foreclosed. To the extent Avis also notes that the Motion was docketed one day after the May 29 deadline (Opp. at 1), it identifies no prejudice and sought no relief on that basis.

Second, Plaintiff cures any deficiency. Concurrently with this Reply, Plaintiff submits a Separate Statement setting forth, for each disputed Interrogatory and Request for Production, the request, Avis's response, and the specific basis on which the response is deficient. Avis plainly understood each dispute; it responded to them on the merits in its Opposition. Any noncompliance with the rule's form therefore caused it no prejudice. The Court may also construe Plaintiff's papers in light of her self-represented status; Plaintiff does not seek relief from the substance of the Local Rules, only recognition that their purpose, fair notice of the disputes, has been fully served.

## XI. SANCTIONS

The Opposition's sanctions argument responds largely to the most severe remedies while ignoring the measured relief that should issue now. District Courts have broad latitude to fashion discovery sanctions. See *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). Plaintiff requests, in the first instance, an order (1) compelling production of the four

unopposed categories and the verified statements of completeness described above; (2) compelling Avis to produce Armando Cruz, Airene Laylo, and Gary Russell for deposition on the noticed dates (June 30, July 1, and July 2, 2026) or other dates the Court sets; and (3) awarding Plaintiff her reasonable expenses incurred on this Motion under Rule 37(a)(5)(A). To secure compliance, the Court should further order a daily monetary sanction for each day Avis fails to comply after the date set. Should Avis persist in noncompliance, the issue, evidentiary, and terminating sanctions available under Rule 37(b)(2)(A), together with the Court's inherent authority, see *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991), would then be warranted under the factors set out in *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995); see also *Hester v. Vision Airlines, Inc.*, 687 F.3d 1162, 1169 (9th Cir. 2012) (affirming severe sanctions for sustained, willful obstruction of discovery). Avis's authorities concerning the severity of evidence exclusion and adverse-inference instructions (*R & R Sails*; *Zubulake*) do not bar this graduated relief; they confirm only that the most drastic sanctions are reserved, which is why Plaintiff seeks the remedies above in the first instance.

Finally, Avis's characterization of Plaintiff's conduct at her own deposition (Opp. at 6–7) is both disputed and beside the point. The question before the Court is whether Avis has complied with its discovery obligations and the Court's October 16, 2025, order, not Plaintiff's tone. Plaintiff's conduct provides no answer to Avis's seven-month failure to produce documents and witnesses. Avis is blowing a dog whistle here in order to distract attention from the company's willful refusal to produce requested witnesses and documents in this case.

## XII. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant the Motion and order that Avis: (1) produce, by a date certain, the SFO surveillance footage, the Wizard

system metadata and login/logout records, the written stolen-vehicle-reporting policies used by Avis's loss control, and the identities of the responsible HR executives and contractors; (2) produce Armando Cruz, Airene Laylo, and Gary Russell for deposition on the noticed dates of June 30, July 1, and July 2, 2026, or other dates the Court sets; (3) produce Cruz's complete, unredacted personnel file, including the performance appraisals from approximately 2016 to the present that are absent from Avis's production, with a declaration of completeness and a privilege log; (4) serve a verified statement of completeness as to employee time records, training materials, and policies, extending to affiliate-held records within Avis's control; (5) produce documents responsive to Requests No. 16, 20, and 34; (6) pay Plaintiff's reasonable expenses under Rule 37(a)(5)(A); and (7) pay a daily sanction for any continued noncompliance, with issue, evidentiary, and terminating sanctions reserved.

Respectfully submitted,

This June 22, 2026

/s/ Avia Turner-Gray

________________________________

AVIA TURNER-GRAY, ESQ.
Pro Se Plaintiff

3538 Cumberland Road
East Point, GA 30344
(404)444-6561
aviaturnergrayattyatlaw@gmail.com

## CERTIFICATE OF SERVICE

**Turner-Gray v. Avis Budget Car Rental, LLC, et al.**
**USDC Northern District of California, Case No. 3:23-CV-05507-SI**

I hereby certify that on the date set forth below, I served the foregoing **PLAINTIFF'S RESPONSE TO DEFENDANT AVIS'S OPPOSITION TO MOTION TO COMPEL** upon all parties via counsel of record by electronic mail and/or through the Court's CM/ECF system.

Counsel of Record for Defendant:

C. Beeman, Esquire
cbeeman@clappmoroney.com
A. Meyers, Esquire
ameyers@clappmoroney.com
Counsel for Defendant
Avis Budget Car Rental LLC
Clapp Moroney Vicinich Beeman + Scheley
5860 Owens Drive
Suite 410
Pleasanton, CA 94588

Patrick Albasha, Esquire
palbasha@everettdorey.com
Avis Budget Car Rental, LLC
Everett Dorey, LLP
2030 Main Street
Suite 1200
Irvine, CA 92614

This 22nd day of June 2026

Respectfully submitted,

/s/Avia Turner-Gray____________
Avia Turner-Gray, Esquire
Plaintiff In Pro Per

3538 Cumberland Road
East Point, GA 30344
(404)444-6561
aviaturnergrayattyatlaw@gmail.com