Avia Turner-Gray
3538 Cumberland Road
East Point, GA 30344
(404)444-6561
aviaturnergrayattyatlaw@gmail.com
Plaintiff In Pro Per

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **AVIA TURNER-GRAY**<br><br>Plaintiff,<br><br>vs.<br><br>**AVIS BUDGET CAR RENTAL, LLC;**<br><br>**JOHN DOES 1 THROUGH 50,**<br><br>Defendants. | Case No. 3:23-CV-05507-SI**:**<br><br>**PLAINTIFF'S STATEMENT IDENTIFYING THE SPECIFIC DISCOVERY REQUESTS AT ISSUE IN THE MOTION TO COMPEL (CIVIL LOCAL RULE 37-2)**<br><br>**HEARING DATE: July 10, 2026**<br>**HEARING TIME: 1000 am**<br><br>*TRIAL DATE: OCTOBER 26, 2026*<br><br>*HONORABLE JUDGE SUSAN ILLSTON*<br><br>*COURTROOM 1* |

**PLAINTIFF'S STATEMENT IDENTIFYING THE SPECIFIC DISCOVERY REQUESTS AT ISSUE IN THE MOTION TO COMPEL (Civil L.R. 37-2)**

Judge: Hon. Susan Illston

Pursuant to the Court's June 25, 2026 Order (Dkt. 106) and Civil Local Rule 37-2, Plaintiff submits this statement identifying the specific interrogatories and requests for production that seek the discovery at issue in her motion to compel. For each request, Plaintiff states the request, what Defendant produced, what remains outstanding, and the basis for

Plaintiff's entitlement. Plaintiff has sought this discovery since her First Requests for Production served February 19, 2025, and her First Interrogatories served July 6, 2025, and has raised these deficiencies in writing repeatedly, including on January 30, March 5, April 16, May 1, and June 10, 2026.

Plaintiff adds this note on Defendant’s responses. Throughout this litigation Defendant has not produced responsive documents in a single complete response. Defendant first did not respond, then produced partial materials, and across multiple requests answered with the recurring representation that it was 'continuing to investigate' and would 'supplement as information becomes available,' without producing the documents and without committing to a date. Where this statement quotes Defendant's written response, it does so directly. Where Plaintiff has characterized the response, she has done so accurately based on Defendant's served responses and supplements; Defendant's complete written responses are in Defendant's possession and may be compared.

Plaintiff notes a constraint on this filing that arises directly from Defendant’s conduct under the Protective Order. When the parties briefed entry of the Protective Order, Plaintiff stated in her filed submission that Defendant would designate every document it produced as Confidential. (Dkt. 81) The Court entered the model Protective Order over Plaintiff’s objection, expressly relying on the Order’s safeguard that “mass, indiscriminate, or routinized designations are prohibited” and that designations “clearly unjustified or ... made for an improper purpose ... expose the Designating Party to sanctions.” (Dkt. 86 at 1-2; Dkt. 87 § 5.1.) Defendant has nonetheless designated almost its entire production as Confidential, including the documents that support the deficiencies identified in this statement. Plaintiff therefore cannot attach those most of those documents to a publicly filed statement without moving to seal materials that Defendant,

as the designating party, bears the burden of justifying (Dkt. 87 § 6.3), and that would not satisfy the sealing standard of Section 12.3 in any event. To avoid burdening the Court with sealing motions directed at Defendant's own blanket designations, Plaintiff cites the relevant documents by Bates number and stands ready to lodge or submit any document for the Court's review at the Court's direction. Plaintiff reserves the right to challenge Defendant's confidentiality designations as overbroad under Section 5.1 and Section 6 of the Protective Order.

**1. RFP No. 10 - The Complete Stolen-Vehicle Policy and Procedure Manual**

***Request:***

RFP No. 10 sought "documents comprising the complete policy and procedure manual without exception governing the step-by-step management, handling, and investigation of cars alleged to have [been] stolen or lost by Avis's Loss Prevention Group."

***What was produced versus what is outstanding:***

Defendant produced copies of training and system-entry powerpoint images describing how a stolen-vehicle report is entered, but did not produce the governing policy and procedure manual that establishes the criteria, required verifications, and approvals for reporting a vehicle stolen to law enforcement. The governing manual remains outstanding. Defendant did not produce the manual and did not state that no such manual exists; consistent with its practice on other requests, Defendant indicated it would supplement without producing the document or committing to a date.

***Entitlement:***

This request corresponds directly to the Court's inquiry at item (5) of the June 25 Order. The governing manual is central to whether Armando Cruz's October 25, 2022 stolen-vehicle report complied with Defendant's own policy and with California Vehicle Code section 10855,

and to whether the reporting practice was authorized above the SFO level. The training material Defendant produced implements a governing policy; its production confirms the governing policy exists.

**2. The Named Governing Policies and Procedures, Including the Mini-Lease Procedures (RFP Nos. 7 and 8)**

***Request:***

RFP No. 8 sought “all policy and procedure DOCUMENTS and manuals governing rental operations at Avis Budget Car Rental LLC ... at the SFO Rental Center in 2022,” complete and detailing the correct steps to rent, return, and exchange a vehicle and the entry and exit gate procedures. RFP No. 7 sought Avis's complete Employee Handbook in effect in 2022. In meet-and-confer correspondence, Plaintiff further identified specific policies by the policy numbers appearing within Defendant's own produced training documents, including the WEB/APPLICANT Account Procedures (Avis TR08-017, SB07-081, Budget TR08-020, HS 07-073), the Avis standard mini-lease procedures (Avis SB08-084, Budget HS08-074), and the ABG Customer Service and Sales Process, as effective in 2022.

***What was produced versus what is outstanding:***

Defendant initially produced incomplete copies of Avis’s rules of conduct for all Avis employees. The rules of conduct are called “Work Rules.” The document sets forth extensive examples of the types of acts and behaviors that are unacceptable in the workplace. Breach of these work requirements may form the basis for termination under the document. Avis requires ***all*** of its employees (working for the parent company, Avis Budget Group, Inc., and at any and all of its subsidiaries, including those working at Avis Budget Car Rental, LLC) to sign that document upon being hired into the organization and every year thereafter. The document is authored by Avis Budget Group, Inc., and it is distributed out to all North American employees

through the centralized Human Resources Division seated at ABG's corporate headquarters. In short, Avis Budget Group manages human resources down to local rental counters nationwide

The Defendant eventually produced complete copies of Work Rules for the year 2024 after the Plaintiff complained (Bates AVIA002662). Review of the complete copies revealed that the earlier production had omitted pages, including content relevant to the conduct at issue.

As to the mini-lease procedures and the ABG Customer Service and Sales Process, Defendant produced ***training material*** that references the underlying policies but did not produce the underlying policies and procedures themselves. Of the policies Plaintiff identified by Defendant's own policy numbers, Defendant only produced two Training Releases for those policies: TR08-020 and TR08-017. Training releases are not policies and procedures. The governing policies, and the versions in effect in 2022, remain outstanding. When Plaintiff raised the specifically numbered policies during a meet and confer discussion, Defendant's prior counsel represented that he did not understand the request and directed Plaintiff to continue sending correspondence, to which Defendant did not respond substantively.

***Entitlement:***

Plaintiff's vehicle exchange on June 26, 2022 was conducted under an active corporate mini-lease (AWD No. G0079000). The mini-lease procedures govern what should have occurred and establish the standard from which Defendant's employees deviated. These governing policies also establish the prohibitions on manipulating mini-lease and commission transactions. Defendant's own training material references these policies and confirms that they exist, and that the complete Work Rules, once produced, revealed pages omitted from the earlier production bears on the completeness and reliability of Defendant's productions. The manual is not the same thing as the training releases. The policy and manual is not the same as the training PowerPoint

that the Defendant has peddled off to the Plaintiff as policy and procedure. Plaintiff is entitled to a complete copy of the policies that she has listed above. Production of the enumerated policies does not excuse nor preclude the Defendant from producing the entire policy and procedure manual governing operations at the Avis/Budget counter at the SFO Rental Center

**3. RFP Nos. 5 and 6 - Personnel Files and Shift Timestamps for SFO Personnel**

***Request:***

RFP No. 5 sought time-clock (punch) records and documents for all employees, managers, and contractors working at the Avis counter at SFO on June 26, 2022, indicating name, title, job description, and hours worked. RFP No. 6 sought the names and complete personnel files (including performance evaluations, disciplinary records, and training records) of all leadership personnel with supervisory authority over the Avis counter at the SFO Rental Center on June 26, 2022, and the identity of those with authority over SFO operations.

***What was produced versus what is outstanding:***

As to RFP No. 5, Defendant did not produce the punch records. Instead, Defendant produced a payroll-derived hours summary (a multi-page flattened export) that was assembled in a manner that answers around the request rather than answering it. The document reflects a pay-category hours total for each employee but *contains no clock-in or clock-out records* of any kind (See exhibit A). The omission is not a matter of records that do not exist. The document itself assigns shift-differential and overtime pay categories to named employees. Shift-differential and overtime pay are calculated from the exact clock-in and clock-out times. Defendant could not have computed and paid those categories, which appear on the face of the document Defendant produced, without the punch times. The punch times therefore exist, were in Defendant's possession, and were used by Defendant to calculate the pay shown; Defendant produced a

document that retains the downstream pay calculations while removing the underlying time field on which those calculations depend. This is the field most probative of who was physically present at the rental counter during the 20:49 to 21:53 window of Plaintiff's vehicle exchange.

The production is deficient in three further respects. It is over-inclusive: it lists the entire SFO hourly workforce for the full 24-hour business day, across every job class and shift, when the exchange involved a single rental sales associate and a manager. It is under-inclusive where it matters: because it is an hourly export, the salaried managers do not appear at all, so Armando Cruz and Autumn Poti do not appear, although Defendant's own records place Cruz at the facility that day. The volume of the payroll-derived summary is inflated because each employee is split into a separate row for each pay category, so a smaller number of people generates a larger number of rows.

Plaintiff further requests production of the native Excel file underlying this export, with its metadata. The payroll data was produced as a flattened image without a text layer, which cannot be sorted or filtered. The native file and its metadata would show whether clock-in and clock-out columns existed and were removed or hidden, or never existed, which bears directly on Defendant's compliance and on the completeness of its production.

Defendant's counsel has now sworn to the contrary of what Defendant actually produced. In her declaration filed July 2, 2026 (Dkt. 107), counsel declared under penalty of perjury that a raw punch record for the hourly employees working on the evening of June 26, 2022 exists and was produced on July 2. That sworn description matches nothing Defendant produced. What Defendant produced is the payroll-derived hours summary described above, which contains no clock-in or clock-out times, together with a separate late-in-the-day production on July 2, 2026 of a list of fewer than five names showing clock-in times for exit-gate or security personnel and

nothing more. Between the two, Defendant produced punch times for a handful of gate or security agents and no punch times for anyone at the rental counter, then declared that it had produced the punch record for the hourly employees working that evening. The existence of actual clock-in times for the gate agents confirms that the punch data exists and is retrievable, which defeats Defendant's position that the timeless payroll-derived summary was the most accurate available record of who was present. The punch records for the counter personnel present during Plaintiff's exchange remain outstanding.

The payroll records are also necessary to resolve a contradiction Defendant's own witnesses have created regarding who employs the SFO personnel. In response to Interrogatory No. 2, Defendant admitted that it pays its employees and maintains required payroll records, while asserting that payroll is irrelevant. Payroll is not irrelevant. Defendant's witnesses do not agree on who employs them. Armando Cruz testified that he is employed and paid by Avis Budget Group, Inc., the corporate parent. Airene Laylo testified that she was unsure who employed her. Gary Russell testified that he worked for Avis Budget Car Rental, LLC. The payroll records, which Defendant admits it maintains, identify the true employer of record for each of these individuals and are directly relevant to the relationship between Avis Budget Car Rental, LLC and its corporate parent, and to Plaintiff's punitive-damages and alter-ego theories. Plaintiff does not seek Social Security numbers and has said so. Separately, the personnel and payroll materials Defendant did produce were redacted far beyond anything its objections could justify, removing the addresses, telephone numbers, and email addresses of current and former employees. Those categories are precisely what the Protective Order (Dkt. 87) was entered to protect, and Defendant may designate them Confidential rather than withhold them. Redacting

information the Protective Order already covers is not a permissible response; it is a second layer of withholding placed on top of the first.

As to RFP No. 6, Defendant produced incomplete personnel files. The file of Armando Cruz remained missing performance evaluations and disciplinary records for the period December 31, 2016 to the present until July 2, 2026 when Defendant produced some of Mr. Cruz's more recent evaluations. Disciplinary records for that period remain outstanding, and the belated production of a subset on the eve of this filing underscores that these records exist and were withheld. The signed annual Rules of the Road and Work Rules acknowledgments for 2020, 2021, and 2022 are absent from the files Plaintiff has reviewed.

***Entitlement:***

These correspond to the Court's inquiry at item (2) of the June 25 Order regarding Cruz's performance evaluations. The timestamps identify the percipient witnesses to the vehicle exchange. The complete personnel files, evaluations, and signed acknowledgments are necessary to Plaintiff's negligent supervision and punitivemdamages claims.

**4. Interrogatory No. 1 and RFP Nos. 2, 33, 31, and 9 - Identity of the On-Duty Counter Agent, On-Duty Personnel, HR and Training Personnel, and Loss-Prevention Personnel**

***Request:***

Interrogatory No. 1 sought the identity, titles, employment status, and contact information of all persons on duty at SFO Rental Center counter and floor during the relevant period. RFP No. 2 sought the full name, address, telephone, email, personnel file, and supervisor of the counter agent who issued Plaintiff's rental agreement (RA 756086236) on June 26, 2022. RFP No. 33 sought the identity and records of the agent associated with identifier 89416 appearing on Plaintiff's transaction documents. RFP No. 31 sought the identity and complete personnel files of

training and human-resources personnel with responsibility for training personnel at the Avis operation at the SFO Rental Center in 2022. RFP No. 9 sought the identity and complete files of Avis loss-prevention (car-theft) personnel for 2022.

***What was produced versus what is outstanding:***

Defendant has not identified the agent who processed Plaintiff's vehicle exchange on the evening of June 26, 2022. The materials Defendant produced do not answer the request and do not resolve the agent's identity.

As to Interrogatory No. 1, Defendant produced two materials, neither of which identifies the on-duty counter agent. First, Defendant produced a weekly schedule for the week of June 25 to July 1, 2022 (AVIA003112) that reflects only daytime shift assignments and does not show evening or overnight counter coverage for June 26, 2022. Plaintiff's vehicle exchange is documented in Defendant's own records as occurring at 21:41 and 21:53 on June 26, 2022. The schedule Defendant produced identifies no rental sales associate assigned to the counter during that evening window. Second, Defendant produced an undifferentiated list of approximately 150 employees by name and primary job title only, without dates, shift assignments, times, or any indication of who was on duty during the relevant period.

That list was not merely incomplete; it was assembled in a manner designed to obscure rather than to inform. It provides only last name, first name, and a single primary job title, stripping the contact information, dates of employment, employment status, and job descriptions that Interrogatory No. 1(E) expressly required. It combines the entire workforce without identifying who was on duty during the June 26, 2022 window the interrogatory actually asked about, and it miscategorizes employees and their roles.

Airene Laylo is the clearest example. Defendant's own response lists Ms. Laylo as Station Manager, hourly, for the relevant period. Ms. Laylo, shown the same records at her deposition, testified that she was not a station manager, that she was hired as a file clerk and administrative worker, and that as a file clerk, she worked Monday through Friday and not on Sundays, and that she did not receive overtime. June 26, 2022 was a Sunday. Defendant's own document therefore places Ms. Laylo in a management role, and on the clock, on a day its own witness testified she would not have worked, in a pay posture its own witness testified did not apply to her. A production that classifies the same employee in two irreconcilable ways is not a good-faith answer to the interrogatory. It is a document assembled to appear responsive while concealing who was actually present and what their true roles were.

The identity of the agent who processed the exchange should be determinable from Defendant's own records which Defendant has not produced. A vehicle exchange is processed in Defendant's Wizard system, and the Wizard transaction record for rental agreement RA 756086236 should reflect the agent identifier of the agent who processed it. That transaction record, together with the badge-in and badge-out logs for the 20:00 to 23:00 timeframe on June 26, 2022, should identify the agent, but the Defendant states that it does not have any documentation of the agent who botched the Plaintiff's vehicle exchange on that date. Therefore, Plaintiff requires a list with the rental service agents, the airport manager, and/or lead rental service agents who were logged in to work in the Wizard system between 20:00 and 23:00 on June 26, 2022. Defendant has not produced this information.

The agent identifiers and contract paperwork already in the record do not resolve the question because the corporate mini-lease generates a series of pre-dated thirty-day contracts at the time the lease is opened with each thirty-day contract bearing the name and identifier of the

agent who *opened* the mini-lease rather than the agent who *handled any particular later transaction*. Multiple agent names accordingly appear across Plaintiff's mini-lease paperwork. The name on a mini-lease contract therefore identifies who opened the lease, not who processed the June 26 exchange. What the record establishes is that the agent who attempted to process the exchange was male, and that his identity is resolvable only through the withheld Wizard transaction record for RA 756086236, the badge logs, and the Wizard log-in and log-out records for the timeframe of 20:00 to 23:00 on June 26, 2022.

Defendant's own recordkeeping contains gaps that make the Wizard transaction record indispensable. Armando Cruz, the manager who physically handed Plaintiff the vehicle, testified that he does not badge in or badge out. A manager who moves through the SFO operation, services vehicles, and directs the counter while generating no badge record of his own presence illustrates why the records Plaintiff seeks are not cumulative. Where an individual leaves no badge trail, the Wizard transaction record for rental agreement RA 756086236, which captures the agent identifier of the person who processed the exchange, becomes the one reliable record of who performed the consequential acts. Defendant's systems thus contain precisely the kind of gaps that make production of the complete Wizard records essential rather than optional.

At his deposition June 30, 2026, Mr. Cruz declared that he does not badge in nor out. He stated that he does not necessarily have to log into the Wizard system daily because he uses an open unsecured terminal in the back office that does not require him to log in to check vehicle accounts during his shift. He did say that he had to complete a report called a “car count” for every shift he works. He completes the report shortly after beginning his shift. The car count summarizes or describes the number of vehicles available for rent (against the number of car reservations slated for that shift) at the Avis SFO location. Mr. Cruz stated that he sends the

report to his superiors once per shift. Plaintiff requests the car count reports submitted to Avis SFO management from June 25, 2022 through June 27, 2022. The report is signed, dated, and timed. It will verify the hours that Armondo Cruz worked at the SFO Rental Center on June 26, 2022.

As to RFP Nos. 31 and 9, Defendant did not identify the HR and training personnel responsible for SFO or the loss-prevention personnel or produce their personnel files or contact information. These remain outstanding.

Defendant has *refused* to identify the human-resources personnel and the human-resources chain of command with authority over the SFO Rental Center, and that refusal is not incidental. Human-resources authority for the SFO operation runs upward to the corporate parent, Avis Budget Group, Inc. Identifying the human-resources chain of command would establish the line of authority from the SFO counter to the parent, which is central to Plaintiff's theory that the conduct at issue was authorized above the SFO level and to Plaintiff's claim for punitive damages under California Civil Code section 3294.

Defendant produced a single reference to a human-resources business partner buried within a production exceeding one thousand pages, with no job description, no statement of the role, no reporting line, and no contact information, and it has otherwise declined to identify the human-resources personnel, their titles, their authority, or to whom they report. Interrogatories 5 and 6, which sought the leadership and the highest-level operations and human-resources authority over the SFO Rental Center including at the corporate-parent level, drew objections and no substantive response at all. Defendant's silence on the human-resources chain of command is consistent with an effort to keep the parent's authority off the record.

Defendant's own public materials contradict its position that corporate human resources lacks authority over the SFO field employees. On Avis Budget Group's official careers system, hosted on the company's own Workday site, the published job description for the Human Resources Business Partner position, the same position the declarant Chelsea Miller identifies as her own, states that the role is a key member of the human-resources leadership team, provides human-resources support for an assigned field operations location, supports union, non-union, management, and staff in the specified departments and field locations, and ensures human-resources compliance from both a legal and company-policy perspective. On Avis Budget Group's corporate About Us and leadership pages, the company identifies its Executive Vice President and Chief Human Resources Officer, who by the company's own description oversees Avis Budget Group's global human-resources activities, including labor and employee relations. Taken together, these materials describe a human-resources structure running from the corporate Chief Human Resources Officer, over global human resources including employee and labor relations, down to the human-resources business partners who ensure human-resources compliance and support management and staff at each field operations location, a structure that reaches the SFO location and its employees. Defendant cannot deny that corporate human resources has authority over these employees while its own published materials describe human resources ensuring compliance and supporting staff at the field-operations level and overseeing employee and labor relations at the corporate level. This contradicts the representation at paragraph 8 of the Declaration of Chelsea Miller and underscores why the human-resources chain of command and the corporate personnel Plaintiff has sought, and which Defendant has refused to identify, are discoverable and material to Plaintiff's claim for punitive damages.

***Entitlement:***

This information corresponds to the Court's inquiries at items (3), (6), (7), and (8) of the June 25 Order regarding the Wizard metadata, HR executive authority, private contractors, and training records. The agent who processed the exchange is a central percipient witness: that agent terminated the corporate mini-lease and issued the documentation at issue. Defendant's production of a partial day-shift schedule and an undifferentiated roster, while withholding the Wizard transaction record that identifies the responsible agent, does not answer the request.

**5. RFP Nos. 16, 20, and 34 - Prior Complaints, Claims, and the Number of False Stolen-Vehicle Reports (Anchored in Defendant's Own Admissions)**

***Request:***

These requests are not limited to filed lawsuits. RFP No. 16 sought “any internal or external complaints (including customer complaints), grievances, or Human Resource reports” between January 1, 2021 and December 31, 2022 alleging conditions leading to “the false arrest of customers related to Avis issuing false reports of vehicle theft.” RFP No. 20 sought prior lawsuits, claims, or settlements involving similar false-arrest allegations, and separately “the number of false reports of car theft that Avis or Avis related entities filed against innocent renters in the years 2021, 2022, and 2023.” RFP No. 34 sought records of law-enforcement investigations into Avis's practices related to false reports of car theft leading to false arrest. The discovery sought thus includes internal complaints, customer complaints, grievances, HR reports, claims, settlements, the raw count of false reports generated from Defendant's own system, and investigations. The discovery requests call for the production of document and information categories that exist independently of whether any customer filed suit.

***What was produced versus what is outstanding:***

Defendant produced no records responsive to any of these categories and represented, in substance, that it had no responsive information. That representation is not credible in light of Defendant's own documents. An internal Avis email dated August 21, 2022 states that Defendant has “had a few issues with cars on bad paper in the past.” Regional Security Manager Gary Russell, who directed the report in this case, stated that he did not want “another good customer pulled out on bad paper,” acknowledging that legitimate renters had previously been detained or arrested at gunpoint by law enforcement because of Defendant's documentation. Defendant's own records therefore confirm that prior instances, and Defendant's awareness of them, exist. A company of Defendant's size that operates a loss-prevention group, a security function, a human-resources complaint system, and a stolen-vehicle reporting database cannot credibly maintain that it possesses no complaint, no claim, no internal report, and no countable number of false reports responsive to these requests. The requested records and the requested count remain outstanding.

***Entitlement:***

These records are directly relevant to Plaintiff's punitive damages claim under California Civil Code section 3294. They bear on whether Defendant acted with conscious disregard of the rights of its customers, on Defendant's knowledge of the risk that its reporting practice would cause the wrongful detention of lawful renters, and on whether the conduct in this case was an isolated error or part of a known and repeated practice. Defendant's own statements confirm that prior instances exist and that Defendant was aware of them. Because Defendant's records admit the practice while Defendant has produced no records of it and no count of it, Plaintiff is entitled to production and, in the absence of production, to the inference that the withheld records would establish the pattern.

**6. Redacted Contact Information for Witnesses (Interrogatory No. 1(E) and RFP No. 2. , No. 6, No. 9., and No. 31)**

***Request:***

Interrogatory No. 1(E) expressly sought “the contact information for, titles, dates of employment, employment status, and official job descriptions for any PERSON listed,” regardless of whether the person remains employed by Defendant or any related entity. Plaintiff's requests for production likewise sought the contact information of identified employees, including RFP No. 2 (the counter agent who issued RA 756086236), RFP No. 6 (leadership personnel), RFP No. 9 (loss-prevention personnel), and RFP No. 31 (training and human-resources personnel).

***What was produced versus what is outstanding:***

After the Court entered the Protective Order (Dkt. 87), Defendant redacted the address, telephone number, and email address of nearly every employee from its production, including for former employees who are no longer employed by Defendant and who must therefore be served personally with a subpoena to be deposed. Among the witnesses whose contact information was redacted are Kenneth Leung, Merlyn Dalit, and Shamond Brooks. The contact information remains outstanding.

***Entitlement:***

The contact information was specifically requested and is necessary to locate and serve former-employee witnesses for deposition. Defendant's redaction is not justified by privacy concerns because the Protective Order (Dkt. 87) already permits Defendant to produce sensitive information subject to a confidentiality designation, restricting its use to this litigation. The Protective Order is the mechanism that addresses any privacy concern; it is not a basis to withhold the information entirely. Plaintiff requests an order compelling Defendant to produce

the work and last-known contact information for the identified witnesses, which Defendant may designate Confidential under the Protective Order. Absent this information, Plaintiff cannot serve former-employee witnesses before the discovery cutoff.

**7. Procedural Context**

Plaintiff has requested this discovery since February 19, 2025, and has raised these specific deficiencies in writing on January 30, March 5, April 16, May 1, and June 10, 2026.

The meet and confer requirement has been satisfied. Plaintiff conferred with Defendant regarding these specific deficiencies in writing on January 30, March 5, April 16, May 1, and June 10, 2026. A substitution of defense counsel does not reset that obligation, and the deficiencies addressed in this statement are the same deficiencies raised in that correspondence. Plaintiff also asked counsel for Defendant if they wanted to meet and confer on this issue yesterday after the deposition of deponent Gary Russell was complete. Defense counsel stated that she would like to meet on the issue of potentially hammering out a stipulation as to liability at some point in the future. Defense counsel stated that she did not need to meet and confer on the issue of the motion to compel at that time.

This dispute is properly before the Court pursuant to the Court's June 25, 2026 Order (Dkt. 106). Plaintiff remains willing to confer further, but the discovery at issue is ripe for decision and the deadline set by the Court for this statement is not extended by any further conferral.

Defendant's responses have followed a consistent pattern: an initial period of non-response, followed by partial productions, accompanied across multiple requests by the representation that Defendant was investigating and would supplement when able, without producing the documents and without committing to a date. Defendant produced partial

responses after the Court's October 16, 2025 order (Dkt. 86) and has not cured the deficiencies identified above. In the interest of candor, Plaintiff notes that Defendant's supplemental production of April 27, 2026 included job descriptions for several positions, which substantially resolves the job-description category. In her deposition taken on July 1, 2026, Airene Laylo established that she was working as a file clerk/administrative worker in June of 2022. Falsified payroll records given to the Plaintiff as discovery as a list of employees working on that date classified Laylo as a station manager. Laylo herself disputed this designation by stating that was not her role at the time. Therefore, Plaintiff requires a job description for Airene Laylo's job at the time: file clerk slash admin.

Further, Plaintiff requires job descriptions for all of the human resources personnel and their identities revealed and their contact information. Those employees have not been identified, and their job descriptions have not been submitted. The deficiencies identified above remain outstanding. Plaintiff respectfully submits that the outstanding discovery is specific, has been specifically requested, and is directly relevant to the claims and to Plaintiff's punitive-damages case.

Defendant's most recent supplemental production, served late in the day on July 2, 2026, confirms the pattern rather than curing it. In that supplement, Defendant produced some of Armando Cruz's more recent performance evaluations and a short list of exit-gate or security-gate personnel. It produced nothing else responsive to the deficiencies identified above. Plaintiff still has no personnel files for the gate personnel Defendant belatedly listed. Plaintiff still has no clock-in and clock-out records for the employees on the dates requested. Plaintiff still has no Wizard transaction records or metadata. A partial production of a subset of one witness's evaluations and a bare list of names, served the day before this statement is due and years into

the litigation, is the same conduct that has defined Defendant's approach throughout: produce a fraction, withhold the substance, and leave the core records outstanding as the discovery cutoff approaches.

**8. Proportionality**

The discovery Plaintiff seeks is proportional to the needs of the case under Federal Rule of Civil Procedure 26(b). The issues at stake are of the highest importance: the reporting of a lawfully rented vehicle as stolen, the resulting arrest and incarceration of Plaintiff, and whether the reporting practice was authorized above the SFO level for purposes of punitive damages. The amount in controversy is substantial. The parties' relative access to the relevant information is entirely asymmetrical. Every record that would establish who processed Plaintiff's exchange, what the governing policies required, and whether the practice was authorized is within Defendant's sole possession and control, in Defendant's Wizard system, personnel files, badge logs, and policy manuals, and Plaintiff has no independent means of obtaining any of it. The requested discovery is essential to resolving the central issues in the case, and the burden of producing records Defendant maintains in the ordinary course of business is minimal in comparison to their importance. The proportionality and other requirements of Rule 26(b)(2) are therefore satisfied.

**9. Defendant's Continuing Pattern of Obstruction**

Defendant's obstruction has not stopped at documents. It has reached into the depositions themselves, and it continues. On June 29, 2026, at 5:00 p.m. Eastern Standard Time, Plaintiff was rushing to board a flight in the Atlanta airport to appear the next morning at the deposition location in the Bay Area. That is when defense counsel called and tried to make the deposition go away. Her reason kept changing. First, she said she thought deposition was by Zoom even

though the notice stated it was in person. Then she said she could not produce the witness. When none of that moved Plaintiff off the date, counsel tried to drag the deposition out of the neutral site Plaintiff had secured and into counsel's own office. Plaintiff refused every one of these maneuvers. She held the date; she held the neutral venue; she boarded her flight at her own expense, and she appeared the next morning exactly as noticed. To be clear, the witnesses were ultimately produced as Plaintiff requested. That outcome came only after Plaintiff was forced to withstand a last minute campaign to cancel, excuse, and relocate a deposition she had properly noticed weeks in advance, and it is the same campaign of resistance that has met Plaintiff at every stage of discovery in this case. This is a continuous pattern of obstruction that forces Plaintiff to litigate for compliance she is already entitled to, and it is precisely the conduct that should not be permitted to continue.

Defendant's manipulation extends to the dates on which, and the order in which, witnesses are deposed, and its purpose is to shorten the depositions and to render them ineffective. Plaintiff noticed the deposition of Autumn Poti for a full day, and a full day is what her testimony requires. Ms. Poti was the airport manager who actively oversaw Armando Cruz, Airene Laylo, Rodel Catam, the exit gate agents, and the entire SFO airport operation on the dates at issue. She is a central witness whose examination cannot responsibly be compressed. Defendant nonetheless objected that its counsel was unavailable, that Ms. Poti was in Hawaii, and that her deposition should not begin until after 12:00 p.m., a demand whose only function is to cut the available hours and run down the clock on a full-day witness. In the same breath, Defendant presses Plaintiff to place multiple witnesses on a single day. The two demands point in opposite directions, yet they serve one end. Compressing a full-day witness into a half day, while insisting that Plaintiff stack multiple coached witnesses into a single sitting, is a method

for exhausting a pro se plaintiff and starving each deposition of the time it needs. That time is not a formality.

Defendant's witnesses have been coached to sidestep questions and to withhold answers, and it takes sustained, methodical examination to extract the information the case requires from a witness prepared to resist giving it. Every hour Defendant shaves from a deposition is an hour Plaintiff loses to that resistance. The same design governs the Rule 30(b)(6) deposition. Defendant offered its corporate representative for deposition early June because that witness is its most composed and prepared, and Defendant wanted the witness examined before Plaintiff had taken the underlying depositions that would tell her what to ask. Plaintiff declined, deposed the percipient witnesses first, and then noticed the corporate deposition two weeks in advance with detailed matters for examination, stating each subject in advance so that the corporate representative would be required to prepare and could not evade behind a professed lack of knowledge.

One week before that deposition, with the July 23, 2026 discovery cutoff three weeks away, Defendant objected to the subjects themselves, demanded a further meet and confer as a *precondition* to even identifying its witnesses, and refused to commit to any date, stating only that "once they have been identified we will be able to advise regarding availability." Controlling the order of the witnesses, the length of their examinations, and the timing of their production is controlling Plaintiff's ability to question them fully on the subject matter at hand. That is the object of the exercise, and running the discovery clock to July 23 is the goal.

Respectfully submitted,

This July 3, 2026

/s/ Avia Turner-Gray

AVIA TURNER-GRAY
Plaintiff In Pro Per

3538 Cumberland Road
East Point, GA 30344
(404)444-6561
aviaturnergrayattyatlaw@gmail.com

# CERTIFICATE OF SERVICE

**Turner-Gray v. Avis Budget Car Rental, LLC, et al.**
**USDC Northern District of California, Case No. 3:23-CV-05507-SI**

I hereby certify that on the date set forth below, I served the foregoing **PLAINTIFF'S STATEMENT IDENTIFYING THE SPECIFIC DISCOVERY REQUESTS AT ISSUE IN THE MOTION TO COMPEL (CIVIL LOCAL RULE 37-2)** upon all parties via counsel of record by electronic mail and/or through the Court's CM/ECF system.

Counsel of Record for Defendant:

C. Beeman, Esquire
cbeeman@clappmoroney.com
A. Meyers, Esquire
ameyers@clappmoroney.com
Counsel for Defendant
Avis Budget Car Rental LLC
Clapp Moroney Vicinich Beeman + Scheley
5860 Owens Drive
Suite 410
Pleasanton, CA 94588

This 3rd day of July 2026

Respectfully submitted,

/s/Avia Turner-Gray___________
Avia Turner-Gray
Plaintiff In Pro Per

3538 Cumberland Road
East Point, GA 30344
(404)444-6561
aviaturnergrayattyatlaw@gmail.com