Avia Turner-Gray
3538 Cumberland Road
East Point, GA 30344
Telephone: (404) 444-6561
aviaturnergrayattyatlaw@gmail.com
Plaintiff In Pro Per

Christopher J. Beeman, SBN 121194 (cbeeman@clappmoroney.com)
Ashley N. Meyers, SBN 274072 (ameyers@clappmoroney.com)
CLAPP, MORONEY, VUCINICH, BEEMAN+SCHELEY
5860 Owens Drive, Suite 410
Pleasanton, California 94588
Telephone: (925) 734-0990; Facsimile: (925) 734-0888
Attorneys for Defendant AVIS BUDGET CAR RENTAL, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AVIA TURNER-GRAY,<br><br>Plaintiff,<br><br>vs.<br><br>AVIS BUDGET CAR RENTAL, LLC,<br>JOHN DOES 1 THROUGH 50,<br><br>Defendants. | **Case No. 3:23-CV-05507-TSH**<br><br>*[Honorable Thomas S. Hixson]*<br><br>**JOINT FURTHER CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER**<br><br>Case Management Conference:<br>August 20, 2026, 10:00 a.m.<br>By Zoom Video Conference |

Plaintiff Avia Turner-Gray ("Plaintiff") and Defendant Avis Budget Car Rental, LLC ("Avis" or "Defendant") (collectively, the "Parties") hereby submit this Joint Further Case Management Statement and Proposed Order pursuant to the Standing Order for All Judges of the Northern District of California, Civil Local Rule 16-9, the Standing Order of Magistrate Judge

Thomas S. Hixson, and the Court's August 7, 2026 Order Setting Case Management Conference [Dkt. No. 121].

**1. Jurisdiction and Service**

This Court has subject matter jurisdiction under 28 U.S.C. §1332 because Plaintiff's citizenship is diverse from that of each Defendant and the amount in controversy exceeds $75,000. Venue is proper because the incident alleged occurred within the Northern District of California. By Joint Application and Stipulation filed July 17, 2026 and granted by the Honorable Susan Illston, all parties stipulated to assignment to Magistrate Judge Thomas S. Hixson, and this action was thereafter reassigned to Judge Hixson for all purposes pursuant to 28 U.S.C. §636(c). [Dkt. No. 113]

**2. Facts**

**A. Plaintiff's Statement**

Plaintiff claims injuries and damages arising from her false arrest and imprisonment at gunpoint for felony vehicle theft on October 26, 2022. Plaintiff, a citizen of Georgia, was working temporarily in the San Francisco Bay Area as an interim nurse manager at a Kaiser Permanente hospital pursuant to a contract with B.E. Smith Interim Services, LLC, now known as AMN Healthcare Interim Solutions, LLC, a subsidiary of AMN Healthcare, Inc. (collectively, "AMN").

As part of her compensation package with AMN, Plaintiff was provided a rental vehicle from Avis under a direct corporate billing arrangement. Plaintiff never received a bill for these vehicles; all rental charges were paid by AMN. When Plaintiff picked up her first rental vehicle in January 2021, Avis informed her that she might periodically be required to exchange the vehicle she was driving.

Plaintiff had been driving Avis vehicles continuously for approximately a year and a half under that corporate agreement with every rental billed to her employer and never to her. On June 26, 2022, Plaintiff went to the Avis facility at San Francisco International Airport to exchange her vehicle exactly as she had done before. What Avis did that night can be stated simply.

First, Avis terminated the overarching corporate rental contract that had been paying for Plaintiff's vehicles for months. Avis did this without her knowledge or consent, and without telling her. Second, Avis handed Plaintiff falsified paperwork. The paperwork did not correspond to the car the Plaintiff drove out, and it did not correspond to any documented rental contract or reservation in Avis's system. It was ghost paperwork for a rental contract that did not exist. Third, Avis never entered the vehicle that it actually gave her, a 2022 Nissan Altima, into its system as rented to anyone. Fourth, an Avis manager walked Plaintiff to that vehicle at the Avis SFO rental car parking lot and told her to drive it out, but he did not check or ensure the accuracy of the exchange via the paperwork given to the Plaintiff or in the system. Fifth, Avis's exit gate employee waved her through the gate without checking her paperwork against the car she was given to drive or against details in Avis's own computerized rental car records. Plaintiff left that lot holding documents Avis generated, believing she had a valid rental, because Avis told her she did.

Avis told police that the vehicle was stolen on June 26, 2022 which was the date of the exchange. Multiple bodycam recordings captured Avis Budget manager, Armando Cruz, stating by phone, that the vehicle was stolen on June 26, 2022. The arresting officer likewise told Plaintiff directly that the vehicle was stolen on June 26, 2022. That is the date Avis terminated her contract, handed her false paperwork, walked her to the car, and waved her out of its own lot. Avis fraudulently reported as a theft the very same transaction Avis itself had botched. Avis now contends that it did not report the vehicle stolen until October 25, 2022, and the conflict between that position and what Avis told law enforcement is a central disputed issue in this case.

Avis did not exchange the vehicle. Avis did not record the vehicle. Avis did not follow its own policies and procedures at any step of the transaction or the investigation that followed. Avis then placed Plaintiff's life, health, and livelihood in extreme danger by having the Plaintiff incarcerated for felony car theft.

Avis knew where the car was. Sworn testimony and Avis's own documents establish that Avis possessed GPS and telematics location data placing the vehicle at Plaintiff's place of employment in Antioch, California, including a July 13, 2022 ping and an August 1, 2022 internal email from the reporting employee to Avis's regional security manager reporting the vehicle's dated positions. The vehicle sat in a Kaiser Permanente hospital parking lot for

approximately three and a half months after June 26, 2022. Avis knew the vehicle's location from July 13, 2022 forward and did nothing with it. Avis never contacted the Plaintiff. Avis never contacted her employer. Avis never contacted hospital security at the facility where its own data placed the vehicle. Avis never contacted the Antioch Police Department. Avis never engaged a repossession company to recover the the vehicle hospital parking lot at Kaiser Permanente in Antioch. Avis had every lawful means of retrieving its property and used none of them. Instead, Avis reported Plaintiff to law enforcement as a car thief.

On October 25, 2022, an Avis employee signed a CHP 180 stolen vehicle report swearing that the last driver of the 2022 Nisan Altima was unknown while Avis's own files contained the Plaintiff's identity, her employer's identity, and the vehicle's location. On October 26, 2022, Plaintiff was arrested at gunpoint by multiple officers. Avis's representative, Armando Cruz, told the Alameda County Sheriff's officers that night that the company wanted her arrested. Plaintiff was taken to the Santa Rita Jail.

The Santa Rita jail has a long, documented history of being one of the worst county jails in the state. The Alameda County Civil Grand Jury found human feces smeared on the walls of cells when it inspected Santa Rita Jail in June 2022. It found feces smeared in cells that jail staff had already cleared to receive new prisoners that same day. [1] The Grand Jury concluded this was no isolated lapse but proof that sanitation at the jail had collapsed as a system. [2]

None of this was hidden. In April 2021, the United States Department of Justice found reasonable cause to believe that conditions at Santa Rita violated the United States Constitution and the Americans with Disabilities Act. [3] In February 2022, eight months before Plaintiff's arrest, this District entered a consent decree in Babu v. County of Alameda placing the jail under court supervision for at least six years. The Ninth Circuit affirmed that decree. [4]

---

[1] Alameda Cnty. Civ. Grand Jury, 2021–2022 Final Report (June 2022).

[2] Id.

[3] U.S. Dep't of Just., C.R. Div., Investigation of Alameda County, California (Apr. 22, 2021).

[4] *Babu v. County of Alameda*, No. 5:18-cv-07677-NC (N.D. Cal. Feb. 7, 2022) (order approving consent decree), *aff'd* (9th Cir. Oct. 6, 2023).

The jail was deemed unsafe. Santa Rita had one of the highest in-custody death rates of any county jail in California. [5] This is the jail that Avis chose for the Plaintiff over a phone call it never made.

Plaintiff spent the night in a jail cell with feces smeared on the walls and with 6 inches of toilet paper covering the floor. She was confined in that cell with dangerous, decompensating, psychotic individuals, including a person accused of murder and another in the midst of a full psychotic break. While incarcerated, Plaintiff was physically assaulted and battered by a cellmate. Plaintiff left the jail with bruises on her body.

Avis knew these were the conditions to which its report would deliver her. Arrest and jail are the known and intended consequences of a false stolen vehicle report and a demand for prosecution. That is the entire function of such a report. Avis caused the problem, ignored the evidence that would have solved it, and then asked police to arrest the Plaintiff for its own critical failures.

In 2023, Plaintiff, acting alone, obtained a Finding of Factual Innocence under Cal. Penal Code§ 851.8. Plaintiff claims the false arrest and imprisonment caused severe emotional distress, physical injury, extensive damage to her career and earning capacity as an interim nurse executive, and costs associated with clearing her record.

This is a pattern and not an accident. Over a period of years and in multiple states, Avis and its affiliated brands have failed to record rentals, reported the vehicles stolen, and left innocent customers to be stopped, detained, and arrested. Plaintiff has identified numerous such incidents from public sources alone. Those incidents go directly to notice, to foreseeability, and to whether Avis's conduct here was an isolated mistake or the predictable product of a system Avis has declined to fix. The Court recognized the relevance of exactly this evidence and ordered its production in Section IX of the July 9, 2026 Order.

---

[5] KTVU, *Santa Rita Jail Making 'Excellent Strides' After Years of Troubles* (Feb. 11, 2025).

Defendant has not produced the complete record of the incidents. Defendant is withholding records that would show a jury how long this has been going on, and Plaintiff contends that this is precisely the reason why the records are being withheld.

**B. Defendant's Statement**

Plaintiff claims injuries and damages following a false arrest and imprisonment for felony joyriding on October 26, 2022. On June 26, 2022, the Plaintiff came to the SFO Avis Counter location for a vehicle exchange under her long-term lease. During the vehicle exchange, the Plaintiff was dissatisfied with the vehicle she was assigned and requested and obtained a different vehicle. For reasons unknown to Defendant, no rental was created for the vehicle that the Plaintiff left the lot in, and when that vehicle was noted as idle (not having been rented recently) a search for the vehicle was fruitless. After a waiting period of a few months, on October 25, 2022, Defendant reported the vehicle stolen. The following day the vehicle was picked up on license plate cameras and the Plaintiff was detained, arrested and spent one night in jail.

Defendant contends that there is no evidence of any conduct more than simple negligence. Defendant views this as a damages case, however notes that it has been unable to complete necessary discovery into Plaintiff's damages. Plaintiff contends that evidence, including sworn deposition testimony and Defendant's own business records, supports intentional, malicious, and reckless conduct on the part of Defendant and its managing agents, and that this case presents substantial liability and punitive damages questions in addition to damages questions.

**3. Legal Issues**

**A. Plaintiff's Statement**

Primary legal issues include: (1) whether Avis is liable for false imprisonment, malicious prosecution, fraud, negligence, and intentional infliction of emotional distress arising from its false stolen vehicle report; (2) whether Avis acted with malice, oppression, or fraud within the meaning of California Civil Code section 3294, and whether such conduct was authorized or ratified by an officer, director, or managing agent under section 3294(b); (3) whether Avis's possession of vehicle location data, coupled with its failure to investigate before demanding

prosecution, defeats any claim of honest mistake; (4) causation and the full measure of Plaintiff's general, special, and punitive damages; and (5) Avis's compliance with California Civil Code section 1939.23 regarding electronic surveillance technology in rental vehicles.

This did not happen only to Plaintiff. Avis and its affiliated brands have a documented history, across the country and across years, of failing to record rentals correctly and then reporting the resulting vehicles stolen, causing innocent renters to be stopped, detained, and arrested. Plaintiff has identified numerous such incidents from public sources alone. Those incidents go directly to notice, to foreseeability, and to whether Avis's conduct here was an isolated mistake or the predictable product of a system Avis has declined to fix. The Court recognized the relevance of exactly this evidence and ordered its production in Section IX of the July 9, 2026 Order. Defendant has not produced it. Defendant is withholding the records and the counts that would show a jury how long this has been going on.

**B. Defendant's Statement**

Avis views this matter as primarily a damages case. Plaintiff is alleging emotional distress damages, PTSD as well as loss of income and earning capacity as a result of the incident. Defendant is still in the process of obtaining psychological treatment records through subpoenas and employment records for the Plaintiff pre and post incident. Defendant still needs to complete an IME as well.

**4. Motions**

**A. Prior Motion Practice**

AMN's motions to dismiss were resolved in AMN's favor; on January 7, 2025, the Court granted AMN's Motion to Dismiss the Corrected Second Amended Complaint without leave to amend, and AMN is no longer a party. Plaintiff continues to evaluate her appellate options as to that ruling.

On May 29, 2026, Plaintiff filed a Motion to Compel discovery from Avis. [Dkt. No. 99] On June 25, 2026, Judge Illston directed supplemental briefing. [Dkt. No. 106] On July 9, 2026, the Court issued its Order granting the motion in part and denying it in part. [Dkt. No. 110] Among other relief, the Court ordered Avis to produce, by July 17, 2026, documents relating to other incidents in which Avis reported a rental vehicle as stolen when the vehicle was not

actually stolen, and to identify the employee or employees involved in Plaintiff's June 26, 2022 rental transaction or provide a sworn explanation of why identification is not possible. The Court also directed the parties to meet and confer on several categories of discovery, including identification of training and loss prevention personnel, signed annual policy acknowledgments, mini lease procedures, and the proper corporate defendants. Those meet and confer processes are ongoing and remain unresolved.

**B. Anticipated Motions - Plaintiff**

Plaintiff anticipates the following motions, each necessitated by Defendant's conduct of discovery: (1) a motion for sanctions under Rule 37(b)(2) for Defendant's willful violation of the Court's July 9, 2026 Order, as detailed in Section 8 below; (2) a motion for leave to take depositions beyond the presumptive limit of Rule 30(a)(2)(A)(i), because Defendant's withholding of documents has forced Plaintiff to establish through witness testimony the facts Defendant refuses to produce on paper; (3) a motion for leave to serve interrogatories beyond the limit of Rule 33(a)(1), for the same reason; (4) a motion for an expanded protective order under Rule 26(c) covering Plaintiff and her witnesses, addressing the conduct detailed in Section 8 below, together with a request for an expedited hearing; (5) a motion for leave to amend the operative complaint to restore Avis Budget Group, Inc. and PV Holding Corp. as defendants and to substitute named defendants for Doe defendants, as addressed in Section 5 below; (6) a joint discovery letter brief, and a request for a hearing involving third party counsel for AMN, concerning AMN's failure to produce documents responsive to Plaintiff's subpoena; (7) motions in limine as the case proceeds toward trial; and (8) further discovery motion practice as needed regarding Defendant's telematics and vehicle location data and the completeness of Defendant’s Court ordered production; (9) a motion for sanctions against Defendant's prior counsel personally under Fed. R. Civ. P. 30(d)(2), 28 U.S.C. § 1927, and the Court's inherent authority, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–46 (1991), arising from the conduct of depositions described in Section 8.D below; federal courts sanction counsel personally for humiliating and irrelevant deposition examination, *Redwood v. Dobson*, 476 F.3d 462, 469–70 (7th Cir. 2007).

///

///

### C. Anticipated Motions - Defendant

Defendant expects to file a Motion for Summary Adjudication of causes of action alleging intentional conduct and related to the prayer for punitive damages. Defendant additionally expects motion work related to discovery which is summarized below.

## 5. Amendment of Pleadings

Plaintiff filed a First Amended Complaint, followed by a Second Amended Complaint, and most recently a Corrected Second Amended Complaint, the operative complaint. Avis has filed an Answer to the operative complaint.

Plaintiff will move for leave to amend on two grounds. First, Plaintiff will move to restore Avis Budget Group, Inc. and PV Holding Corp. as Defendants. Plaintiff dismissed those entities in reliance on written representations by Defendant's prior counsel. By email of November 18, 2024, Patrick Albasha represented that the only proper entity was Avis Budget Car Rental, LLC, that PV Holding Corp. is a pure holding company with no operations and no involvement, that counsel had confirmed this with Avis, and that Avis could not and did not benefit from misrepresenting which entity was proper. By email of November 20, 2024, Christopher Lee repeated that PV Holding Corp. only holds title to vehicles, has no operations, and issues no reports, and requested confirmation that Plaintiff would dismiss the other entities. Discovery has since developed evidence that Plaintiff contends is inconsistent with those representations, including evidence of shared corporate officers drawn from Defendant's own October 2025 filing. Section V of the July 9, 2026 Order directs the parties to meet and confer regarding which entity employs the SFO Avis employees and the proper corporate defendants. [Dkt. No. 110]

Plaintiff states her position on this issue plainly. Defendant has misrepresented who controls and operates this business. California corporate registration filings identify Avis Budget Group, Inc. in connection with the control and operation of Avis Budget Car Rental, LLC. Defendant's own October 2025 filing reflects officers shared across the entities, which cannot be reconciled with the sworn denial of entity separation given by Defendant's Rule 30(b)(6) designee at his July 17, 2026 deposition. As to PV Holding Corp., the representation that it merely holds title to vehicles is contradicted by Defendant's own documents, in which PV

Holding Corp. appears in connection with the reporting and investigation of the vehicle at issue, including the stolen vehicle report made to airport police. Plaintiff contends these representations were false when made and that she dismissed two defendants in reliance on them.

Second, Plaintiff will move to substitute named defendants for the Doe defendants. Identifying those individuals has been obstructed at every step. Defendant has withheld the records that would identify who was on duty and who processed Plaintiff's June 26, 2022 transaction, has given testimony Plaintiff contends is false regarding job duties and responsibilities, has concealed the identity of the personnel on duty and the hours they worked, and has produced records Plaintiff contends have been altered or stripped, including a payroll derived summary from which clock in and clock out times were removed. Every category of information required to identify the Doe defendants lies exclusively in Defendant's possession. Plaintiff's ability to amend therefore depends on Defendant's compliance with its discovery obligations, which to date has not occurred.

**6. Evidence Preservation**

Parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information and have met and conferred pursuant to Federal Rule of Civil Procedure 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action.

Plaintiff states that preservation is an area of active concern. Sworn testimony establishes that Avis's SFO security camera footage from June 26, 2022 was overwritten, and Plaintiff continues to pursue Avis's telematics, GPS, and vehicle location data through pending discovery. Plaintiff reserves all rights regarding spoliation of electronically stored information, including vehicle telematics data.

**7. Disclosures**

Avis and Plaintiff have complied with the initial disclosure requirements of Federal Rule of Civil Procedure 26.

///

///

## 8. Discovery

### A. Plaintiff's Statement: History of the Discovery Disputes

Plaintiff propounded her first sets of written discovery in early 2025, including Requests for Production served February 19, 2025. Beginning in March 2025 and continuing to this day, Defendant's counsel, and therefore Avis itself, has stonewalled the production of documents in this action. That stonewalling began under prior counsel, Everett Dorey LLP, through blanket objections, refusals to produce core documents, and refusals to schedule depositions of Avis personnel, and it has continued, to some extent, under substitute counsel.

Impasse led the parties to file a joint discovery letter brief on October 15, 2025. On October 16, 2025, the Court entered its Order re: Discovery [Dkt. No. 86], entered the model protective order, directed Avis to respond to all outstanding discovery requests within two weeks of entry of the Protective Order, and directed the parties to cooperate regarding the scheduling of depositions and all other discovery matters.

Despite that Order, and despite Plaintiff's repeated requests for documents and witness information, Defendant continued a pattern of withholding. Plaintiff filed her Motion to Compel on May 29, 2026. [Dkt. No. 99] On July 9, 2026, the Court granted the motion in part, ordered production of other incident false stolen vehicle report documents by July 17, 2026, ordered Avis to identify the employees involved in Plaintiff's June 26, 2022 transaction or explain under oath why it cannot, and directed the parties to meet and confer on multiple additional categories. [Dkt. No. 110]

Defendant produced no corporate witness for deposition until June 2026. Plaintiff had been requesting depositions of Avis personnel since 2025and the Court's October 16, 2025 Order directed the parties to cooperate regarding the scheduling of depositions. Defendant nonetheless produced no one. Defendant's first witness was not made available until June 30, 2026, more than a month after Plaintiff filed her Motion to Compel on May 29, 2026, and only while that motion was pending before Judge Illston. The depositions of Defendant's remaining witnesses followed in the days and weeks after. Defendant's cooperation, such as it was, arrived only under the pressure of a pending motion to compel.

Defendant is in willful violation of the Court's July 9, 2026 Order. Production was ordered by July 17, 2026. Production was extended to July 29, 2026 by the Parties' Stipulation [Dkt. No. 113] and then to August 5, 2026 by Plaintiff's further agreement. All three dates have passed, and Defendant still has not produced all of the documents it was ordered to produce. What Defendant served, 947 pages Bates numbered AVIA004239 through AVIA005185, is drawn from the wrong system and omits some categories the Order names specifically. Defendant has not produced the counts of false stolen vehicle reports the Order requires and has articulated no plan to produce them. Plaintiff documented these violations in detailed written correspondence, including her August 6, 2026 nonconforming production letter. Parties have met and conferred on the issue, but the documents still have not been produced.

Defendant's withholding is driving up the cost of this litigation and multiplying the discovery Plaintiff must take. Because Defendant will not produce the records that would show what happened and who was involved, Plaintiff is forced to reconstruct those facts witness by witness through depositions. Plaintiff has identified eighteen deposition targets, including Rule 30(b)(6) designees, and requires leave or a stipulation to take approximately ten depositions beyond those already taken, solely because Defendant's document withholding has made witness testimony the only remaining path to basic facts, including the identity of the employees involved in Plaintiff's June 26, 2022 transaction. Every document Defendant withholds converts into deposition hours, court reporter fees, videographer fees, and motion practice that proper production would have made unnecessary. Plaintiff intends to raise these matters with the Court at the conference and through the informal discovery conference process contemplated by the parties' stipulation.

Plaintiff also requires the Court's assistance as to a third party. In June 2026, Plaintiff served subpoenas for documents on AMN, Plaintiff's former employer and a former defendant in this action, through its counsel. No documents have been produced. AMN has not been forthcoming, and Plaintiff contends AMN has worked to keep responsive documents out of her hands. Plaintiff will submit a joint discovery letter brief on this dispute and requests a hearing at which counsel for AMN is present.

Given this history, Plaintiff respectfully submits that this case requires active judicial supervision of discovery. Plaintiff has been met with stonewalling by Defendant since March

2025, with a court order that Defendant has willfully violated, and with a third party that has produced nothing in response to a subpoena served two months ago. Plaintiff requests that the Court exercise close supervision over Plaintiff's discovery requests and Defendant's responses to them, including through the informal discovery conference procedure and any further procedures the Court deems appropriate.

Plaintiff is not taking depositions for their own sake. Avis operates through many redundant layers of management, and the witnesses Defendant has produced routinely disclaim responsibility for the duties their own job descriptions and Defendant's own records assign to them. Witnesses have testified that they did not perform tasks that Defendant's documents show they performed. They have disclaimed knowledge of documents bearing their own names, and have pointed responsibility upward, downward, or sideways to other employees. Each such answer requires Plaintiff to depose the next person in the chain. Where Defendant has produced records that Plaintiff contends are inaccurate, and where witnesses testify inconsistently with those records, establishing what actually occurred requires more witnesses, not fewer. Defendant created that condition, and Defendant cannot cite the resulting deposition count as evidence of Plaintiff's overreach.

**B. Plaintiff's Statement: Discovery Completed**

Plaintiff has taken the depositions of the responding law enforcement officers and of Avis witnesses including the counter agent who signed the stolen vehicle report, the regional security manager who made the final decision on the report, the operations manager who handled mini leases, additional operational witnesses, and Avis's Rule 30(b)(6) corporate designee. Certified transcripts have been received for these depositions.

**C. Defendant's Statement**

Plaintiff served her first set of Requests for Admissions, Special Interrogatories and Requests for Production of Documents which Defendant Avis responded to. Avis served Plaintiff with Requests for Admissions, Special Interrogatories and Requests for Production of Documents which she responded to. Plaintiff conducted the depositions of the responding officers who performed the arrest. Plaintiff served two lengthy sets of Requests for Production of Documents on August 10 and 11, 2026. As mentioned above, Plaintiff has conducted numerous

Defendant depositions. Plaintiff's deposition was conducted but was ended when she left the deposition and Defendant asserts a right to complete said deposition.

Discovery has been extremely contentious. The Parties are meeting and conferring by phone with regularity but there are issues that are expected to result in discovery motions. The Plaintiff's deposition was taken by prior counsel but she left the deposition without it being concluded. During the deposition she refused to answer numerous questions. The Plaintiff has taken the ardent position that prior traumas are not discoverable and cannot be raised in questioning. When the prospect of completing her deposition was raised, Plaintiff stated that a motion would be necessary, and she would demand that Defendant pay for her to have an attorney and a psychologist or similar attend. Similarly, when an IME was raised, she stated that she would fight it, even with the offer that it be conducted via zoom.

Plaintiff has conducted the depositions of the operations manager who reported the vehicle as stolen, the security manager for the region SFO is within, an airport manager at the time, an operations manager who handled mini leases and a corporate PMQ representative. Defendant has produced over 6,000 pages of documents. All Defense witnesses have acknowledged the existence of rules, procedures and protocols which are intended to prevent this sort of thing from happening, however many of those procedures rely on that initial step, recording the rental in the system, and when that is not done, the remaining precautions are unhelpful and errors can occur leading to mistaken and incorrect reporting. Despite Defendant's transparency, Plaintiff has indicated a desire to continue taking numerous additional Defendant depositions and just provided a proposed list including numerous Apex depositions. This will likely result in motion work.

**D. Plaintiff's Response Regarding Her Deposition and the Conduct of Prior Counsel**

Defendant's account of Plaintiff's deposition omits the controlling facts and the controlling law. Plaintiff's deposition was taken in May 2025 by Defendant's prior counsel, Everett Dorey LLP. Plaintiff appeared, cooperated, and testified on the record for more than seven hours, thereby satisfying the presumptive durational limit of Federal Rule of Civil Procedure 30(d)(1), which limits a deposition to one day of seven hours absent stipulation or court order.

Federal Rule of Civil Procedure 30(d)(3)(A) provides that a deponent or a party may demand that a deposition be suspended, and may move to terminate or limit it, on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party. Rule 26(c)(1) likewise authorizes protective orders to shield a party from annoyance, embarrassment, oppression, or undue burden, and Rule 30(d)(2) authorizes sanctions against any person who impedes, delays, or frustrates the fair examination of the deponent.

Prior counsel's conduct during the Plaintiff's deposition met that standard. Prior counsel interrogated Plaintiff about a workplace incident from approximately thirty years earlier, in a different state and unrelated employment, in which Plaintiff, then working as a surgical nurse, was attacked by a surgeon who lunged at her with a bloody scalpel during neurosurgery while the patient lay anesthetized with the surgical field open. The assault later caused the surgeon to lose his license. The assault initiated a process that allegedly caused the state to close the hospital's neurosurgical program for two years. After Plaintiff testified that she had been attacked, prior counsel demanded that Plaintiff describe the weapon used in the assault against her. That question has no bearing on any issue in this action, and its only function was to distress the deponent.

Because of prior counsel's abuse, Plaintiff was forced to break multiple times in tears during the examination, as the inappropriate lines of questioning triggered post traumatic stress responses. Plaintiff nonetheless continued answering for hours, and only after enduring more than seven hours under these conditions, when it became apparent the examination had ceased seeking relevant information and had become oppressive, did Plaintiff suspend the examination, as Rule 30(d)(3)(A) entitled her to do.

This conduct was not isolated. Prior counsel engaged in a pattern, across three separate depositions, of using the examination not to obtain relevant information but to embarrass, defame, and diminish Plaintiff, including through the examination of Plaintiff's own witnesses. At the deposition of Plaintiff's testifying psychologist, Dr. Dean Leav, prior counsel used its questioning of the witness to insult Plaintiff and to ridicule Plaintiff and her case. At the deposition that followed of Plaintiff's physician, Dr. Travis, prior counsel put questions to the physician that insulted Plaintiff's hair, her menopausal status, her hormone treatment, and her

diabetic condition, and that called the Plaintiff fat and lazy. Those subjects bear on no issue in this action. Their purpose was to humiliate Plaintiff through the testimony of the very physicians treating her.

Plaintiff is a person with a disability within the meaning of 42 U.S.C. § 12102, as her diabetes substantially limits the operation of her endocrine system. 42 U.S.C. § 12102(2)(B). Counsel's ridicule of Plaintiff's disability, placed on the record of a federal proceeding through the examination of her treating physician, was not discovery. It was disability harassment of a litigant. Any further examination of Plaintiff in any form must include reasonable accommodations for her disability, including scheduled breaks and access to food, medication, and glucose monitoring.

Plaintiff objected to this conduct in contemporaneous written correspondence to prior counsel. By email to Christopher Lee of Everett Dorey LLP dated May 27, 2026, Plaintiff objected in writing that Defendant had used depositions to abuse, embarrass, castigate, and insult her experts, and to insult her about her appearance and her health issues through those experts, and objected specifically to irrelevant questioning about genitalia and menopause. Plaintiff stated in that same correspondence that Defendant had deliberately and intentionally psychologically tormented her during her own deposition. Mr. Lee responded the same evening, disputing Plaintiff's accusations and asserting that Defendant was acting in good faith. Plaintiff raised the same conduct in written conferrals throughout the first half of 2026, and copies of that correspondence are available to the Court on request.

Any suggestion that Plaintiff simply left or refused to participate mischaracterizes the record. Plaintiff gave Defendant a full day of testimony and exhausted the presumptive limit of Rule 30(d)(1). Plaintiff will not sit for a further session. If Defendant seeks additional examination, leave of court is required under Rule 30(d)(1), and Plaintiff will oppose any such request and will seek a protective order under Rule 26(c)(1) together with appropriate relief under Rule 30(d)(2) and (d)(3).

Defendant's abusive conduct extends beyond Plaintiff's own deposition to her witnesses and her workplace. Prior counsel stated to Plaintiff that Defendant would depose all of Plaintiff's fellow nursing colleagues on her nursing unit at Alameda Health System, a Level 1 trauma center

serving the poor and indigent of the Bay Area. Plaintiff memorialized that statement in her May 27, 2026 email to Mr. Lee, objecting that Defendant planned to disrupt healthcare operations on one of the most critical units in the hospital in order to manufacture a defense, and that Defendant was using the subpoena power to humiliate, embarrass, and threaten her. Mr. Lee's reply of the same evening did not deny making the statement. That threat serves no discovery purpose. It is directed at Plaintiff, at her livelihood, and at a hospital whose patients depend on its staff.

Defendant's handling of Plaintiff's physicians outside the examination itself compounded the harm. Defendant subpoenaed one of Plaintiff's physicians for a deposition without stating the time zone in which the deposition was to occur. The physician's staff had to rearrange her entire patient schedule at the last minute, and the office was disrupted for the day. Defendant further ambushed Plaintiff at the deposition of Dr. Travis with medical documentation that Defendant had not produced in advance, and Plaintiff objected on the record at the time. Plaintiff placed both objections in writing on May 27, 2026 and stated that she would not permit Defendant to place patients at risk in the course of fishing for a defense.

Defendant has repeatedly served subpoenas on third parties, including on Alameda Health System and on Plaintiff's treating providers, without coordinating dates and without providing Plaintiff the prior notice that Federal Rule of Civil Procedure 45(a)(4) requires before service of a subpoena commanding production of documents. On May 27, 2026, Plaintiff demanded in writing that Defendant produce the proofs of service for the Alameda Health System subpoena, state when it was served, state whether notice was given to Plaintiff, and state whether the subpoena had been altered after issuance without notice to her. Plaintiff objected that Defendant had pulled deposition dates out of the air on multiple occasions without any attempt to coordinate, and that a notice of ten days for a subpoenaed expert deposition was inadequate. Mr. Lee's reply asserted that notice of the deposition and all subpoenas had been properly provided. That dispute is squarely joined and requires resolution by the Court.

Defendant's own statement in this document confirms that it is obtaining Plaintiff's psychological treatment records through subpoenas. Defendant has sought and handled Plaintiff's psychiatric records in a manner that fails to protect their confidentiality, without notice, and without protective order designations and handling protections that such records demand.

Psychological records sit at the core of the psychotherapist patient privilege, and any discovery of them must proceed under strict confidentiality controls, not through unnoticed subpoenas.

Defendant states that it still needs to complete an IME. Defendant omits the history. Judge Illston previously indicated that Plaintiff would not be required to travel to California for any examination. Defendant also omits the context. It seeks unsupervised psychological access to Plaintiff, through an examiner of its own selection, after its counsel spent three depositions attacking Plaintiff's mental health, her body, and her disability, and after compelling her to relive a violent assault for no discovery purpose. If Defendant moves under Fed. R. Civ. P. 35, Plaintiff will oppose the motion. Any examination the Court may permit should be governed by a written order fixing conditions in advance: an examiner identified in advance with curriculum vitae, or a neutral examiner appointed by the Court; scope limited by written order to the conditions Plaintiff has placed in controversy, with express prohibition of inquiry into sexual matters, physical appearance, hormonal or gynecological history, and other subjects outside the conditions in controversy; audio recording of the entire examination; a durational limit with scheduled breaks and disability accommodations; and immediate termination upon deviation from the ordered scope. The conduct of Defendant's counsel in this litigation is the good cause for each condition. Fed. R. Civ. P. 26(c)(1); Fed. R. Civ. P. 35(a)(2).

Taken together, this conduct constitutes a sustained campaign to abuse Plaintiff, to attack her mental health, and to crush her so that this litigation goes away. It will not. Plaintiff first stated her intention to seek an expanded protective order covering the staff, administration, and patients of Alameda Health System in her May 27, 2026 correspondence, and the conduct has continued. Plaintiff will request an emergency hearing and an expanded protective order under Rule 26(c) covering both Plaintiff and her witnesses, prohibiting harassing and oppressive examination, prohibiting retaliatory discovery directed at Plaintiff's workplace, requiring advance notice of all third-party subpoenas as Rule 45(a)(4) commands, and imposing strict confidentiality protocols for any psychiatric or medical records obtained in this action.

Plaintiff is preparing a complaint to the State Bar of California regarding prior counsel's conduct of discovery in this action, and Plaintiff is evaluating independent claims against prior counsel and against Avis, including expanded claims for intentional infliction of emotional

distress and abuse of process, arising from the use of the discovery and deposition process to harass, oppress, insult, and diminish her.

**E. Joint Statement**

Parties have jointly stipulated to seeking assignment of a hearing date for an informal discovery conference to deal with these issues.

**9. Class Actions**

This is not a class action.

**10. Related Cases**

There are currently no related cases pending in this District.

**11. Relief**

In her operative complaint, Plaintiff seeks: (1) general damages in the amount of $10,000,000; (2) special damages in the amount of $1,860,000; (3) punitive damages in the amount of $250,000,000; (4) prejudgment and postjudgment interest on all damages; (5) costs of suit incurred; (6) an order enjoining Defendants from engaging in retaliatory actions against Plaintiff; and (7) such other relief as the Court may deem just and proper.

General damages are based on an amount that might reasonably compensate Plaintiff for the pain, suffering, humiliation, and terror she experienced in being falsely arrested, battered, and locked in a jail cell covered in human feces and toilet paper while being confined with multiple dangerous, decompensating, psychotic individuals. Special damages were calculated based on the projected loss of income Plaintiff has sustained and will continue to sustain over her lifetime as a consequence of having an arrest record. Interim nurse executives are required to have clean criminal records, and the appearance of even an arrest operates as a barrier to agency and permanent employment. Special damages reflect the drop in income from Plaintiff's years under contract with B.E. Smith and AMN beginning in 2021 versus her income following the arrest, projected through retirement age. Plaintiff's damages presentation will be supported by expert testimony, including vocational rehabilitation and economic loss experts, as addressed in the Scheduling section below. Punitive damages are sought to punish and deter Defendant and other

corporations in the car rental industry from using police as collection agents for vehicles they have failed to appropriately inventory, process, and track as rented.

**12. Settlement and ADR**

Parties remain interested in settlement and exploring ADR options. Parties have attempted to mediate at least once. Defendant states that this matter is ripe for mediation or other ADR. Plaintiff states that meaningful settlement discussion requires Defendant's full compliance with the July 9, 2026 Order and completion of the core discovery identified above.

**13. Other References**

This case is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**14. Narrowing of Issues**

Defendant expects to make a stipulation as to negligence liability although the specifics are still being ironed out. Defendant contends that such a stipulation should narrow the issues in the case to Plaintiff's damages. Defendant understands that an MSA will likely be necessary.

Plaintiff does not agree that a negligence stipulation narrows this case to damages. Plaintiff's intentional tort claims and prayer for punitive damages remain at issue, and Plaintiff contends the evidentiary record developed in depositions and document discovery supports those claims.

**15. Expedited Trial Procedure**

This case is not the type to be handled under the Expedited Trial Procedure of General Order 64.

**16. Scheduling**

Before reassignment, Judge Illston granted the Parties' Joint Application and Stipulation to Continue Trial Date and All Related Deadlines, filed July 17, 2026, entering the following operative schedule: [Dkt. No. 113]

| | |
|---|---|
| Designation of Experts: | September 25, 2026 |

| | |
|---|---|
| Expert Discovery Cutoff: | November 6, 2026 |
| Fact Discovery Cutoff: | December 18, 2026 |
| Last Day to File Dispositive Motion: | January 15, 2027 |
| Opposition Due: | January 29, 2027 |
| Reply Due: | February 5, 2027 |
| Last Day to Hear Dispositive Motion: | February 19, 2027 |

No trial date was set in the Dkt. No. 113 schedule. In connection with the Parties' request to modify the pretrial schedule, Judge Illston advised that no trials were being set in her department beyond 2026, and the Parties acknowledged in their Stipulation that the judge to whom this action was reassigned may set or reset the litigation schedule in accordance with that judge's own courtroom rules and procedures. [Dkt. Nos. 97, 102, 110, 113] Reassignment of this action therefore requires a trial date and conforming pretrial deadlines.

Plaintiff stipulated to the schedule entered by Judge Illston and does not seek to revisit it lightly. Modification is nonetheless necessary. Plaintiff's economic damages presentation depends on a vocational rehabilitation assessment that undergirds her economic loss expert's report. Plaintiff has interviewed multiple vocational rehabilitation specialists, and the specialists under consideration advise that the assessment cannot be completed before approximately October 25, 2026. Plaintiff cannot designate an economic expert or serve a report before that assessment is complete. Plaintiff's proposal also accounts for Defendant's late and deficient compliance with the July 9, 2026 Order, the depositions that remain to be taken, and the discovery that remains outstanding as described in Section 8 above.

Plaintiff proposes the schedule below, which moves the expert designation date to November 14, 2026 and adjusts the remaining dates accordingly. Hearing dates are set on Thursdays consistent with this Court's law and motion calendar. Plaintiff does not wish to extend this case further than necessary and requests the opportunity to discuss the schedule with the Court at the conference, and to adjust these proposed dates as the Court finds appropriate.

| | |
|---|---|
| Opening Expert Designations and Reports: | November 14, 2026 |

| | |
|---|---|
| Rebuttal Expert Designations and Reports: | December 18, 2026 |
| Fact Discovery Cutoff: | January 15, 2027 |
| Expert Discovery Cutoff: | February 12, 2027 |
| Last Day to File Dispositive Motions: | March 11, 2027 |
| Oppositions to Dispositive Motions Due: | March 25, 2027 |
| Replies Due: | April 1, 2027 |
| Last Day to Hear Dispositive Motions: | April 15, 2027 |
| Pretrial Paperwork Due: | |
| Pretrial Conference: | |
| Jury Trial: | |

Defendant states that there was previously a trial date as well as trial related deadlines when the matter was set in Judge Illston's Department. The Parties are agreeable to a new schedule and trial date that reflects the time needed to resolve the discovery disputes raised herein.

**17. Trial**

This matter is set for a jury trial. Estimated length of trial is 7 days.

**18. Disclosure of Non-Party Interested Entities or Persons**

Each party has filed the Certificate of Interested Entities or Persons required by Civil Local Rule 3-15. Plaintiff: no conflict or interest (other than the named parties) known to report. Avis: no conflict or interest (other than the named parties) known to report.

**19. Professional Conduct**

All attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

///

///

**20. Other**

Nothing further.

DATED: August 14, 2026

CLAPP, MORONEY, VUCINICH,
BEEMAN+SCHELEY

By: ______________________
Christopher J. Beeman
Ashley N. Meyers
Attorneys for Defendant AVIS BUDGET CAR RENTAL, LLC

DATED: August 14, 2026

By: /s/ Avia Turner-Gray
Avia Turner-Gray
Plaintiff In Pro Per

**CASE MANAGEMENT ORDER**

The above JOINT FURTHER CASE MANAGEMENT STATEMENT AND PROPOSED ORDER is approved as the Case Management Order for this case and all parties shall comply with its provisions.

IT IS SO ORDERED.

Dated: ______________________ ______________________

THOMAS S. HIXSON

United States Magistrate Judge

CLAPP, MORONEY, VUCINICH, BEEMAN+SCHELEY
5860 OWENS DRIVE, SUITE 410
PLEASANTON, CALIFORNIA 94588

**Avia Turner-Gray v. Avis Budget Group, Inc., et al.**
United States District Court, Northern District of California Case No. 3:23-cv-05507-TSH

**PROOF OF SERVICE**

1. I am a citizen of the United States and am employed in the County of Alameda, State of CALIFORNIA. I am over the age of 18 years and not a party to the within action.

2. My place of employment is 5860 Owens Drive, Suite 410, Pleasanton, California 94588.

3. On the date set forth below, I caused to be served a true and correct copy of the document described as follows:

**JOINT FURTHER CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER**

I served the documents on the persons below, as follows:

| | |
|---|---|
| Avia Turner-Gray, Esq.<br>Plaintiff in Pro Per<br>3538 Cumberland Road<br>East Point, GA 30344<br>Tel: 404-444-6561<br>Email: aviaturnergrayattyatlaw@gmail.com | |

BY CM/ECF NOTICE OF ELECTRONIC FILING: I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered with CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

Executed on August 14, 2026 at Pleasanton, California.

*/s/ Richean Martin*
Richean Martin