Gmail **Avia Turner-Gray <aviaturnergrayattyatlaw@gmail.com>**

---

# Turner-Gray v. Avis Budget Car Rental, LLC, No. 3:23-cv-05507-TSH (N.D. Cal) Plaintiff's Deficiency Analysis: Defendant's Production Against Dkt. 110 Section IX (Prepared for the Parties' Meet and Confer)

---

**Avia Turner-Gray** <aviaturnergrayattyatlaw@gmail.com> Tue, Aug 11, 2026 at 7:25 PM
To: Chris Beeman <cbeeman@clappmoroney.com>, "Ashley N. Meyers" <Ameyers@clappmoroney.com>, "Richean G. Martin" <rmartin@clappmoroney.com>

Ms. Meyers,

This letter explicitly compares the Court's production Order against what Defendant actually produced. Our goal is to ensure the upcoming meet-and-confer conference proceeds directly from the factual record rather than recollection. This letter also formalizes and memorializes the positions you stated during our telephone call on August 11, 2026.

**I. WHAT THE COURT ORDERED (IN ITS OWN WORDS)**

The Court's ruling on the scope of discovery is unambiguous. The Court held:

> "...the Court agrees with plaintiff that documents (complaints, Human Resource reports, lawsuits, claims, settlements, law enforcement investigations, documents listing the number of false reports of stolen vehicles) related to other incidents in which Avis has reported a rental vehicle as stolen when the vehicle was not actually stolen are relevant to plaintiff's claims and therefore within the scope of Rule 26(b)(1)." (Dkt. 110 at 9-10).

The Court then ordered:

> "Avis is ordered to produce the requested discovery, as narrowed by this order, by July 17." (Dkt. 110 at 10).

**Ordered Temporal Scopes:**

**Lawsuits, Claims, and Settlements (Request No. 20):** Covers matters filed between January 2020 and December 2024 (Dkt. 110 at 9).

**Law Enforcement Investigation Documents (Request No. 34):** Covers documents from January 2021 to the present (Dkt. 110 at 9).

**Counting Documents (False Report Statistics):** The Order states no period for documents listing the total number of false reports of stolen vehicles. Defendant has produced nothing responsive to this category under any period.

**II. CATEGORY-BY-CATEGORY PRODUCTION DEFICIENCIES**

Defendant's production (AVIA004239 through AVIA005185) is deficient across all ordered categories:

**A. Documents Listing the Number of False Reports: Nothing Produced**

**The Deficiency:** Defendant produced zero counting documents of any kind. The Order states no time limitation on this category.

**The Contradiction:** Your July 29 written assertion that identifying these vehicles is "impossible" is contradicted by Defendant's own Rule 30(b)(6) designee, who confirmed under oath that the records exist, that they are retained, and that they can be pulled.

> **A standing report identifies the population.** "Yeah, so we have a report that shows vehicles that have not been inventoried in 30 days. Those are the units typically where we are starting the process on doing a missing vehicle checklist." Hafner Tr. 148:25-149:3.
>
> **A database of these vehicles exists.** Asked whether Avis maintains a security incident database or loss prevention case management system for missing and stolen vehicles, and whether Avis maintains "a database of cars that are involved in a security incident or in a loss prevention case," the designee answered: "Yeah, I'm sure, like, all those vehicles are in the scope of -- of Gary's purview." Hafner Tr. 185:14-185:22.
>
> **The records are retrievable, vehicle by vehicle, on demand.** "Yeah, like, every single one of our vehicles has a vehicle history, and so we could pull, you know, any number of vehicles and be able to pull accident reports or missing vehicle reports from that." Hafner Tr. 186:7-186:10.
>
> **They are indexed by MVA number and retained for the life of the vehicle.** The designee confirmed that the vehicle history is accessed by the vehicle asset number, and that those reports remain in the system for as long as Avis owns or operates the vehicle. Hafner Tr. 186:11-186:19.
>
> **Arrests are tracked.** "Yeah, I mean, we track anytime that someone is arrested in a vehicle." Hafner Tr. 184:18-184:19.
>
> **Annual stolen vehicle statistics are compiled and reviewed.** "Even when we do have annual -- we do go over annual statistics for stolen vehicles." Hafner Tr. 189:23-189:24. Asked what prompts that review: "Just, like, annual reporting... They're still items for our operation." Hafner Tr. 190:5-190:8.
>
> **Alarm clearance is centralized.** Asked who removes the police alert, the designee answered: "I believe from there, like, the actual alert removal comes from VIB." Hafner Tr. 185:12-185:13.

**What this testimony establishes.** Defendant runs a standing report identifying every vehicle not inventoried in thirty days, maintains a database of vehicles in loss prevention cases, keeps a vehicle history for every single unit in its fleet from which missing vehicle reports can be pulled on demand by MVA number, retains those records for the life of the vehicle, tracks arrests in its vehicles, and compiles annual stolen vehicle statistics. Every element required to answer the Court's Order is present in Defendant's own systems, on Defendant's own sworn account.

**The one thing the designee could not supply was the name of the interface.** Immediately after confirming the database exists, he said: "I don't know what portal or what database. I don't know the interface that's used to house it." Hafner Tr. 186:2-186:3. That is a gap in the witness's preparation, not a gap in Defendant's records. Under Rule 30(b)(6) a designee's unfamiliarity binds the corporation as an admission that it failed to prepare him. It is not evidence that the records are absent, and Defendant may not convert the limits of its own designee's preparation into a defense to the Court's Order. Defendant's own recruiting materials supply the name the designee could not: Avis Budget Group's Loss Prevention Department postings state that its agents "Document Case Management database with current attempts made to contact the renters."

**The Order requires records, not a pre-existing tally of Defendant's errors.** To the extent Defendant relies on the designee's further remarks that he did not know "what reporting could show" false arrests and did not think there was "specific data" isolating vehicles reported stolen inaccurately, those statements describe what Defendant has chosen not to compile. They do not describe what Defendant possesses. The Order does not require that Defendant have created, in advance, a summary of its own errors. It requires production of the documents concerning other incidents, and the designee has testified those documents exist, are indexed, and are retrievable. What Defendant declines to do is count how often it was wrong. That is an institutional choice, and it does not relieve Defendant of the obligation to search.

**Decoud Records:** Defendant's own rental history exports contain explicit text entries reading "Overdue & Reported stolen."

**Avis Job Postings:** Defendant's own recruiting materials for its Loss Prevention Department in Virginia Beach name the reports by name. Defendant's Loss Prevention Manager posting (Avis Budget Group, Virginia Beach, posted November 30, 2012, JobCircle Job Code 32758709), which opens "Avis Budget Car Rental, LLC is searching for a Loss Prevention Manager," states that the role includes:

> "establish operating policies and procedures in relation to field administration loss prevention processing, ensuring overdue, open rental agreement, missing/stolen and credit card verification reports, ISO reports, and 13 reports are reconciled and resolved timely for Avis, Budget and Budget Trucks"
>
> "Reviewing the 13 report showing all missing/alarmed cars and monitoring the number of recoveries."
>
> "Ensuring the timely placing of vehicles into missing and alarmed status in wizard/bart, and reviewing the completed police alarm paperwork to be filed with local police jurisdictions."
>
> "Recommending to security managers which vehicles should be placed into missing status after performing recovery efforts including customer calls, credit card company contact, skip tracing, repossession requests, and submitting letters of demand."
>
> "Assist with specific projects and analysis upon request, including but not limited to debit card rental studies, preparing true theft reports, analyzing missing from control vehicles, quarterly national crime database run, monthly department status reports, daily/weekly statistics of overdue, open movement, and missing/stolen reports, and generating stolen from customer reports."

Plaintiff cites this posting as Defendant's own written acknowledgment that these reports exist and are reconciled in the ordinary course, and as the basis to compel both the internal governing description of the role and the reports themselves. Plaintiff does not cite the posting as the internal job description, and notes that the posting states it serves as an advertisement only.

**B. Lawsuits, Claims, and Settlements (Jan 2020 - Dec 2024): Materially Incomplete**

At a minimum, the production omits the following in-period matters explicitly identified to you in writing on July 28:

**The Gilliard Matter:** Charleston; claim arose January 2022; publicly acknowledged by Avis Budget.

**The August Matter:** Metro Atlanta; 2023.

**The Sutherlin Matter:** 2024.

**The Decoud Civil Action:** Filed November 2023. Defendant produced the underlying incident file but completely omitted the actual lawsuit.

**The Whitney LLP Matters:** Anne Arundel County, Maryland. Counsel has publicly stated he represents at least ten individuals matching this criteria. Defendant is asked to identify and produce every such matter falling within the ordered period.

**Missing Disclosures & Redactions:** For the few matters Defendant did produce, final dispositions are missing for the majority. Separately, the Gutierrez settlement amount is redacted. State the basis for that redaction. If the basis is privilege or work product, serve a log complying with FRCP Rule 26(b)(5)(A). If the basis is confidentiality, a protective order governs this action, unilateral redaction of non-privileged responsive content is improper, and the page must be produced unredacted.

**C. Law Enforcement Investigation Documents (Jan 2021 - Present): Nothing Responsive Produced**

**The Deficiency:** While Defendant's production includes some basic police reports, it completely omits the core investigative, tracking, and clearance records that show how Avis interacts with law enforcement, which is the substance of the category.

**The Omissions:** The production lacks National Crime Information Center entry and removal records, National Insurance Crime Bureau inquiry and clearance records, completed police alarm paperwork, and alarm clearance records showing when, by whom, and on what basis a police alarm was cleared after a vehicle was recovered.

**Defendant's Own Description of These Records:** The 2012 Loss Prevention Manager posting describes this exact function in Defendant's own words:

> "Maintain communication with VAB-Security and state local police departments to ensure units recovered have been cleared from the national crime database. This is vital to decrease the potential for arrest of innocent renters due to the police departments or Avis/Budgets neglect to remove a police alarm from a recovered unit."

Defendant created and staffed a corporate role for the stated purpose of decreasing the potential for the arrest of innocent renters through the failure to clear a police alarm. That is the precise harm at the center of this case. A company that maintains such a function necessarily maintains the alarm, clearance, and recovery records that function generates. Defendant's designee corroborated where those records reside, testifying that alert removal originates at the corporate security office and identifying VIB. Hafner Tr. 185.

**The Contradiction:** Most notably, the production completely omits the investigation file for the second SFO arrest. Defendant's own Airport Manager confirmed under oath that another Avis SFO customer was arrested for driving a vehicle he had legitimately rented, and that "an investigation that followed found that the checklist was not done" according to policy or correctly (Poti Tr. 129:5-129:16). That incident falls squarely within the ordered category and the ordered period. Nothing concerning it appears in the production.

**D. Defendant Must Search Its Own Systems, or Produce Them**

Defendant has not represented that it lacks the ability to search its systems. It has represented that doing so would be inconvenient. Those are different propositions, and only the first would matter.

Defendant maintains the Wizard and BART systems, the Case Management database, the ISO report, the 13 report, the Missing and Alarm records, and the annual stolen vehicle statistics. Its own personnel reconcile those reports in the ordinary course. The obligation to conduct a reasonable search of those systems, and to cross-check the results, runs to Defendant. It does not run to Plaintiff, and it is not discharged by describing the volume of a different database that Plaintiff never asked Defendant to search.

**The alternative.** If Defendant will not search these systems, cross-check the results, and produce what the Order requires, then Defendant shall produce the databases themselves. Rule 34(a)(1)(A) entitles Plaintiff to inspect, copy, test, or sample electronically stored information in the responding party's possession, custody, or control. Plaintiff will accept production of the relevant systems, or a complete export of them, in native format with all rows, fields, and metadata intact, together with the data dictionaries, field definitions, and access credentials necessary to run queries, and will conduct the searches herself under the protective order entered in this action. A party that declines to search its own records cannot simultaneously withhold those records from the requesting party.

Defendant should select one course and state it in writing. Defendant may search and produce, or Defendant may produce the systems and let Plaintiff search. Defendant may not do neither.

**E. Timeliness: Complete Default**

The Court ordered production by July 17. The parties stipulated to extend this to July 29. Plaintiff granted a final, written date certain of August 5. Defendant missed all three dates. Production remains incomplete.

**III. MEMORIALIZATION OF COUNSEL'S AUGUST 11 STATEMENTS**

During our phone call on August 11, 2026, you made three statements that define the current posture of this dispute. If these do not match your recollection, please advise in writing within five days so that any difference can be addressed before the Case Management Conference.

**1. Admission of Inadequate Search Methods.**

You stated that the produced case files were not retrieved from the 234,000-claim system you described on July 29, but were found via "other means."

**Effect:** This establishes that your July 29 representation, that a search of the claims system returned only one case, was not a measure of the available data. Plaintiff itemized the proper operational sources in writing on August 6 (served August 7), including the 13 report, the 30-day uninventoried report, Missing and Alarm records, and annual stolen vehicle statistics (Hafner Tr. 189:23-190:1). Defendant has not searched these sources. No systematic search of the operational systems has been performed.

**2. Misstatement of Temporal Scope.**

You claimed the produced matters represent the entire timeline requested by the Court. As set out in Section I, the Order covers 2020 through 2024 for claims and 2021 to the present for law enforcement files. The omitted matters in Section II.B sit squarely inside the Court's ordered windows.

**3. Deficient Insurance Disclosures.**

You stated that Rule 26(a)(1)(A)(iv) insurance materials would only be produced upon a formal request. Rule 26(a)(1) disclosures are self-executing and require a party, without awaiting a discovery request, to produce for inspection any insurance agreement under which an insurer may be liable to satisfy all or part of a possible judgment or to indemnify or reimburse for payments made to satisfy the judgment. To eliminate any procedural excuse, Plaintiff has now served Requests for Production, Set Three.

**Effect:** Your four-word disclosure that Avis is "self-insured" is contradicted by Defendant's own records:

> **Sedgwick Coverage Disclosure (AVIA004488):** Dated May 5, 2021, identifying Continental Casualty policy GL9001603190 with a $2,000,000 combined single limit and $300,000,000 in excess coverage. That disclosure establishes that an insurance tower existed. Whether and to what extent it applied on June 26, 2022 is a question only Defendant can answer.
>
> **Signed Removal Pleading (D.S.C.):** In Rasheka P. Montgomery v. Budget Rent A Car System, Inc., No. 9:25-cv-04621-RMG, Budget Rent A Car System, Inc. stated at paragraph 8 of its Notice of and Petition for Removal: "The Defendant is insured in excess of Seventy-Five Thousand Dollars ($75,000)." At paragraph 9 it relied on "the policy limits" to establish the amount in controversy.

Defendant must produce every policy under which any insurer may be liable to satisfy all or part of a judgment in this action, including primary, excess, and umbrella layers and any self-insured retention endorsement, applicable from June 26, 2022 forward. If Defendant contends no such policy exists, state that in writing, identify the person who made that determination, and describe the search performed.

**IV. CONTINUING NONCOMPLIANCE AND CONTROLLING SCHEDULE**

To be absolutely clear: this letter does not extend any deadlines. All agreed and court-ordered deadlines have passed. Defendant is in active, continuing default of a federal court order. Rule 37(b)(2)(C) requires the Court to order payment of the reasonable expenses caused by a failure to obey a discovery order unless the failure was substantially justified or other circumstances make an award unjust.

The schedule below fixes the hard dates upon which the consequences of this default will be presented to the Court:

**1. Thursday, August 13, 2026, at 5:00 p.m. PT**

Defendant must state its formal written position on every item and deficiency detailed in this letter. While you indicated you would respond by next Tuesday, the Case Management Conference occurs before then, and the record must reflect the parties' positions.

**2. Friday, August 14, 2026 (Case Management Conference)**

Plaintiff will formally raise Defendant's noncompliance with Dkt. 110 to Judge Hixson during the conference and will provide this letter to the Court as an exhibit.

**3. Friday, August 21, 2026 (Production & Cross-Check Deadline)**

By this date, Defendant must fully cure its noncompliance by performing the following actions:

> Produce all counting documents, including the 13 report, 30-day uninventoried report, Missing and Alarm records, and annual statistics. If you claim they do not exist, provide a sworn statement detailed to the standard of Dkt. 110 Section IV explaining exactly which systems were searched and why.
>
> Complete all incident files, including missing dispositions, checklists, alarm clearance records, and the omitted in-period matters listed in Section II.B.
>
> Resolve the Gutierrez redaction by stating the basis and either serving a proper privilege log or producing the page entirely unredacted.
>
> Execute and document comprehensive searches across both the operational systems (the 17 categories listed in Plaintiff's August 6 letter) and the claims system using mutually agreed-upon search terms (accepting your July 29 offer). For any source you claim cannot be searched or does not exist, provide a declaration under penalty of perjury by a person with personal knowledge, matching the Dkt. 110 Section IV standard, detailing who made that determination, how, and when.
>
> In the alternative to the preceding item, produce the systems themselves under Rule 34(a)(1)(A), in native format with all rows, fields, and metadata intact, together with the data dictionaries, field definitions, and access necessary for Plaintiff to run the searches herself under the protective order entered in this action.

**4. Following Completion of the Standing Order Process (Filing)**

On this date, Plaintiff will finalize her portion of the joint submission required by Judge Hixson's Discovery Standing Order. Plaintiff will thereafter file a motion for sanctions under Rule 37(b), separately, in compliance with Civil Local Rules 7-8 and 37-4, as the Standing Order requires and as Dkt. 110 Section X contemplates.

Whatever Defendant has produced by August 21 will dictate the size of our motion to Judge Hixson, not whether it is filed.

Respectfully submitted,

/s/ Avia Turner-Gray

Avia Turner-Gray

Plaintiff In Pro Per