Gmail

Avia Turner-Gray <aviaturnergrayattyatlaw@gmail.com>

# Re: Turner-Gray v. Avis : USDC Case No. 3:23-CV-05507 Publicly Documented Instances of Rental Vehicles Falsely Reported Stolen Advance of Defendant's Court-Ordered Production

**Avia Turner-Gray** <aviaturnergrayattyatlaw@gmail.com> Wed, Jul 29, 2026 at 4:43 PM
To: "Ashley N. Meyers" <ameyers@clappmoroney.com>
Cc: "Richean G. Martin" <rmartin@clappmoroney.com>, Chris Beeman <cbeeman@clappmoroney.com>

Dear Ms. Meyers:

Thank you for your email.

You tell me that identifying the vehicles Avis reported stolen in error is “not possible.” You explain that the only available classification is a police involvement checkbox that sweeps in every fender bender, and that you have been handed more than 234,000 claims files with no practical way to search them. I understand the position. The difficulty, respectfully, is that Avis's own corporate witness told a different story under oath twelve days before you wrote to me.

**Avis's own designee testified that this search is routine.**

On July 17, Avis produced Dylan Hafner as its Rule 30(b)(6) designee. Asked whether Avis keeps a system for missing and stolen vehicles, he answered plainly: “every single one of our vehicles has a vehicle history, and so we could pull . . . any number of vehicles and be able to pull accident reports or missing vehicle reports from that” (Tr. 186). Every vehicle in the fleet has a history. Missing vehicle reports can be pulled from that history for any number of vehicles. That is the search you now describe as impossible. The person Avis chose to speak for it described it as ordinary.

His testimony went further. He testified that Avis scans its entire inventory every day. He testified that a standing report lists every vehicle not inventoried in thirty days, and that this report is where a missing vehicle investigation begins (Tr. 149). Each vehicle that goes missing receives its own checklist. That is the same checklist that exists in this case as Exhibit B for the Altima (Tr. 183). Once a year, Avis reviews its stolen vehicle statistics as a matter of routine. Avis counts these vehicles. It reports on them. It reviews them annually. The population is not hidden in 234,000 files. Avis finds it every day.

**The 234,000 files are the wrong place to look, and Avis chose to look there.**

This exposes the real flaw in the burden you describe. The 234,000 claims files are not where the stolen vehicle records live. Hafner testified that the claims system is run by an outside vendor, Sedgwick, and that Sedgwick “manages like vehicle damage incidents” (Tr. 189). Those are damage claims, not stolen vehicle reports. The missing and stolen process runs somewhere else entirely. It runs through the daily scans, the thirty day report, the checklists, the area security manager who decides whether to report a car stolen, and the corporate security office in Virginia Beach from which the police alert is cleared (Tr. 185).

The burden you describe is therefore one Avis created for itself. Avis elected to search a damage claims database through a police involvement field, found the results unmanageable, and now offers that unmanageability as proof of impossibility. No request in this case asked Avis to search that field in that system. The Court ordered Avis to produce its stolen vehicle records. Avis keeps those records elsewhere, in systems it works in every day.

**Avis's own documents name the reports that hold this information.**

Avis does not have to invent anything to comply. Its own corporate job posting for the Loss Prevention Manager in Virginia Beach names the exact reports. It describes a "13 report showing all missing/alarmed cars," along with "true theft reports," "stolen from customer reports," a "quarterly national crime database run," and "monthly department status reports." Avis's Vehicle Recovery Checklist names a "Missing and Alarm spreadsheet."

These are Avis's words for Avis's records. The 13 report, by Avis's own description, shows all missing and alarmed cars. That is the responsive population, in a single named report. The same job posting states in writing why the position exists. It exists to clear recovered vehicles from the crime database and "decrease the potential for arrest of innocent renters," the precise harm at the center of this case. A company that created a corporate role to prevent the arrest of innocent renters necessarily tracks the alarms, the clearances, and the recoveries. It cannot now claim it has no way to find them.

**What compliance requires.**

Producing only the handful of cases I found in the news will not satisfy the Order. Those cases are examples. They are not the universe. The ones that matter most never reached the news because they settled quietly and live only in Avis's records. Compliance means producing the source records themselves in native format with their data intact. Those records must show two things: every vehicle Avis reported to police as stolen or missing while it was in fact rented or lawfully possessed, and every vehicle Avis re-rented or released while a stolen or alarm flag was still on it. Compliance also includes the records of the police inquiries Avis received about these vehicles and what Avis told the officers who called.

These reports are not merely numbers. Produced with their rows intact, they are lists of specific vehicles, dates, and events. They accomplish the narrowing you say is impossible. They reduce the full claims universe to the discrete set of flagged vehicles. Once those reports identify the vehicles, I will ask for the files on that narrowed set and only that set. That is the opposite of reviewing 234,000 files. A bare number or a summary typed up for this litigation will not satisfy the Order. A number cannot be tested, and a number cannot be followed. I am entitled to the records that carry the names, the dates, the case numbers, and the outcomes. Those details allow each incident to be verified against the police and crime database records that exist outside Avis's control.

**The Order stands, and production is due.**

The Court considered these requests, narrowed them, and ordered production on July 9. That Order stands. It is binding on Avis, and it remains unsatisfied. The volume of Avis's own claims system is not a lawful excuse for withholding the records the Court directed Avis to produce, particularly where Avis's own designee has testified that those records are retrievable.

I am willing to agree to a single two week extension to a date certain for Avis to gather and produce the reports and records described above. In exchange, I ask that Avis stipulate to Plaintiff taking ten additional depositions. This extension applies to the existing Order and does not open a new round of discovery. I am not able to offer more than two weeks because expert designation is set for September 25 and these records bear directly on the expert analysis of notice and pattern.

I am available to speak today. I will give you a call. The records exist. Avis's own witness said so under oath. I am asking that Avis produce them as the Court has already ordered.

Sincerely,

Avia Turner-Gray

Plaintiff In Pro Per

On Wed, Jul 29, 2026 at 15:49 Ashley N. Meyers <ameyers@clappmoroney.com> wrote:

Avia,

This is helpful. I am hoping that we can speak today. I called you and left a voicemail. With regard to the issue of the investigation into the individual who rented the vehicle to you, that declaration with citations to the evidence that's been produced is being served today.

With regard to the supplemental document production, I think we need to speak today. As I mentioned in court there is a classification in claims for police involvement which permits a sweep for claims and actions. There is no way for them to search for claims related to instances where vehicles were reported as stolen in error. That's not possible. The amount of claims where the box has been checked for police involvement is massive. It seems that even in simple car accidents where a police report is created, that box is checked.

I have been transferred over 234,000 claims files. In our process of review for the purposes of production none are anything to do with arrests but we have only reviewed a percentage subset. I think I need to go back to my clients and we need to meet with IT and go back to the drawing board and try to identify a different way to search. We can pull the documents for the cases you have found because those can be searched by name to find the claim number but even that could not be pulled and produced today. I'm assuming I could get those to you next week but that doesn't address our difficulty identifying other instances.

But at this moment, we don't have a trial date any longer and we have some leeway so I am hoping that we can discuss a reasonable extension that would permit Defendant to comply with the court order without having to review 234,000 files.

Ashley N. Meyers
Partner
tel: 925-734-0990 | fax: 925-734-0888 | ameyers@clappmoroney.com
5860 Owens Drive, Suite 410, Pleasanton, CA 94588

CLAPP MORONEY | VUCINICH | BEEMAN + SCHELEY

TRIAL LAWYERS
40+ YEARS STRONG

**San Francisco | Peninsula | East Bay/Central Valley | San Jose/Monterey | Sacramento | Los Angeles**

*Visit our website at www.clappmoroney.com for additional information on Clapp Moroney*

****************************************************************

This e-mail, including any attachments, is sent by a law firm and may contain information that is privileged or confidential. If you are not the intended recipient, please delete the e-mail and any attachments, destroy any printouts that you may have made and notify us immediately by return e-mail. Thank you.

**From:** Avia Turner-Gray <aviaturnergrayattyatlaw@gmail.com>
**Sent:** Tuesday, July 28, 2026 5:42 PM
**To:** Ashley N. Meyers <ameyers@clappmoroney.com>
**Cc:** Richean G. Martin <rmartin@clappmoroney.com>; Chris Beeman <cbeeman@clappmoroney.com>
**Subject:** Turner-Gray v. Avis : USDC Case No. 3:23-CV-05507 Publicly Documented Instances of Rental Vehicles Falsely Reported Stolen Advance of Defendant's Court-Ordered Production

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Ms. Meyers:

Defendant's production responsive to the Court's July 9, 2026 Order (Dkt. 110) is due tomorrow. That Order requires production concerning other instances in which Defendant, its parent, or its affiliated brands reported a rental vehicle stolen or missing to law enforcement where the vehicle had in fact been rented or lawfully possessed.

So that there is no ambiguity about the scope of what is publicly known, and to foreclose any suggestion that such instances are rare, isolated, or unknown to Defendant, I set forth below, in chronological order, publicly documented instances I have identified, drawn from major news outlets, court filings, and counsel's public statements. These are the incidents I have located to date. They are not the whole of what exists; they are what is presently visible in the public record, and I am aware that additional incidents exist that have not been publicly reported. Each incident below is a matter of public record, and Defendant's production is expected to be complete and consistent with them.

**I. INSTANCES INVOLVING AVIS AND AVIS BUDGET GROUP BRANDS (AVIS, BUDGET, PAYLESS)**

**1. Burie v. Payless / Avis Budget Group (Oceanside / San Diego County, CA, January 2023; settled Oct. 2025)**

Sheena and Cole Burie, visiting from Wisconsin, rented a minivan from Payless, an Avis Budget Group brand. In January 2023, Oceanside police stopped them, drew guns, and handcuffed them. Officers searching the vehicle could not locate the rental contract. The Buries sued Payless for negligence and emotional distress. Reported by NBC 7 San Diego and MDF Law.

**2. Ramona Gutierrez v. Avis (Torrance / Los Angeles County, CA, March 2023)**

Ms. Gutierrez, a single mother and six-year Uber driver, legitimately rented a Nissan Altima from an Avis lot in Torrance while her own vehicle was being repaired. On March 22, 2023, the Los Angeles County Sheriff's Department stopped her on the 210 Freeway; approximately six sheriff's vehicles responded, officers drew their guns, and she was handcuffed and held at gunpoint, sustaining wrist injuries. Avis had reported the vehicle stolen before or during her lawful rental. She announced suit through counsel Hugo Ivan Salazar. Reported by KTLA5, Autoblog, The Drive, and The Truth About Cars (April 2023).

**3. Chip August, Avis, Metro Atlanta / Canton, Georgia (WSB-TV, reported Oct. 11, 2023).**

Mr. August rented a Ford Edge from an Avis location in metro Atlanta for a ten-day trip and returned it on July 10 to the Canton Avis location. When he called to say he would be two hours late, the Avis employee told him, *"No problem, put the keys in the center console and we'll be good."* He did so. Avis's records never reflected the return. The vehicle was subsequently driven on a 2,300-mile trip and picked up in San Antonio, Texas; Avis alleged August had kept the car for 57 days, sent him a demand letter treating it as a stolen vehicle, and charged his card over $4,100, despite August and his companion holding full-time jobs in Georgia the entire period. This is the identical mechanism at issue here: an Avis employee accepts an informal return, fails to record it in the system, and the customer is then treated as a thief for a vehicle another person was driving. The same broadcast referenced a second metro-Atlanta Avis customer, James Hagerman, as to whom Avis acknowledged that surveillance video showed his timely return yet withheld a refund until the news outlet intervened. (Source: WSB-TV Channel 2 Atlanta / consumer investigator Justin Gray, Oct. 11, 2023 wsbtv.com.)

**4. Avis Customer ("Lorraine"), Rental Re-Issued While Still Listed Stolen (reported 2023; New York Times).**

A previous renter had reported an Avis vehicle stolen. She then apparently later returned it. Avis never removed the vehicle from the stolen vehicle list and then re-rented it to a new customer. Police tracked the plate and seized the car. When the customer sought a refund, Avis fought the credit-card chargeback, issued no apology, and claimed it had never known the car was reported stolen, yet the police report states that when the vehicle was called in, an Avis representative *confirmed the car was stolen and said the company wanted it back.* Avis's own statement asserted that it "only reports to authorities as a last resort and has comprehensive safeguards in place to prevent erroneous or premature theft notifications." Still, Avis continues to falsely report legitimately rented vehicles as stolen. Whatever safeguards Avis had in place did not work then, and they still do not work now. (Source: The New York Times; Jalopnik, Sept. 22, 2023.)

What are these comprehensive safeguards to prevent erroneous and premature theft notifications? How can Avis have "comprehensive safeguards" when it has alleged, through its employees, that has no written policies from corporate outlining how these processes are supposed to take place.

**5. Chaniece Decoud v. Budget / Avis Budget Group (Chino Hills / San Bernardino County, CA, filed Nov. 2023)**

Ms. Decoud had rented from Budget, an Avis Budget Group subsidiary, for months following an accident, coordinating her contract regularly. Minutes from returning the vehicle to the Chino Hills Budget location, she was stopped and falsely arrested for stealing it. She described being pulled over "in the middle of the exit with seven police cars and a helicopter," and said the experience made her feel "dirty" and "like an animal." She filed a civil lawsuit against Budget in November 2023. Reported by the San Francisco Chronicle (Justin Phillips), Frommer's, and LoyaltyLobby.

**6. Cynthia & Robert Sutherlin, Avis Billed for a Recovered Vehicle (reported Oct. 2024).**

After the Sutherlins' Avis rental was stolen from a resort lot, police located the undamaged vehicle and returned it to Avis *the same day.* Avis nonetheless took the car out of service for five weeks and billed the Sutherlins $3,600 for "loss of use" on a vehicle already back in Avis's possession, documenting Avis's failure to update its own records even after a vehicle is physically returned to it. (Source: Consumer Rescue, Oct. 28, 2024.)

***More Recent Incidents (2025)***

**7. Noelle Wilson & Companion, Avis Rental, Suwanee, Georgia (reported May 2025).**

A San Lorenzo, California couple was stopped by Suwanee, Georgia police because the license plate on their Avis rental (a black Honda CR-V) came back to a different vehicle (a white Chevrolet Malibu). On police body-worn camera video, one officer is heard radioing another, who responds that Avis's *"brand new cars, they haven't registered them, and they've just been throwing different plates on the cars."* The same report noted that Suwanee police had recently stopped another driver in an Avis rental, from Southern California, for the same problem. (Source: ABC7 / KGO 7 On Your Side, May 5 to 6, 2025; bodycam video at youtube.com/watch?v=dwd1_zrAyxY.)

**8. Avis Customer, Manhattan (Upper West Side, NY, June 2025; NBC New York I-Team, Oct. 2025)**

An Avis customer picked up a vehicle at an Avis garage on the Upper West Side and was later subjected to a traffic stop during which an officer drew a gun on her, after the vehicle was mistakenly treated as stolen. The NBC New York I-Team reported it had reviewed "hundreds of lawsuits" filed by customers of rental companies arising from false stolen-vehicle reports. Counsel Daniel Whitney, Jr. (Whitney, LLP) stated the problem is "a nationwide issue, 100 percent," and that he has represented at least ten such individuals.

**9. Whitney, LLP v. Avis, BWI Airport Clients (rental reported stolen; PA gunpoint stop; filed Anne Arundel County, MD)**

Whitney, LLP filed suit alleging Avis rented its clients a vehicle at BWI Airport that had been reported stolen. While driving in Pennsylvania, police drew their guns and ordered the clients out of the vehicle at gunpoint; they were handcuffed, separated, and interrogated roadside. The complaint alleges violations of the Maryland Consumer Protection Act, negligent misrepresentation, and negligence.

**<u>I-A. DEFENDANT'S OWN ADMISSIONS AND INTERNAL DATA</u>**

**A-1. Former Avis Budget Security Director, Public Admission (Philadelphia Inquirer, Aug. 3, 2020).**

Walt Zalisko, a former police chief who served approximately five years as a security director for Avis Budget Group, stated on camera in a broadcast investigation that during his time at the company he personally observed multiple instances of Avis and Budget rental vehicles being released to customers while still flagged as stolen in the company computer system. Separately, speaking to the Philadelphia Inquirer, Zalisko acknowledged that Avis Budget sometimes filed improper police reports because of communications breakdowns among employees. These are admission[illegible] former Avis security director, of the precise mechanism at issue in this action.

**A-2. Avis Internal Investigation Quantifying Its Own Stolen-Vehicle Reports (Monroeville, PA, 2018 to 2019).**

In a matter arising from the conduct of a former Avis employee at four Avis locations, court paperwork reflects that *an investigation by Avis revealed 15 vehicles that were fraudulently rented out had been reported stolen*, that Avis estimated *an additional 30 could be reported stolen* in the following weeks, and that *92 fraudulent rental contracts* were identified, with total losses Avis calculated at over $617,000. This demonstrates that Avis Loss Prevention actively compiles, counts, and reports stolen-vehicle data in batches, and maintains the internal records necessary to quantify how many vehicles it reports stolen and why, exactly the category of records at issue in the Court's Order.

**I-B. RELATIONSHIP TO THE COURT'S JULY 9, 2026 ORDER**

The Court's July 9, 2026 Order (Dkt. 110) directed Defendant to produce documents concerning other incidents in which Avis reported a rental vehicle as stolen when the vehicle was not actually stolen, finding such records relevant to Plaintiff's claims. The incidents documented in this letter fall within the categories the Court ordered produced.

The publicly documented incidents listed above fall within the categories the Court has ordered Defendant to search and produce. That these matters are already reflected in the public record demonstrates both that responsive records exist and that Defendant maintains them. Other incidents, such as the Neubauer internal investigation documenting fifteen vehicles reported stolen and dozens more anticipated, further confirm that Defendant compiles and retains such records.

The public record necessarily reflects only those incidents that resulted in litigation or press coverage. Many such matters resolve quietly and leave no public trace, residing only in Defendant's internal records. For that reason, Defendant's production will be measured against its own internal data, including the "Missing and Alarm spreadsheet," the "13 report," and its NICB inquiry records.

**I-C. ADDITIONAL SFO INCIDENTS ESTABLISHED BY DEFENDANT'S OWN WITNESSES**

Beyond the public record, Defendant's own employees have testified to their knowledge of additional incidents at the San Francisco International Airport (SFO) Avis operation. These incidents arise from the same facility, the same personnel, and the same practices at issue in Plaintiff's case.

Those same witnesses further testified, in substance, to several instances in which customers who rented vehicles at SFO returned them only to discover that the vehicles had never been documented in Avis's system. That is the identical failure that occurred in Plaintiff's case. In those instances, the customers learned of the discrepancy at the time of return and were able to correct it before harm resulted. The distinction between those customers and Plaintiff is one of timing and chance, not of conduct. Had any of those customers been stopped by law enforcement while the vehicle remained undocumented or misreported, they would have faced the same wrongful arrest that Plaintiff suffered. This testimony establishes, from Defendant's own personnel, that the operational failures at the heart of this case are neither isolated nor aberrant.

Because these incidents are known to Defendant's own witnesses and concern the SFO operation directly, Plaintiff expects Defendant's production to identify and account for each of them, including any associated reports, claims, corrections, or law-enforcement contacts.

**II. THE COMMON PATTERN, AND WHY IT MATTERS TO DEFENDANT'S PRODUCTION**

Across these matters, the same mechanisms recur: failure to record a rental, extension, or exchange; failure to update or correct the record; failure to rescind a police report after the vehicle is recovered or located; and reporting a vehicle stolen without contacting the actual renter. In each, an innocent customer was subjected to an armed police stop.

This is precisely the category of information the Court ordered Defendant to produce. The public record above confirms that instances of rental vehicles falsely reported stolen, including by Avis and by Avis Budget Group brands, are neither rare nor unknown to Defendant. Defendant maintains the internal records that document its own such instances, including the "Missing and Alarm spreadsheet" referenced in Defendant's Vehicle Recovery Checklist, the reports referenced in Defendant's own job postings (the "13 report," "true theft reports," "stolen from customer reports," and the "quarterly national crime database run"), and the records maintained by its regional security managers.

The purpose of this letter is straightforward: to confirm that Defendant's production responsive to the Court's Order is complete, and at a minimum, includes what is already a matter of public record. The incidents catalogued above are drawn entirely from news reporting, court filings, law-enforcement records, and Defendant's own public statements. Each is verifiable, and each is provided so that there can be no misunderstanding about the scope of what is publicly known.

The foregoing is not exhaustive. It reflects only those matters presently identifiable from public sources; it is the portion of a *much larger* record. Plaintiff is continuing to compile additional incidents involving Avis, Budge

Payless vehicles reported stolen when they had in fact been rented, returned, or lawfully possessed, and will supplement as that work proceeds.

Sincerely,

Avia Turner-Gray
Plaintiff In Pro Per
(404)444-6561 O

(703)819-9682 C

---

**Turner-Gray v Avis Plaintiffs response to defendants failure to comply with court order.pdf**
132K