Gmail **Avia Turner-Gray <aviaturnergrayattyatlaw@gmail.com>**

# Re: Turner-Gray v. Avis Budget Car Rental, LLC, No. 3:23-CV-05507-TSH: Nonconforming Production Under the July 9, 2026 Order (Dkt. 110)

**Avia Turner-Gray** <aviaturnergrayattyatlaw@gmail.com> Fri, Aug 7, 2026 at 1:48 AM
To: "Ashley N. Meyers" <Ameyers@clappmoroney.com>, Chris Beeman <cbeeman@clappmoroney.com>, "Richean G. Martin" <rmartin@clappmoroney.com>

August 6, 2026

Ashley N. Meyers, Esq.
Clapp Moroney
5860 Owens Drive, Suite 410
Pleasanton, CA 94588
Via electronic mail

Dear Ms. Meyers:

I have reviewed all 947 pages Defendant served in response to Section IX of the Court's July 9, 2026 Order, Bates AVIA004239 through AVIA005185. The production does not comply. It is drawn from the wrong system. It omits every category the Order names specifically, and it is incomplete as to the matters it does contain.

The Order requires documents related to other incidents in which Avis reported a rental vehicle as stolen when the vehicle was not actually stolen, including complaints, Human Resource reports, lawsuits, claims, settlements, law enforcement investigations, and documents listing the number of false reports of stolen vehicles. The Order sets no date limitation.

## I. THE RECORD OF DEADLINES

The Court ordered production by July 17, 2026. The parties stipulated to July 29, 2026. On July 29 you asked for more time. I granted a one week extension to a date certain of Wednesday, August 5, 2026, conditioned on Defendant preparing a stipulation and proposed order under Civil Local Rules 6-1(b) and 6-2, and on the express understanding that the extension applied to the existing obligation and opened no new discovery period. I confirmed that call in writing the same evening and invited correction of anything I had recorded incorrectly. You sent none.

All three dates have passed.

## II. WHAT DEFENDANT SAID, AND WHEN

On July 17, 2026, on the record at the Rule 30(b)(6) deposition, you stated that you were within ninety to one hundred percent confident that there were no other incidents responsive to that topic for 2022. Hafner 203:12-19.

Twelve days later you wrote that there is no way to search for claims related to instances where vehicles were reported as stolen in error, and that such a search is not possible.

Both statements cannot be true. A representation of near-certainty about the absence of incidents rests on a search. Identify that search: who performed it, on what date, in which systems, and with what parameters.

On the same July 29 call you confirmed that the roughly 234,000 files are the Sedgwick claims system, that Defendant had downloaded approximately forty percent of it, and that searches using terms including false arrest had returned one case.

The day before, I had given you nine publicly documented matters by name. A search that returns one result when nine were handed to it in writing is not a search that can locate the responsive records.

## III. WHY THE PRODUCTION FAILS

### A. Defendant searched a vehicle damage claims system.

Roughly eighty of the 947 pages are vehicle damage material with no theft report anywhere in them. AVIA004255 through AVIA004310 is a collision repair estimate and market valuation reports for a rear end accident in New York. No vehicle was reported stolen. No arrest occurred. AVIA004311 through AVIA004334 is photographs of damage to a single vehicle. Twenty three pages of that segment are duplicates of other pages in the same segment.

Defendant's own designee testified that the claims administrator manages vehicle damage incidents. He also explained why a search keyed to contracts or claims cannot find these vehicles at all: because the vehicle was never associated with a contract, it would not appear anywhere on a contract paper trail.

**B. Defendant's own witnesses described a second SFO arrest. Nothing about it was produced.**

Defendant's SFO airport manager testified that after December 2022 she became aware of an incident involving an Avis customer who had legitimately rented a vehicle and was arrested. Poti 113:14-15. She described that incident as one in which the customer was arrested for not being properly placed on a contract or not being able to be traced, in which the checklist was not properly followed, and in which there were indications that the vehicle had been rented out to a customer. Poti 113:23-25 to 114:1-4. She confirmed that the incident occurred at the SFO location. Poti 114:6-8. She further testified that Armando Cruz may have been among those who performed the vehicle checklist. Poti 114:18-20.

She confirmed both propositions again later in the deposition, without qualification. Asked whether there was at least one other case at Avis SFO in which a customer was arrested for driving a vehicle he had legitimately rented, she answered yes. Poti 130:4-10. Asked whether an investigation followed that incident and found that the checklist had not been done according to policy or correctly, she answered yes. Poti 130:11-16.

An investigation that reaches a finding leaves a record. The production contains no checklist, no investigation file, no report, and no correspondence concerning that incident.

**C. Defendant's designee confirmed the category exists and recurs.**

Defendant's Rule 30(b)(6) designee confirmed each element of this category. He testified that customers have left the exit gate with incorrect information. Hafner 102:13-16. He testified that customers have left the gate with no record of the rental in Defendant's system. Hafner 102:21. He testified that such customers have been arrested by police for driving a vehicle Defendant had reported as stolen, and that this has happened before. Hafner 102:25. He further confirmed that incidents of this kind have occurred in other years and in other cases of which he is aware. Hafner 202:6-8.

Asked directly whether he was testifying that no person other than Plaintiff was arrested in 2022 in connection with a legitimately rented vehicle, he declined to adopt that proposition. He stated that this was not what he had said, and that he does not have intimate knowledge of how many such cases there were or where they occurred. Hafner 201:18-21, 201:24-25 to 202:1.

**D. No document states the number, although Defendant counts.**

The Order requires documents listing the number of false reports of stolen vehicles. Not one page states a number.

Defendant's designee testified that Avis tracks anytime that someone is arrested in a vehicle. Hafner 184:18-21. He testified that Avis goes over annual statistics for stolen vehicles as part of its annual reporting. Hafner 189:23-25 to 190:8.

Defendant has counted before. In the Monroeville matter, an internal Avis investigation determined that fifteen fraudulently rented vehicles had been reported stolen, projected that thirty more would be reported in the weeks following, and identified ninety two fraudulent rental contracts with losses calculated at over $617,000. A former Avis Budget security director stated publicly that during his tenure he could count at least twenty instances of vehicles going out to renters while still listed as stolen in the company system.

On July 29 you offered statistics in place of the reports. Defendant produced neither.

**E. Defendant's representation about arrests is contradicted by its own production.**

You wrote that none of the files reviewed had anything to do with arrests. The production includes a Florida matter in which Avis executed a stolen vehicle affidavit, a felony warrant issued, the renter was arrested and posted bond, and the State entered a nolle prosequi. It includes an Ohio action alleging false criminal accusation and extended incarceration. It includes matters from North Carolina, Arizona, South Carolina, Georgia, Minnesota, and California involving arrest or detention.

**F. Known matters within the Order are missing.**

Two of the nine matters I identified on July 28 appear in the production. The following do not, and each falls within the Order:

Burie v. Payless, San Diego County. Trial began October 7, 2025. After opening statements Payless settled for $350,000, with a refund and an apology acknowledging a system failure. A settlement is a category the Order names expressly.

Representative Wendell Gilliard, Charleston International Airport, January 2022. Avis Budget publicly acknowledged that its own employee took a returned vehicle out without logging the return, billed the customer $21,199.83 for damage he did not cause, terminated the employee, and apologized.

Chip August, metro Atlanta, 2023. Avis sent a demand letter treating a returned vehicle as stolen and charged over $4,100. The same broadcast identified a second Atlanta customer, James Hagerman, whose timely return Avis conceded

was captured on surveillance video.

Cynthia and Robert Sutherlin, 2024. Avis billed $3,600 in loss of use on a vehicle police had already returned to Avis.

The Manhattan pickup stopped in Ohio, June 2025, where the vehicle had been removed from the stolen database roughly eight months earlier and the flag persisted.

Noelle Wilson, Suwanee, Georgia, 2025, which Avis Budget Group confirmed resulted from a system error and for which it apologized and refunded.

The BWI Airport matter filed by Whitney, LLP, whose counsel states publicly that he has represented at least ten such individuals.

Defendant has not stated whether any of these were searched for, located, or withheld.

**G. The matters produced are incomplete.**

For most matters, Defendant produced the complaint or demand and stopped. No answers, no orders, no dismissals, and no releases were produced. Defendant is a party to each and its files necessarily contain the resolving documents. Defendant produced the resolution twice, which shows it knows where those documents are kept. In one instance the settlement consideration is redacted and no privilege log accompanies the production, as Rule 26(b)(5)(A) requires.

**IV. WHAT MUST BE PRODUCED, AND THE TESTIMONY SHOWING IT EXISTS**

Each item below is followed by the sworn testimony establishing the record exists. The period is January 1, 2019 to the present.

1. All missing or stolen vehicle checklists for any vehicle associated with the SFO location. Hafner 145:6-10, 145:14-15. A checklist exists in this matter as Exhibit B.

2. All reports of vehicles not inventoried in thirty days for the SFO location. Hafner 148:25 to 149:3.

3. All daily inventory scan records for the SFO location. Hafner 149:17-19.

4. Vehicle history records sufficient to identify every SFO-associated vehicle reported to law enforcement as missing or stolen. Hafner 186.

5. All records of Defendant's tracking of customers arrested in its vehicles. Hafner 184:18-21.

6. All annual stolen vehicle statistics and the annual reporting in which they are reviewed. Hafner 189:23-25 to 190:8.

7. All investigation files generated after any incident in which a customer left the exit gate without a record of rental or was arrested in connection with a vehicle reported stolen, including documents identifying the agents responsible. Hafner 103:7-9.

8. All disciplinary records arising from any such incident. Hafner 103:23-24, 104:3, 104:13-18.

9. The investigation file for the second SFO arrest, including the checklist found not to have been properly followed. Poti 113:23-25 to 114:1-4, 130:4-16.

10. The investigation file generated after Plaintiff's arrest. Hafner 183:11-15.

11. All records of removal or rescission of stolen vehicle alerts and NCIC entries for SFO-associated vehicles. Hafner 185:5-13.

12. All reports Defendant runs that surface undocumented or mis-assigned rentals at the SFO location. Poti 111:5-9.

13. All records of law enforcement inquiries to the SFO location seeking to verify a rental where none appeared in Defendant's system. Cruz 137:14.

14. All video archived in connection with any missing or stolen vehicle investigation at the SFO location. Hafner 145:23-25, 146:19-20.

15. All records of incidents in which a customer was given a vehicle not documented in Defendant's system, whether or not law enforcement was contacted. Defendant's airport manager testified this occurred a couple of times in her experience, and that when Defendant catches the error first the customer suffers no consequence. Poti 109:20-21, 112:9-13. Because the second SFO arrest arose from the same failure caught too late, this population is the direct antecedent of the arrests and is relevant under Rule 26(b)(1).

16. All idle vehicle reports for the SFO location. Defendant's Northwest Regional Security Manager testified that the idle vehicle report and the missing vehicle report are the same report. Russell 73:5-7.

17. For movement number 332809934 reflected at AVIA001806, the Wizard employee sign-on identification, terminal identification, and workstation location for the check-out and check-in entries executed at 21:53 on June 26, 2022, together with the same identifying data for the entry of the status flag reading vehicle missing as of 26JUN2022, and for the terminal session that generated the vehicle trace printout on November 2, 2022.

18. All inventory scan records, inventory reports, and unaccounted vehicle reports generated at the SFO location on June 26 and June 27, 2022, and all records reflecting how vehicles unaccounted for in inventory are recorded, escalated, or resolved.

19. The loss prevention reports named in Defendant's own corporate materials, including the report referred to as the 13 report or its equivalent, the Missing and Alarm spreadsheet or its equivalent, stolen from customer reports, the quarterly national crime database run, and Defendant's National Insurance Crime Bureau inquiry and clearance records, in native electronic format with all rows and data fields intact.

**V. PHANTOM RECORDS AND CHARGES**

This section is raised under Rule 26(b)(1) and is not offered as a Section IX category. Plaintiff's operative pleading alleges that Defendant handed her paperwork bearing a rental agreement number corresponding to nothing in its systems.

Defendant's Production and Distribution Manager testified that if a vehicle exchange is performed appropriately, the information is retained in Wizard and appears automatically in the vehicle trace history. Cruz 99:8-20, 100:8-11. He testified that the contract at issue, movement number 332809934, was generated and closed at the same minute, that someone must have entered it, and that this was most likely the counter manager. Cruz 103:16-21, 104:6-8, 104:23. Asked whether it is policy and procedure to void a contract at the same time it was created, he answered no. Cruz 106:13-15.

During that examination, on the record, you stated that it clearly was not done correctly. Cruz 99:24-25 to 100:1.

The same records failure produces charges as well as theft reports. In the Gilliard matter, Avis Budget acknowledged that its employee generated a false damage charge and terminated him. In the Ament matter, Avis and Sedgwick explained that the rental location itself completed an accident report attributing a claim to a renter who never signed it. These bear directly on Plaintiff's fraud claim and on Civil Code section 3294.

Plaintiff requests conferral regarding records of rental agreements, contracts, or claims generated by Defendant that were not initiated by the customer to whom they were attributed, and any resulting demand or charge.

**VI. THE FORM OF ANY ASSERTION THAT SOMETHING DOES NOT EXIST**

If Defendant contends any item above does not exist, is not maintained, cannot be located, or is not within its possession, custody, or control, state that position in writing and set forth, as to each item:

a. Each system, database, repository, shared drive, mailbox, and physical file location searched, by name, and each not searched.

b. The name, title, and employer of each person who performed the search, and whether that person has personal knowledge of the systems searched.

c. The date of each search.

d. The search terms, parameters, date ranges, custodians, and filters applied, stated verbatim.

e. The custodian of the item, or a statement that none exists.

f. A reconciliation with each item of testimony cited above. As to each citation, state which of the following two positions Defendant takes: that the witness did not testify truthfully, or that the testimony was inaccurate. If Defendant takes neither position, state the basis on which Defendant maintains the record does not exist notwithstanding its own witness's sworn testimony that it does.

g. A log complying with Rule 26(b)(5)(A) for anything withheld.

h. For anything destroyed or no longer retrievable, the date, the retention schedule applied, the person who authorized it, and whether the destruction occurred after October 26, 2022.

i. A date certain for any category Defendant intends to supplement.

Rule 34(a)(1) reaches documents Defendant has the legal right to obtain on demand. If Defendant contends any item is held by Sedgwick, by Asset Retrieval and Investigations, by an independent operator or licensee, or by any affiliate or vendor, identify the entity, the basis on which Defendant obtains such records in the ordinary course, whether Defendant has requested them, and if not, why not. Defendant's production of records originating with each of those entities establishes that it obtains them when it elects to.

Any declaration should be signed by a person with personal knowledge who states whether he or she personally performed or supervised the search. A declaration on information and belief, or by a person who did not conduct the search, does not establish the absence of documents.

Defendant did not seek relief from, modification of, or clarification of the Order at any time. Any objection to the scope of Section IX raised now comes after the compliance date has passed.

Failure to address any item identified above will be treated as Defendant's representation that its production is complete as to that item and that no responsive document is being withheld.

A statement that Defendant intends to supplement, unaccompanied by a date certain for each item, will be treated as a refusal to produce.

Production of additional documents does not respond to the requests in this section. The written statements requested above are required in addition to any further production.

Any written response is a certification under Rule 26(g). A general statement that responsive documents do not exist, unsupported by the foregoing, will not be treated as a response and will be presented to the Court as noncompliance with an order to provide discovery.

**VII. CONFERENCE**

Pursuant to the Discovery Standing Order for Magistrate Judge Thomas S. Hixson, I request a telephonic conference. Please provide your availability by Monday, August 10, 2026. Absent resolution, I will seek relief under Rule 37(b) and Civil Local Rule 37-4, including all available remedies for failure to comply with an order to provide discovery.

Nothing here waives any position regarding the sufficiency of Defendant's search or its compliance with the Court's Order. All rights are reserved.

Sincerely,

Avia Turner-Gray

Plaintiff In Pro Per