UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

---oOo---

| | | |
|---|---|---|
| AVIA TURNER-GRAY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:23-CV-05507-SI |
| | ) | |
| AVIS BUDGET CAR RENTAL LLC, | ) | |
| JOHN DOES 1 THROUGH 50, | ) | |
| | ) | |
| Defendants. | ) | |

VIDEOTAPED DEPOSITION OF ARMANDO CRUZ

(PAGES 1 - 189)

Taken before JEANINE K. MIRO

Certified Shorthand Reporter No. 11101, RPR

State of California

TUESDAY, JUNE 30, 2026

JOB NO. 104975

Go ahead.
THE WITNESS: No, he does not, but reports. We do car counts.
BY MS. TURNER-GRAY:
Q. I understand that. So am I understanding that the District Manager -- let me put this in the right words.
You report to the District Manager with regard to your job?
A. Yes.
Q. So again, the question is do you -- is it part of your job to make the majority of daily decisions regarding the service and distribution operation at the airport?
MS. MEYERS: Objection. Asked and answered.
Go ahead.
THE WITNESS: In the direction of the District Manager.
BY MS. TURNER-GRAY:
Q. That's vague to me.
You seem like a nice guy. It seems a little evasive.
I'm just asking you is this job description part of your job? Is that -- specifically that statement

making -- and if I use it and don't use the verbatim term that's in here, you'll get me on maybe misleading.

But I'm saying, do you make the majority of the daily decisions regarding the service and distribution at the airport?

MS. MEYERS: Objection. Asked and answered.

MS. TURNER-GRAY: He's not answering the question. He's telling me about his District Manager.

BY MS. TURNER-GRAY:

Q. What do -- do you do that portion of your job?

MS. MEYERS: He's not answering the way you want him to. That's not the same.

But go ahead.

THE WITNESS: The car counts -- before again, we get the car counts, those are sent to or notified to the District Manager. The District Manager then says nay, yah, whether what he wants to do. So it kind of gets delegated from the top down, and then we have to give information from the bottom to the top.

BY MS. TURNER-GRAY:

Q. That sounds like the reporting process.

But the question still remains, are you making the majority of the daily decisions regarding the service and distribution -- operation at the airport? You?

A. I was -- me.
MS. MEYERS: Same objection and argumentative at this point.
But go ahead and explain it further.
THE WITNESS: As far as the different, that is done mainly more the majority from the morning management.
I'm there in the afternoon. So if you are referring to the afternoon part, then I do have more input. For the rest it's mainly more from the morning management.
BY MS. TURNER-GRAY:
Q. Morning management. Who are we speaking of and what role are we speaking of?
A. The Production Manager, again, gets the information and reports it to the District Manager.
Q. Who is the morning Production Manager?
A. We have several.
Q. At SFO?
A. At SFO.
Q. That's interesting, but I'll refer to that later.
This is also in this "Responsibility, Scope and Impact," statement. It's the last line. And I'm just gonna read it.

"Approval from a higher level is required regarding concerns and issues as dictated in the established operation procedures and company policies."

Does that refer to some of the things that you were telling me that you report up to your District Manager?

MS. MEYERS: Objection. Calls for speculation. Lacks foundation.

MS. TURNER-GRAY: It's not speculative. I am looking dead at it.

MS. MEYERS: He didn't write it. You are asking him what means.

You never even asked him if he read it before. I'm just saying.

MS. TURNER-GRAY: Are you telling me that Avis has people and they don't even read their job description? They don't get a job description? They don't go by the job description?

MS. MEYERS: You haven't laid the foundation for it. That's all I'm saying.

MS. TURNER-GRAY: Okay.

BY MS. TURNER-GRAY:

Q. Have you ever read your job description before?

A. Yes.

Q. I guess would it be fair for me to ask -- let me

of -- same time generated and canceled at the same time?

A. Well, like I mentioned, it's either voided or no charge.

Q. Well, I didn't get charged but it didn't get entered. This seems to still -- even with your explanations this seems to be quite mysterious. But I hear what you are saying, but I thought that movement meant that the vehicle moved somewhere. That's not what that means?

A. Movement -- it's the contract. This -- whoever has this contract, 332809934, that's a contract that was generated to that particular vehicle.

Q. Okay. That's weird.

Is this evidence of a mistake?

A. That I --

MS. MEYERS: Objection. Calls for a legal conclusion.

MS. TURNER-GRAY: Is a mistake a legal conclusion?

MS. MEYERS: Yeah. Calls for speculation.

BY MS. TURNER-GRAY:

Q. Is this evidence of a breach in protocol -- the policies and procedures for renting a vehicle to a customer during a vehicle exchange?

MS. MEYERS: Objection. Lacks foundation.

Calls for speculation. Incomplete hypothetical.
If you know what happened here. You can answer if you know.
THE WITNESS: No, I don't. I keep coming back. The only thing that will do that is it's no charge or it was voided, which is kind of like the same thing.
BY MS. TURNER-GRAY:
Q. From your understanding of the rental -- I don't even know how you call this. The appropriate procedures for renting a vehicle -- the appropriate procedures for exchanging a vehicle for a customer, is it appropriate? No.
Is it policy and procedure to void a contract at the same time that it was created?
A. No.
MS. MEYERS: Incomplete -- sorry. Incomplete hypothetical.
MS. TURNER-GRAY: He already answered.
BY MS. TURNER-GRAY:
Q. I don't necessarily -- I'll do this. I'm not necessarily going to give this to you but I'll ask you. There was another document that I also received kind of as part of this package. I see what it says. This may be -- I know what this is. Never mind. This goes with something else. I hear what you are saying.

A. Yes.
Q. Would the Airport Manager be the individual who has accountability over multiple areas that we've touched based on -- in this -- in this deposition such as the rental return agents -- I'll ask these as separate questions.
Do they have authority over the rental -- over the management and discipline of rental return agents?
A. They are -- I don't know, because each -- again, season or location is different, but normally the Airport Manager -- so it goes District Manager and Airport Manager. They Airport Manager is for the location, so I don't know.
That's not -- again, I can tell you the movement of the vehicles, the cleaning of the vehicles. I could mention that. As far as up at the counter that's a different story.
Q. But your evaluations don't come from the Airport Manager. They are coming from the District Manager?
A. That is correct. Or at least he's the one that approves them.
Q. Okay.
MS. TURNER-GRAY: Okay. I think that's just about it.
(A pause in the proceedings.)

BY MS. TURNER-GRAY:
Q. The Airport Manager is not the same as the rental counter manager?
I'm asking that as a question?
A. They can be. Again, depending on the amount of managers that we have.
But normally the Airport Manager is at the rental area so it does -- for the most part, do have some interaction with the responsibility of the rental sales agent.
Q. But I thought, and I may be confused, the rental -- so we know there's a counter. I'm just trying to describe. There's a counter with rental sales associates, RSA's.
For that shift, my understanding is there's a manager or lead or someone kind of --
A. Managing.
Q. Okay. And that person is different than the Airport Manager who is over the whole airport operation?
A. It can be at times.
Q. This is so confusing.
A. Because the Airport Manager has managers that work -- that are counter managers.
So the counter managers. So he supervise -- when we don't have -- or low in management, then he is

EMERICK & FINCH
Certified Shorthand Reporters
2333 San Ramon Valley Boulevard, Suite 425
San Ramon, California 94583
(925)831-9029

JULY 16, 2026

ARMANDO CRUZ
c/o ASHLEY MEYERS, ESQ.
Clapp Moroney Bucinich Beeman
5860 Owens Dr., 410
Pleasanton, California 94588

Re: AVIA TURNER-GRAY vs AVIS BUDGET

Dear Mr. Cruz:

Your deposition in the above matter is now available at this office. You may wish to discuss with your attorney whether he or she requires that it be read, corrected, if necessary, and signed before it is filed with the court, if so ordered.

Since the original deposition may not be released from our custody, if you wish to sign it, please contact our office via phone or email within the next 30 days. We can be reached between the hours of 9:00 a.m. and 4:00 p.m., Monday through Friday, at (925)831-9029. You may also e-mail us at production@emerickfinch.com.

In the alternative, you may wish to read your attorney's copy of the deposition and notify this office by letter of any changes you desire to be made.

Very truly yours,
EMERICK & FINCH

________________________
JEANINE K. MIRO, CSR No, 11101

cc: All Counsel