UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

AVIA TURNER-GRAY,

Plaintiff,

vs. Case No. 3:23-cv-05507-SI

AVIS BUDGET CAR RENTAL, LLC, et al.,

Defendants.

_____________________________/

VIDEOCONFERENCE DEPOSITION OF AUTUMN POTI

Taken before LORI A. YOCK, CSR, RPR

Certified Shorthand Reporter No. 5801

Registered Professional Reporter No. 18667

State of California

Thursday, July 9, 2026

12:38:18 BY MS. TURNER-GRAY:
12:38:18 Q. Okay. Thank you. I'm going back to page 1. So
12:38:22 was it your duty in light of your responsibilities under
12:38:25 your position here to maintain adequate vehicle control
12:38:29 and ensure that the proper missing vehicle reports were
12:38:33 completed and filed with the company's security personnel
12:38:37 or with local police?
12:38:39 MS. MEYERS: Objection; asked and answered. Go
12:38:45 ahead.
12:38:45 THE WITNESS: Can you repeat that question one
12:38:47 more time?
12:38:48 BY MS. TURNER-GRAY:
12:38:48 Q. I'm asking you, according to this job
12:38:52 description, part of your duty was to ensure that proper
12:38:56 missing vehicle reports were actually filled out with the
12:39:00 company's security personnel and also to prepare follow-up
12:39:04 reports. Is that correct?
12:39:07 MS. MEYERS: Objection. That misstates the
12:39:10 evidence.
12:39:14 MS. TURNER-GRAY: I'm -- go ahead.
12:39:16 MS. MEYERS: She said she is an airport manager
12:39:19 customer service. The subtitle is really important
12:39:23 because it limits the scope. Okay? She already
12:39:25 testified she didn't have anything to do with that.

12:39:28 Sorry. Misstates the evidence, lacks foundation.

12:39:30 You can go ahead and answer, please.
12:39:34 THE WITNESS: No.
12:39:36 BY MS. TURNER-GRAY:
12:39:36 Q. So is this not your job description?
12:39:41 MS. MEYERS: Objection; argumentative.
12:39:45 MS. TURNER-GRAY: It's not --
12:39:46 MS. MEYERS: Vague and ambiguous. Go ahead.
12:39:49 THE WITNESS: Can you rephrase that?
12:39:52 BY MS. TURNER-GRAY:
12:39:52 Q. Well, you said you were an airport manager and
12:39:55 your counsel is strenuously objecting. So I'm asking
12:40:00 whether or not this duty of maintaining adequate vehicle
12:40:04 control in the form of ensuring that proper missing
12:40:08 vehicle reports were completed and filed with security
12:40:11 personnel and that those reports had appropriate
12:40:16 follow-up, I'm trying to figure out if that was part of
12:40:19 your job, because it says it was on this airport manager
12:40:24 job description sheet. So that's what I'm trying to
12:40:28 ascertain.
12:40:29 MS. MEYERS: Objection; asked and answered and
12:40:32 argumentative. But go ahead.
12:40:33 THE WITNESS: For an airport manager customer
12:40:39 service, no.
12:40:39 BY MS. TURNER-GRAY:

12:40:40 Q. So is this job description Avis gave me for your

12:40:44 job, is this inaccurate? Is it the wrong job description?
12:40:48 A. No.
12:40:48 MS. MEYERS: Objection; misstates the evidence.
12:40:51 It's argumentative and it calls for speculation. Go
12:40:58 ahead.
12:40:58 THE WITNESS: The job description that you are
12:41:01 showing me under the airport manager, no, my job
12:41:06 description as far as customer service, specifically
12:41:11 those duties falling under my role, no.
12:41:15 BY MS. TURNER-GRAY:
12:41:16 Q. So do you believe that Avis gave me the wrong job
12:41:24 description for what you do?
12:41:26 MS. MEYERS: Same objections. It's
12:41:29 argumentative. The document speaks for itself. And it
12:41:38 calls for speculation. Go ahead.
12:41:43 THE WITNESS: Can you repeat that?
12:41:47 BY MS. TURNER-GRAY:
12:41:47 Q. Is this the wrong -- is this not your job -- is
12:41:50 this not your job description?
12:41:54 MS. MEYERS: Objection -- sorry. Objection;
12:41:58 misstates testimony. It's argumentative. Go ahead.
12:42:09 THE WITNESS: Airport manager customer service
12:42:13 was my job in that time period.
12:42:17 BY MS. TURNER-GRAY:

12:42:17 Q. Okay. Did someone else who was an airport

12:45:26 Q. Okay. Prior to December 20th, 2025, who was your
12:45:30 boss at the SFO Airport location in your role as an
12:45:38 airport manager?
12:45:42 A. I had -- at SFO, I had more than one. Are you
12:45:47 asking --
12:45:47 Q. Whichever ones you remember.
12:45:49 A. I had Ramon Calderon. I had Kevin -- I forgot
12:45:58 his last name.
12:45:59 Q. Is it DeCorte?
12:46:01 A. Yes. And then Dylan Hafner.
12:46:09 Q. Were all of those gentlemen district managers
12:46:15 or -- yeah, district managers?
12:46:16 A. Yes.
12:46:24 Q. Were all three of those gentlemen still in their
12:46:28 role when you left -- I assume you transferred out --
12:46:32 transferred to Hawaii. Is that true?
12:46:35 A. Can you rephrase that?
12:46:37 Q. When you left -- when you left Avis in December
12:46:41 of 2025, just six months ago, did you transfer to another
12:46:46 Avis office in Hawaii?
12:46:49 A. Yes.
12:46:49 Q. Okay. Before you left, were these gentlemen --
12:46:53 Mr. Calderon, Mr. DeCorte, and Mr. Hafner -- were all of
12:47:00 them still working for Avis in SFO at the time?

12:47:04 A. When I had left, no.

01:19:44 later than yourself in the mornings and stay until
01:19:49 probably early evening or in the evening?
01:19:50 A. Yes.
01:19:50 Q. Was there night coverage during the week for the
01:19:53 airport manager position in 2022?
01:19:57 A. For SFO operations, can you be more specific as
01:20:02 far as night?
01:20:02 Q. The counter -- the counter and the floor. The
01:20:06 counter -- renting at the counters and covering the rental
01:20:14 car floor where people go to pick up the cars.
01:20:17 A. Are you just asking about airport managers?
01:20:20 Q. I'm just asking about airport managers. And if
01:20:21 it's not the airport manager, I know that there's
01:20:25 operations managers. You have got a lot of middle
01:20:31 management. I'm trying to ascertain who would have been
01:20:35 there for management but starting off with the airport
01:20:38 manager role.
01:20:39 A. Okay. I'm sorry. Since we went through
01:20:43 specifics, can you repeat the question?
01:20:44 Q. Sure. Was there someone who was tasked with
01:20:47 being at the airport, either at the counter or on the
01:20:51 airport floor? You know, and let me think about that
01:20:57 because you are airport manager -- who would have covered
01:21:01 at least those two areas after the morning shift? So

01:21:05 we're thinking -- and I don't know your exact -- I don't

know exactly how the hours go there. I'm thinking like from 12:00 until 10:00 at night, like a middle shift. It doesn't have to be those exact hours. But who would be there later in the day?

A. Airport and operation manager.

Q. Okay. Does the operations manager do the same thing that you do or the same thing that an airport manager does?

A. No.

Q. Can you -- well, let me finish up with this. So am I understanding correctly that there was no night coverage airport manager at SFO during the week?

A. I would have to ask you to repeat the question.

Q. Who covered the airport -- well, let me go back. It's okay if this person doesn't exist, but I want to say there was some testimony contrary to that that was given last week. But I want to find out if there was an airport manager who covered nights at SFO, who came in for a nightshift or some portion of the night between the production manager, the customer service manager, and the counter manager?

A. Yes.

Q. Okay. Was it typically -- was the night person -- were they -- from your recollection, were they

04:07:36 properly put on a contract or not being able to be traced, but in that instance the checklist was not properly followed. So there was indications of that vehicle being rented out to a customer.

04:07:56 BY MS. TURNER-GRAY:

04:07:56 Q. Okay. Did that incident happen at the SFO location -- at the Avis SFO location?

04:08:03 A. Yes.

04:08:08 Q. Okay. To the extent that you know, did that -- did that particular incident go up to -- go up through Gary Russell, as he seems to handle most if not all of the missing/stolen vehicle arrest reports? At least when reported cars are stolen, he seems to be involved. Did it go up and was it managed by Gary Russell?

04:08:46 A. I was not officially a part of the process. So I can't confidently tell you yes or no. I only knew about some of the details.

04:08:55 Q. Was this a vehicle in which Armando Cruz did the vehicle checklist?

04:09:04 A. I believe he may have been one of them, yes.

04:09:09 Q. Okay. Are there any other incidents -- I'm sorry. Around or about -- it doesn't have to be the exact date. But around or about, when did that occur since it was after December 2022?

04:09:30 A. I can only tell you after 2022. Specifically

05:01:38 doesn't know anything, then you are making it okay for
05:01:42 people to be harmed. I was harmed.
05:01:43 MS. MEYERS: This is a deposition. If you have
05:01:46 fact questions for her, that's fine, but none of this is
05:01:49 fact. You are asking her to opine --
05:01:49 MS. TURNER-GRAY: It was a fact that I got
05:01:52 harmed because somebody that she supervised didn't do
05:01:55 their job.
05:01:55 Q. Was it the airport manager's job to supervise the
05:01:59 employees at Avis SFO, specifically the counter employees
05:02:03 and some of the garage employees, to make sure that they
05:02:06 were following Avis's proper -- I don't want to use --
05:02:13 Avis's policies and procedures in renting these cars?
05:02:16 MS. MEYERS: Objection; vague and ambiguous,
05:02:19 asked and answered. Go ahead.
05:02:22 THE WITNESS: The employees as far as hourly
05:02:25 employees, airport managers and operation managers are
05:02:29 both in charge of doing such things.
05:02:33 BY MS. TURNER-GRAY:
05:02:33 Q. Okay. So it's not the airport manager's job
05:02:38 alone? Because you said it's a group effort. Am I
05:02:42 understanding that correctly?
05:02:43 MS. MEYERS: Same objection. It's vague and
05:02:47 ambiguous. It's argumentative. Go ahead.

05:02:50 THE WITNESS: I guess you could say it's the

# CERTIFICATE OF REPORTER

I, LORI A. YOCK, CSR No. 5801, a Certified Shorthand Reporter in and for the State of California, do hereby certify:

That prior to being examined, the witness named in the foregoing deposition was by me duly sworn; that said deposition was taken before me via video conference at the time set forth and was taken down by me in shorthand and thereafter to computerized transcription under my direction and supervision, and I hereby certify the foregoing deposition is a full, true and correct transcript of my shorthand notes so taken.

I further certify that pursuant to FRCP Rule 30(e)(1), before completion of the deposition, review of the transcript [ ] was [X] was not requested.

And I further certify that I am neither counsel for nor related to any party to said action nor in any way interested in the outcome thereof.

IN WITNESS WHEREOF, I have hereunto subscribed my name this 27th day of July, 2026.

___________________________
LORI A. YOCK
CSR No. 5801